Javier Vasquez

**FILED**
**in the Clerk's Office**
**U.S. District Court,**
**EDNY, Brooklyn**
**Jun 28, 2023, 2:13 PM**
**Pro Se Office via**
**Box.com**

　　　　　Plaintiff,

　　-against-

THE CITY OF NEW YORK- OFFICE OF THE MAYOR,

　　　　　Defendant.

No. 22-CV-5068 (HG) (VMS)

　　　　　MEMORANDUM OF LAW IN
　　　　　OPPOSITION DEFENDANTS' MOTION
　　　　　TO DISMISS THE COMPLAINT

Judge Gonzalez and Judge Scanlon, I Javier Vasquez declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S. Code § 1746, that the foregoing is true and correct, Executed on 06/20/2023:

Javier Vasquez, the plaintiff, is representing myself Pro se in the above reference action.

I would like to first start this motion by thanking the court, Judge Gonzalez, Judge Scanlon, for allowing me time to respond to the Defendant's motion to dismiss, granting me an extension to respond by 06/28/23. I, the Plaintiff am responding, reiterating, addressing, and explaining this case/action to the best of my ability as Pro se. I submit this declaration in support of NOT dismissing this case, but in pursuit of my lawsuit, and Justice.

**I.** 　　**I am not stating a claim under OSHA, but rather I use OSHA to demonstrate that the FDNY cannot prove accommodating me would have caused an undue hardship.**

In June of 2022, I was terminated and on January 26, 2022, OSHA updated its point of view to: "The U.S. Department of Labor's Occupational Safety and Health Administration is withdrawing the vaccination and testing emergency temporary standard issued on Nov. 5, 2021, to protect unvaccinated employees of large employers with 100 or more employees from workplace exposure to coronavirus. The withdrawal is effective January 26, 2022." https://www.osha.gov/coronavirus/ets2 .

The FDNY and the City of New York claimed accommodating me was an undue hardship. Yet, they have no objective evidence of this. The FDNY and the City were not following OSHA standards. I was treated weekly as a contamination, in front of my peers ordered weekly against my will to take PCR testing, while Covid vaccinated Firefighters would come

1

to work sick on overtime, irrationally criticizing the unvaccinated on loud group conversations arrogantly in prejudice outlook, irrationally be against Individuals assumed or confirmed unvaccinated, despite my religious belief, despite my rights to be free to make choices, despite any data of any kind presented other than a one sided discussion, it was a complete one sided environment. I was religiously discriminated against because of the irrational biased Executive Orders set by my employer, that contracts my Department(FDNY), the Defendant. OSHA exposes the FDNY and City's lack of rational basis for its refusal to accommodate me. The FDNY and the City's refusal to accommodate were fear driven and resulted in my prejudicial segregation and termination.

How was my unanswered vaccination status (**Exhibit B, part 1-4**) enough to label me a medical diagnosis of not covid vaccinated, and entitle my employer(defendant) to have his municipalities such as NYPD and FDNY, get rid of the automatically assumed hazardous, infectious group labeled "unvaccinated", and make sure that the unemployment department reject me/unvaccinated because I was DICIPLINED? (**Exhibit D**) How is okay to financially be there for just one class of individuals and others NOT? Plaintiff and others are not treated equal, in the same infectious situation, vaccinated or not, but plaintiff is put in a much harder situation with lost livelihood to covid or the defendant? The DEFENDANT did that, not covid. The defendant did not fight for all lives, LIVILIHOOD, the only individuals/entities/people/employee that mattered and had rights were the individuals taking his orders with their bodies for money as properties examples of that are slaves, the vaccinated. Completely Irrational! I have a voice to voice my own opinion and practice my rights. Are the unvaccinated LIVES not as valuable, not important, not relevant, not equal as the vaccinated in NYC that only get the key to go into businesses, (key to NY program Defendant created, **Exhibit C, Part 1**), go into my job/career/lifeline? The current Mayor in office just eliminates the program as if no irrational decision was ever made (**Exhibit C, Part 2).** This program started the discrimination set by the than mayor, Defendant, labeling me unvaccinated in one of his Departments, where I worked, and all its stereotypes labels that came with this biased approach, leadership, guidance, influence of power. Giving only the privileges of a normal life to vaccinated, despite their spreading of covid to others as they sneeze, and more, around people with their positive infections no matter what vaccine "protection" was claimed. References are made of that possibility in complaint. Today, 06/20/2023, children under five wear no mask, (**Exhibit C, Part 3**) are unvaccinated, athletes play sports unvaccinated, and we are all coexisting for the greater good of New York, according to the current Mayor, the Defendant, that greater good is MONEY, but just for the City of New York. Now that a new Mayor is in office, we are transitioning regardless of vaccination status. Covid isn't nonexistent and is still a threat no matter what the stats. It's a double standard no matter what the argument. My rights are my rights regardless of how political parties help each other not look incriminating to the public, abusing time as a cure

for logical thinking of how a situation was mishandled from than to now and is interpreted today as just moving on. In the present, Consequences and repercussions need to be had and the public should see that the Judicial system will reestablish a balanced of justice and see the whole situation that has occurred, today we see the truth that segregation set by the defendant was irrational and could have been handled differently, all together black or white, democrat or republican, all equal with our rights in tact as the democracy we are. As a country we are leaders of the free world, we need to set an example here in the Empire State. A set a prejudice workplace was made instead as an example, I was made a target despite being on light duty, based off what was explained as public concerns is why I bring this up. I was not an active-duty fire fighter, since September 2019. I was not a "high risk of contaminating the "public" as defendant explained being unvaccinated to be in big crowds having high risk of spreading the virus. I was in a small setting such as in a booth for security (1 person), nor in a small group in an office was it a large gathering, which was my assigned last position as a light duty firefighter. I was not a high risk even if had been on active duty! I didn't get covid until the end of my career, in which I was not supported by my job in a time that was considered so dangerous for people that would get sick with this virus, I was put on leave without pay while I was WHILE I HAD COVID AND WAS ON BED REST! If I was close to death and had covid for an extended period, I would had eventually run out of money to eat, keep shelter, had a hard time to be medically secure, had a hard time to STAY ALIVE. So, that an expression by the defendant that my life didn't matter, they didn't care if I died, they didn't care of my dependent's lives, MY WIFE AND CHILDREN. The defendant didn't care how much I/WE would struggle. Terminating me interpreted to many things such as getting rid of not just me, but my family. Their lives, survival didn't matter either to the Defendant, evidently. I was terminated before being put back to light duty from this medical leave I was on for Covid! How is this caring for the public as a whole? How is this good practice of law? But NOW it's okay to be unvaccinated? Now my religious rights matter, NOW? How can we rationalize under the law but while the threat is still exists? Double standards! No matter what stats are! Mayor DeBlasio, defendant, mishandled the pandemic and Mayor Adams, defendant, is trying to not expose that, but slowly move on in time, now moving forward, without discrediting his fellow democrat and not affecting NYC funds, not affecting an image of leadership, as if they make no mistakes. The defendant made mistakes! That is not okay, and the defendant must understand wrong is wrong and acknowledge that fact of many facts, make NYC stronger and Honorable again. I was set to retire off a disability, that was buried as this pandemic took precedence. Other firefighters had to take the shot to not lose their retirement that was set for the near future just a few months approximately, that want to remain off this case for personal reasons that can cause retaliation from the defendant so names can not be mentioned. How did that make sense to coerce them right before leaving the job, to take a shot that wasn't a factor to be on the job in the near future? That's ridiculous and outrageous! Firefighter Kojack (516) 578-0305 suffered brain swelling and told he signed a waiver anyway to take the covid vaccination,

experimental drug, so he won't be able to sue, nor his family if anything worst were to happen to him. Firefighter Taylor has witnessed the double standard set at work by the Defendant daily briefs as we worked together, union updates that were emailed to us, and executive orders passed down to his department, of his city! The Defendant needs to be held liable and executive order 78, and other Covid related orders, needs Strict judicial review. Firefighter Mavin Taylor, State, Affadit see Exibihit **II.        I state a cognizable claim under HIPAA.**

My HIPPA Rights were violated in an unprecedented way. I filed for a religious exemption to protect my rights in my beliefs. There is no statement that was ever made by me to anyone, including any doctor in the FDNY, of my vaccination status. Despite of not disclosing my vaccination status, (as you can see in **Exhibit, B part 1- 4)** the defendant accepted the stigma label given to me as non-vaccinated, despite being unknown. This label has been used without consent, is a misrepresentation, legally incorrect, and was used to coerce me to take PCR testing by using my income as leverage. I never consented to testing nor did I consented to take my genetics off that test in this coercion of weekly testing I took until termination to keep my job. When I was terminated, my HIPPA rights to my medical records were violated when it was reported to the Department of Unemployment that I had been terminated due to not providing a covid shot as a punishment. New York City Department used the stigma of unvaccinated and denied my claim, this was a form of legal punishment that was legitimate to turn me down for unemployment. How is it rational to tell someone in other words "for you to keep getting paid, let me take control of your body and inject this product in you, what you feel or believe in does not matter. Don't argue about your beliefs and how others that got it get sick either way while still spreading to others vaccinated or not". This is the indoctrination the defendant has made in the city I grew up in and loved. How is this in accordance with the HIPPA law by the Defendant? What  HIPPA law allows undisclosed vaccination status to be punished and reported to other Departments?

An example of my practices, which interprets to daily life of religious person is in **Exhibit A**. On the top of that screenshot a Bible app can be seen as I am on an app called group chat for the Fire Department Operations Center, FDOC. In the group conversation I am scrutinized my beliefs in Jesus (English Translation of his name). Firefighter Kojac (was having a hard time having a baby with his wife previously to this date. His wife had just given birth. I told him I would prey on the issue when they were struggling to conceive and make it to birth. Shortly after about a few weeks, he told me that his wife was pregnant. They were able to get to the end of the pregnancy and finally had his baby successfully. In this screenshot I was congratulating him. Other firefighters were more concerned on making fun of my beliefs and posted my God smoking and poked fun of what is supposed to be rights respected in a lawful setting. Other firefighters pressed the like button in approval of the discriminating joke. This is an example of many situations at the workplace that brought tears to my eyes, of what I had to deal with in a daily basis due to defendants irrational mishandling of covid and the

unvaccinated, as he labeled us to be. Pure prejudice, unconstitutional, biased, discriminating, offensive, unamerican, and more!

### III. My Title VII, National Origin, and ADA disability claims are not barred because I exhausted my administrative remedies prior to commencing this action.

I filed my charge under Title VII (discrimination based on race, color, religion, sex and national origin), and have my Notice of Right to Sue from EEOC attached to my Complaint, that was already handed in before filing a lawsuit in Federal Court with your Honor. I filed my charge with the EEOC on or about April 1, 2022. The EEOC issued a Notice to Right to Sue letter on May 26, 2022. The Right to Sue letter is attached to my complaint. EEO right to sue letter covers Federal Laws prohibit workplace discrimination and are enforced by EEOC. These are passed by Congress and signed by the President. Regulations implement federal workplace discrimination laws. They are voted on by the Commission after the public has a formal opportunity to provide comments to EEOC. **Exhibit E part 1-2** display nonJurisdiction complaint that is justified to had made it to your Honors courtroom. Article 78 is being appealed to another complaint addressed directly to FDNY and ask the court to understand to have this case remain open as that issue resolves. This Defendant that is in charge and addressed as the City of New York, Mayors Office can continue this case as things unravel moving forward monitoring resolutions. Plaintiff has seen other firefighters get reinstated and backpay and is being treated differently once again without undeniable good reason to not approve his article 78. This is in addition to the characteristics the Defendant has held in this pandemic that are discriminatory, and unjust. Holding double standards outcomes and trying to find ways to not do right by its Employees, but only as little as the Defendant can as he budgets NYC funds, as he has expressed during interviews as a concern. **Exhibit G** Displays a fellow Firefighter winning HIS Article 78, as I haven't yet been given an approval yet to return to work, biasedly discriminating against me, without undeniable merit to deny me, proving otherwise that the Plaintiff's case is true on all grounds. One of many Firefighters to make winning examples of, and others:

https://www.cnn.com/2022/10/25/us/new-york-covid-vaccine-workers-reinstated/index.html:

"The judge found the New York City Commissioner of Health and Mental Hygiene's order requiring vaccination of city workers violated the New York Constitution's separation of powers doctrine, was arbitrary and capricious and violated the fired workers' equal protection and due process rights.

In a ruling Monday, Judge Ralph Porzio wrote, "There is nothing in the record to support the rationality of keeping a vaccination mandate for public employees, while vacating the mandate for private sector employees or creating a carveout for certain professions, like athletes, artists and performers. This is clearly an arbitrary and capricious action because we

are dealing with identical unvaccinated people being treated differently by the same administrative agency.""

## IV.    I clearly allege cognizable Constitutional violations.

AMENDMEN 1, AMENDMENT 13, AMENDMENT 14 Constitutional laws were broken. Being terminated to exercise what I backed with verses, expressions, examples, and more practicalities of my walk of life that are off the Holy Bible is not freedom of exercising my religion which the constitution implies I have as a citizen of the United States, within or job or not I am a U. S Citizen on this land we call the United States of America. Instead, Defendant used executive orders to violate my religious practices, by denying me an exemption, and denied me in other courts in every way a reasonable justifiable outcome with all evidence, and updated laws. This court needs to step in until a reasonable constitutional outcome applies for all these irrational actions Defendant has influenced this city to enforce. This court HAS JURISDICTION over Defendant. How I should behave and what I should do with my body according to this enforcement implies my beliefs do not matter, not my God, not my body, as it enforces to ignores all I have expressed, but  implies I am a servitude, and obedience to orders is what is required of me like a slave, as if I were property, no matter public sector or private sector, that is against the 13th Amendment. This is a democracy not a monarchy, no matter what the circumstances. This is the Defendants executive order applications. I am a United States Marine Corps Veteran, I first handedly defended that right to choose in my Country! I took part in what this Country is supposed to stand for, no matter what political stance, color, age, religion, race you are. I fought not just for equality in a peaceful dignified manner, but for my elected officials to hold sacred oaths, by the people, officials to honor all the fallen Veterans that fought for the way of life expected on this land, not with irrational double standard Laws and Regulations. I fought for us not to live in fear and be righteous in all situation, and circumstances that come our way. If a mistake was ever made historically on our land, why repeat it in today's age? **First Amendment** Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances. Terminating me is retaliation to my freedom of choose and these Constitutional Laws need to be retold, reiterated to the Defendant that has forgotten what this state stands for within this free country despite its new elected representative that wasn't in office at the time, Defendant now must fix what has already been done. Mistake need to be made right. **Thirteenth Amendment** Thirteenth Amendment Explained **Section 1** Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly

convicted, shall exist within the United States, or any place subject to their jurisdiction .**Section 2** Congress shall have power to enforce this article by appropriate legislation. **Fourteenth Amendment** Fourteenth Amendment Explained **Section 1** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. **Due process**, a course of legal proceedings according to rules and principles that have been established in a system of jurisprudence for the enforcement and protection of private rights. In each case, due process contemplates an exercise of the powers of government as the law permits and sanctions, under recognized safeguards for the protection of individual rights.

> Sited cases: Marbury v. Madison Marbury v. Madison, 5 U.S. 137 (1803) a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." Hon. Judge Neri found that the COVID-19 Vaccine Mandate is preempted by New York State Law.  Specifically, Public Health Law Sections 206 and 613 prohibit "mandatory immunization of adults or children."  NY Pub Health Law §§ 206, 613.  While the legislature intended to grant the New York State Department of Health authority to oversee "voluntary adult immunization programs," the Judge held that the vaccine mandate exceeded the parameters of power granted by the legislature, citing *Matter of NYC C.L.A.S.H., Inc. v. N.Y. State Off. of Parks, Recreation & Historic Preserv.*, 27 N.Y.3d 174, 178 [2016] (citing *Greater NY Taxi Assn. v. NY City Taxi & Limousine Commn.*, 25 N.Y.3d 600, 608 [2015]).

## V.     I plausibly alleged a claim for religious, national origin or disability discrimination under federal, state, and local law.

My basis for the allegation of discrimination is that my request for reasonable accommodation to be exempt from the City's covid-19 vaccination requirement was denied. See id.§§ 12101, et seq.; Code of Federal Regulations 21 C.F.R. § 50.23, Health Insurance Portability and Accountability Act ("HIPAA"), The Declaration of Independence, the First Amendment, the National Labor Relations Act ("NLRA"), the Coronavirus Aid, Relief, and Economic Security("CARES") Act; the Occupational Safety and Health Administration Act ("OSHA"); the New York State Executive Law §§ 290, et seq. ("SHRL"); the New York City Administrative Code §§ 8-101, et seq. ("CHRL"); FDNY Equal Employment Opportunity; and NYS Executive Department Handbook. See id. The Defendants cannot prove that they could not accommodate my religious beliefs. There is no evidence that I created any undue hardship.

**A. I plausibly stated a claim for religious, national origin, and disability discrimination under Title VII and the SHRL.**

My complaint I attachment a letter that explained that I live by scripture, the Holy Bible. I identify myself by it, my life is dedicated to the truth I believe in, verify and research it, while having my own spiritual experiences to confirm the reality that's been lost throughout generations. My letter explained my practices, but clearly was overlooked and simply denied without any real effort to understand my sincerely held beliefs as it is simply put to understand as practices. This God is the ruler of all Nations, and is the King of Kings. Through him my father was awaked from a comma, when I asked. Through him when a friend was dying from covid, he lived because I asked. I remain faithful as scripture teaches. We as people are one under God when we are reborn to his Son and live righteously, without sin. Some verses to express my being reborn into that great Nation/Kingdom that isn't equally respected as I live by it are:

Ephesians 2:14
For He Himself is our peace, who made both groups into one and broke down the barrier of the dividing wall Galatians 3:7
Therefore know that only those who are of faith are sons of Abraham.
 Revelation 7
[9] After this I looked, and behold, a great multitude that no one could number, from every nation, from all tribes and peoples and languages, standing before the throne and before the
Lamb, clothed in white robes, with palm branches in their hands, [10] and crying out with a loud voice, "Salvation belongs to our God who sits on the throne, and to the Lamb!"
Revelation 19:16
And on His robe and on His thigh He has a name written, "KING OF KINGS, AND LORD

OF LORDS." Psalm 47

7For king of all the earth [is] God, Give praise, O understanding one.
8God hath reigned over nations, God hath sat on His holy throne,
John 3
[5] Jesus answered, "Most assuredly, I say to you, unless one is born of water and the Spirit, he cannot enter the kingdom of God. [6] That which is born of the flesh is flesh, and that which is born of the Spirit is spirit. [7] Do not marvel that I said to you, 'You must be born again.

My disability was reported when I was hired as a disabled veteran and is in my FDNY records, again since the begging of my employment. As a veteran there are accommodations set in contract such as in Memorial Day adjustment of scheduling. Being a veteran is evidently on record. Defendant as a politician goes over these accommodations in contract made with unions. See **Exhibit F,** it displays union negotiations with Defendant as the employer, The City of New York, and the Union, Uniform Fire Association (UFA) representing the Firefighters of NYC in

Collective Bargaining Agreement, a financial Contract between the Defendant as my employer, the plaintiff, an employer and employee relationship. Defendant claims of not objected, naturally as I have done so with the rest of my case without having to say I am objecting, for the record. UFA phone number in **Exhibit F** as well.

### B. I plausibly stated a claim for the failure to accommodation pursuant to Title VII, SHRL, and ADA.

As stated, before in this motion, I ask the court to not dismiss, gave Exhibits and review attachment in complaints so that we can move forward with your Honors supervision of Article 78 so that no more prolong due process in Justice will be taken in this unjustified action. **C. I plausibly stated a claim for discrimination under the CHRL.**
The claim was out of Jurisdiction and has led to a courtroom that has jurisdiction for the case your Honor, your courtroom, with the right to sue.

**D.       I plausibly stated a claim for retaliation.**
As stated in the letter attached, actions taken against Plaintiff up to this point outside the work environment is all retaliation that is unconstitutional, violates civil rights, Federal, State laws.

**E.       I plausibly stated a hostile work environment claim.** Please reference to the whole letter submitted in original complaint, this motion being turn in, with its full context.

As stated in the letter attached, actions taken against Plaintiff up to this point outside the work environment is all retaliation that is unconstitutional, violates civil rights, Federal, State laws.

### F.       I plausibly stated a failure to promote claim.

Retirement never happened, I became was able to take my Lieutenants test I had been studying for, not any other tests I had previously applied for due to Defendants handling of the workforce, and my raise in contract (**Exhibit F**)I didn't get to apply to my career as I was put on leave without pay while on bed rest with Covid( See **Exhibit I**), which was irrelevant apparently to the Defendant and all who followed his orders as I was put on Leave without pay during the time I was sick. My wellbeing and survival of covid evidently NOT A CONCERN. See **Exhibit H, Part 1-2**

### VI.       The CHRL and SHRL claims are not barred by the election of remedies doctrine.

My New York State of Humane Rights Complaint was not resolved due to lack of Jurisdiction, addressed to the Defendant " The City of New York, Office of the Mayor" complaint number 10214854. This gave me the right to sue as EEOC granted to come to your courtroom your Honor. Nor was it resolved in CHRL due to lack of Jurisdiction. See **Exhibit E part 1-2** and EEOC letter of right to sue attached to Complaint.

/s/ Javier Vasquez

# Exhibit A

← FDOC   ⋮

 **YouOweYourLoved1s TheTruth**
Kojac Congratulations!! May God bless her life
to the fullest! 🎊 🍼 🤱 💃 💖　　♡ 1

9:58 AM

 John Desthers　　　　　　　　♡ 2



Wed, Apr 27, 9:58 AM

  

Mike D　david k...

12

# Exhibit B, Part 1

## Fw: COVID Vaccination registration

2 messages

**Engine 72 (FDNY)** <eng072@fdny.nyc.gov>                    Tue, Jan 12, 2021 at 6:14 PM
To: "mr.j.vasq@gmail.com" <mr.j.vasq@gmail.com>

**Javier,**

THIS IS MANDATORY - you need to DECLINE THE VACCINE for now.

see the instructions in the OPS 20-12-10 pdf file from page 7-10 and create a login from any internet connected computer.

Call the firehouse if you have questions.

Thanks,
Matt Getz

---

**From:** Division 7 (FDNY) <div007@fdny.nyc.gov>
**Sent:** Monday, January 11, 2021 15:02
**To:** Division 7 (FDNY) <div007@fdny.nyc.gov>
**Subject:** COVID Vaccination registration

All units,

Operations just sent out this attached list of members who have not yet logged into LMS and accepted or declined the vaccine.  Please ensure all members log into LMS and accept or decline the vaccination by January 18.

Thank you,
Division 7 Office

---

**From:** Morkal, David (FDNY) <David.Morkal@fdny.nyc.gov>
**Sent:** Monday, January 11, 2021 14:54
**To:** Division 7 (FDNY) <div007@fdny.nyc.gov>
**Cc:** Boyle, Christopher (FDNY) <Christopher.Boyle@fdny.nyc.gov>
**Subject:** COVID Vaccination registration

The attached list is of **all members working in D-7** that have not registered to accept or declined the COVID Vaccination.

As per Buckslip OPS 20-12-10, all members are **required** to log into the Learning Management System (LMS) and either accept or decline the vaccination.  If they accept they will be directed to schedule their appointment.

Please ensure that this information is passed down through the chain of command to make sure that **all members** comply with this.

David Morkal
Battalion Chief
Executive Officer to the Chief of Operations
7W-6
718-999-0369

# Exhibit B, part 2

declined the vaccine. Please ensure all members log into LMS and accept or decline the vaccination by January 18.

Thank you,
Division 7 Office

From: Morkal, David (FDNY) <David.Morkal@fdny.nyc.gov>
Sent: Monday, January 11, 2021 14:54
To: Division 7 (FDNY) <div007@fdny.nyc.gov>
Cc: Boyle, Christopher (FDNY) <Christopher.Boyle@fdny.nyc.gov>
Subject: COVID Vaccination registration

The attached list is of all members working in D-7 that have not registered to accept or declined the COVID Vaccination.

As per Buckslip OPS 20-12-10, all members are required to log into the Learning Management System (LMS) and either accept or decline the vaccination. If they accept they will be directed to schedule their appointment.

Please ensure that this information is passed down through the chain of command to make sure that all members comply with this.

David Morkal
Battalion Chief
Executive Officer to the Chief of Operations
7W-6
718-999-0369

2 Attachments · Scanned by Gmail ⓘ



OPS 20-12-10 CO...    non registered Fir...

Faith Hope Love <mrjuson@gmail.com>    Jun 24, 20    New Message

# Exhibit B, part 3



## BUREAU OF OPERATIONS

FireOps@fdny.nyc.gov

| | |
|---|---|
| TO: | All Boroughs<br>Special Operations Command |
| FROM: | Thomas J. Richardson    Chief of Operations |
| DATE: | December 18, 2020 |
| SUBJECT: | COVID-19 Vaccination Plan for FDNY Members |

The Department expects to receive the Moderna COVID-19 vaccine in the next several days. We plan to begin administering vaccinations for members of EMS operations on Wednesday, December 23 and members of Fire Operations on Tuesday, December 29. **Our intent is that firefighters and officers from Engine Companies and Squad Companies along with covering Captains and Lieutenants, sign up for the appointments as soon as possible.** Members will schedule appointments on their off days and attend on their own time. All members are strongly encouraged to take the vaccine to protect themselves, their colleagues, their families and the public. Even if you have had COVID-19, or have the antibodies, the vaccine is recommended to prevent reinfection.

All EMS members, Firefighters & Fire Officers are required to login to the Learning Management System (LMS) to either **ACCEPT or DECLINE** the vaccination. This registration opens on **December 21, 2020 at 0900 hours.** Registration is mandatory to ensure the Department can provide an accurate count and ensure availability of the vaccine for our members.

Fire Operations members can begin the registration process on December 21. If accepting the vaccination, LMS will allow members to schedule an appointment but the first date available will be December 29th. As more vaccines are delivered to the Department, all members will have the opportunity to receive the vaccine after the first available period of 12/29/20 – 1/6/21.

**WE DO NOT ACCEPT WALK-INS. EVERYONE MUST SCHEDULE AN APPOINTMENT**

**Fire Department, City of New Y**
9 MetroTech Center, Brooklyn, NY 1
nyc.gov/fdny | connect @

# Exhibit B, Part 4

| 07 | 19 | LADDER 46 | BRENNAN ,COLM | LIEUTENANT |
|----|----|-----------|---------------|------------|
| 07 | 19 | LADDER 46 | MCGEE ,MICHAEL | CAPTAIN |
| 07 | 19 | LADDER 46 | KEHOE ,BRIAN | FIREFIGHTER |
| 07 | 19 | LADDER 46 | JOHNSON ,MATTHEW | FIREFIGHTER |
| 07 | 19 | LADDER 46 | ALMODOVAR ,DENNIS | FIREFIGHTER |
| 07 | 19 | LADDER 59 | SIERRA ,JOSE | FIREFIGHTER |
| 07 | 19 | LADDER 59 | FARRELL ,MICHAEL | FIREFIGHTER |
| 07 | 19 | LADDER 59 | MOORE ,THOMAS | CAPTAIN |
| 07 | 19 | LADDER 59 | CULEN ,MICHAEL | LIEUTENANT |
| 07 | 19 | LADDER 59 | JOHNSON JR ,ROBERT | FIREFIGHTER |
| 07 | 19 | LADDER 59 | OSHEA ,THOMAS | FIREFIGHTER |
| 07 | 19 | LADDER 59 | KLAMMER ,ERIC | FIREFIGHTER |
| 07 | 19 | LADDER 59 | CURRY ,PATRICK | FIREFIGHTER |
| 07 | 19 | LADDER 59 | ZAMBRANO ,THOMAS | FIREFIGHTER |
| 07 | 19 | LADDER 59 | FALESTO ,SAL | FIREFIGHTER |
| 07 | 19 | LADDER 59 | BAKER ,CODY | FIREFIGHTER |
| 07 | 19 | LADDER 59 | MARTINS ,SOSTHENES | FIREFIGHTER |
| 07 | 19 | LADDER 59 | TELESCA JR ,MICHAEL | FIREFIGHTER |
| 07 | 19 | LADDER 59 | WOODSON JR ,JASON | FIREFIGHTER |
| 07 | 19 | LADDER 59 | DEPALMA JR ,JOSEPH | FIREFIGHTER |
| 07 | 19 | LADDER 59 | JOHNSON ,SEAN | FIREFIGHTER |
| 07 | 19 | LADDER 59 | PRANGE ,WILLIAM | LIEUTENANT |
| 07 | 19 | LADDER 59 | RODRIGUEZ ,KEITH | FIREFIGHTER |
| 07 | 19 | LADDER 59 | MANSDORF ,DANIEL | FIREFIGHTER |
| 07 | 19 | LADDER 59 | OHANLON JR ,MICHAEL | FIREFIGHTER |
| 07 | 19 | LADDER 59 | MASSIMO ,SEAN | FIREFIGHTER |
| 07 | 20 | BATTALION 20 | HARGADEN ,MICHAEL | FIREFIGHTER |
| 07 | 20 | BATTALION 20 | HAGEN ,CLAUDE | BATTALION CHIEF |
| 07 | 20 | ENGINE 70 | FENNELL ,THOMAS | FIREFIGHTER |
| 07 | 20 | ENGINE 70 | HOVSEPIAN ,MICHAEL | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | FUENTES ,RAOUL | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | MEDINA ,NELSON | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | VASQUEZ ,JAVIER | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | MERCIECA ,VICTOR | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | BALASCO ,MARC | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | DASILVA ,ANDREAS | FIREFIGHTER |
| 07 | 20 | ENGINE 72 | DIOGUARDI ,ERIC | FIREFIGHTER |
| 07 | 20 | ENGINE 89 | NASTA ,ANTHONY | FIREFIGHTER |
| 07 | 20 | ENGINE 89 | APONTE ,DUANE | FIREFIGHTER |
| 07 | 20 | ENGINE 89 | IRIZARRY ,DANIEL | FIREFIGHTER |
| 07 | 20 | ENGINE 89 | ANDERSON ,DREW | FIREFIGHTER |
| 07 | 20 | ENGINE 90 | KLUBER III ,TERRENCE | FIREFIGHTER |
| 07 | 20 | ENGINE 90 | JONES ,AKIM | FIREFIGHTER |
| 07 | 20 | ENGINE 90 | CUOZZO ,ANTHONY | FIREFIGHTER |
| 07 | 20 | ENGINE 90 | LARACUENTA ,JAMES | FIREFIGHTER |
| 07 | 20 | ENGINE 90 | VIGNALI ,CHRISTOPHER | FIREFIGHTER |

# Exhibit C, Part 1

**Site:**

**https://www.nyc.gov/office-of-the-mayor/news/225-001/emergency-executive-order-225**

**Emergency Executive Order 225**

**August 16, 2021**

**Key to NYC: Requiring COVID-19 Vaccination for Indoor Entertainment, Recreation, Dining and**

**Fitness Settings**

Download Emergency Executive Order 225

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments;

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, and extended most recently by Emergency Executive Order No. 220, remains in effect;

WHEREAS, this Order is necessary because of the propensity of the virus to spread person-toperson, and also because the actions taken to prevent such spread have led to property loss and damage;

WHEREAS, the U.S. Centers for Disease Control ("CDC") reports that new variants of COVID19, classified as "variants of concern," are present in the United States;

WHEREAS, some of these new variants currently account for the majority of COVID-19 cases sequenced in New York City and are much more transmissible than earlier variants;

WHEREAS, the CDC has stated that vaccination is the most effective tool to mitigate the spread of COVID-19 and protect against severe illness;

WHEREAS, the CDC has also stated that vaccination benefits both vaccine recipients and those with whom they come into contact, including individuals who are ineligible for the vaccine due to age, health or other conditions;

WHEREAS, the recent appearance in the City of the highly transmissible Delta variant of COVID-19 has substantially increased the risk of infection;

WHEREAS, indoor entertainment, recreation, dining and fitness settings generally involve groups of unassociated people interacting for a substantial period of time and requiring vaccination for all individuals in these areas, including workers, will protect the public health, promote public safety, and save the lives of not just those vaccinated individuals but the public at large;

WHEREAS, 56% of City residents are fully vaccinated and 62% of residents have received at least one dose, and mandating vaccinations at the types of establishments that residents frequent will incentivize vaccinations, increasing the City's vaccination rates and saving lives; and

WHEREAS, a study by Yale University demonstrated that the City's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and the City believes the number of prevented cases, hospitalizations and death has risen since then; and that between January 1, 2021, and June 15, 2021, over 98% of hospitalizations and deaths from COVID-19 infection involved those who were not fully vaccinated;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby order that a covered entity shall not permit a patron, full- or part-time employee, intern, volunteer, or contractor to enter a covered premises without displaying proof of vaccination and identification bearing the same identifying information as the proof of vaccination.

§ 2. I hereby order that the following individuals are exempted from this Order, and therefore may enter a covered premises without displaying proof of vaccination, provided that such

individuals wear a face mask at all times they are unable to maintain six (6) feet of distance from other individuals inside the covered premises:

a. Individuals entering for a quick and limited purpose (for example, using the restroom, placing or picking up an order or service, changing clothes in a locker room, or performing necessary repairs);

b. A nonresident performing artist not regularly employed by the covered entity while they are in a covered premises for purposes of performing;

c. A nonresident professional athlete/sports team who enters a covered premises as part of their regular employment for purposes of competing; and

d. A nonresident individual accompanying a performing artist or professional athlete/sports team into a covered premises as part of their regular employment so long as the performing artist or professional athlete/sports team are performing or competing in the covered premises.

§ 3.  I hereby direct each covered entity to develop and keep a written record describing the covered entity's protocol for implementing and enforcing the requirements of this Order. Such written record shall be available for inspection upon a request of a City official as allowed by law.

§ 4.  I hereby direct each covered entity to post a sign in a conspicuous place that is viewable by prospective patrons prior to entering the establishment. The sign must alert patrons to the vaccination requirement in this Order and inform them that employees and patrons are required to be vaccinated. The Department for Health and Mental Hygiene ("DOHMH") shall determine the text of such sign and provide a template on its website that a covered entity may use. A covered entity may use the sign available online at nyc.gov/keytoNYC, or use its own sign provided its sign must be no smaller than 8.5 inches by 11 inches, with text provided by DOHMH in at least 14-point font.

§ 5.  For the purposes of this Order:

a.  "Contractor" means the owner and/or employees of any business that a covered entity has hired to perform work within a covered premise, except that it shall not include nonresident owners and/or employees.

b.  "Covered entity" means any entity that operates one or more covered premises, except that it shall not include pre-kindergarten through grade twelve (12) public and non-public schools and programs, child care programs, senior centers, community centers, or as otherwise indicated by this Order.

c.  "Covered premises" means any location, except a location in a residential or office building the use of which is limited to residents, owners, or tenants of that building, that is used for the following purposes:

   i.  **Indoor Entertainment and Recreational Settings**, including indoor portions of the following locations, regardless of the activity at such locations: movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial  event and party venues,  museums and galleries, aquariums, zoos, professional sports arenas and indoor stadiums, convention centers and exhibition halls, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and billiard halls, and other recreational game centers;

   ii.  **Indoor Food Services**, including indoor portions of food service establishments offering food and drink, including all indoor dining areas of food service establishments that receive letter grades as described in section 81.51 of the Health Code; businesses operating indoor seating areas of food courts; catering food service establishments that provide food indoors on its premises; and any indoor portions of food service establishment that is regulated by the New York State Department of Agriculture and Markets offering food for on-premises indoor consumption. The requirements of this Order shall not apply to any food service establishment offering food and/or drink exclusively for off-premises or outdoor consumption, or to a food service establishment providing charitable food services such as soup kitchens;

iii. **Indoor Gyms and Fitness Settings**, including indoor portions of standalone and hotel gyms and fitness centers, gyms and fitness centers in higher education institutions, yoga/Pilates/barre/dance studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or other plyometric boxes, and other facilities used for conducting group fitness classes.

d. "Indoor portion" means any part of a covered premises with a roof or overhang that is enclosed by at least three walls, except that the following will not be considered an indoor portion: (1) a structure on the sidewalk or roadway if it is entirely open on the side facing the sidewalk; and (2) an outdoor dining structure for individual parties, such as a plastic dome, if it has adequate ventilation to allow for air circulation.

e. "Nonresident" means any individual who is not a resident of New York City.

f. "Patron" means any individual 12 years of age or older who patronizes, enters, attends an event, or purchases goods or services within a covered premise.

g. "Identification" means an official document bearing the name of the individual and a photo or date of birth.  Examples of acceptable identification include but are not limited to: driver's license, non-driver government ID card, IDNYC, passport, and school ID card.

h. h. "Proof of vaccination" means proof of receipt of at least one dose of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized for emergency use by the World Health Organization. Such proof may be established by:

i. A CDC COVID-19 Vaccination Record Card or an official immunization record from the jurisdiction, state, or country where the vaccine was administered or a digital or physical photo of such a card or record, reflecting the person's name, vaccine brand, and date administered; or

ii.      A New York City COVID Safe Pass (available to download on Apple and Android smartphone devices); or

iii.     A New York State Excelsior Pass.

§ 6.  I hereby direct that each instance that a covered entity fails to check an individual's vaccination status shall constitute a separate violation of this Order.

§ 7.  I hereby direct the City's Commission on Human Rights to develop guidance to assist covered entities in complying with this Order in an equitable manner consistent with applicable provisions of the New York City Human Rights Law.

§ 8.  I hereby direct, in accordance with Executive Law § 25, that staff from any agency as may hereafter be designated by the DOHMH Commissioner shall enforce the directives set forth in this Order.

§ 9.  I hereby direct that any person or entity who is determined to have violated this Order shall be subject to a fine, penalty and forfeiture of not less than $1,000. If the person or entity is determined to have committed a subsequent violation of this Order within twelve months of the initial violation for which a penalty was assessed, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $2,000. For every violation thereafter, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $5,000 if the person or entity committed the violation within twelve months of the violation for which the second penalty was assessed. This Order may be enforced pursuant to sections 3.05, 3.07, and/or 3.11 of the Health Code and sections 558 and 562 of the Charter. I hereby suspend Appendix 7-A of Chapter 7 of the Rules of the City of New York to the extent it would limit a violation of this Order to be punished with a standard penalty of $1,000 or a default penalty of $2,000.

§ 10.  Covered entities shall comply with further guidelines issued by DOHMH to further the intent of this Order and increase the number of vaccinated individuals in the City.

§ 11.  This Emergency Executive Order shall take effect on August 17, 2021, except for section 9 of this Order, which shall take effect on September 13, 2021.

 Bill de Blasio,
MAYOR

# Exhibit C, Part 2

SITE: https://www.nyc.gov/office-of-the-mayor/news/377-22/mayor-adams-on-maskrequirements-2-4-year-olds

**June 9, 2022**

"Throughout the current wave, schools have remained the safest places for our children and beginning Monday, June 13, we will make masks optional for 2-4 year old children in all early childhood settings. We still strongly recommend that New Yorkers of all ages continue to wear masks indoors and we will continue to make masks available for any child or school staff member who wishes to continue wearing them.

# Exhibit C, Part 3

**Emergency Executive Order 62**

**March 24, 2022**

[Download Emergency Executive Order 62](Download Emergency Executive Order 62)

WHEREAS, the COVID-19 pandemic has severely impacted New York City and its economy, and is addressed effectively only by joint action of the City, State, and Federal governments; and

WHEREAS, the state of emergency to address the threat and impacts of COVID-19 in the City of New York first declared in Emergency Executive Order No. 98, issued on March 12, 2020, and extended most recently by Emergency Executive Order No. 46, issued on February 28, 2022, remains in effect; and

WHEREAS, this Order is given because of the propensity of the virus to spread person-toperson, and also because the actions taken to prevent such spread have led to property loss and damage; and

WHEREAS, athletes and performing artists frequently conduct their work at venues both inside and outside of the City, without regard to their residence in the City, and their work benefits the City's economic recovery from the pandemic, often attracting large numbers of visitors to the City; and

WHEREAS, New York City athletic teams have been, and continue to be, at a competitive disadvantage because visiting teams can field unvaccinated players, and this competitive disadvantage has negatively impacted, and continues to negatively impact, New York City teams' success, which is important to the City's economic recovery and the morale of City residents and visitors; and

WHEREAS, additional reasons for requiring the measures continued in this Order are set forth in my prior Emergency Executive Order No. 50, issued on March 4, 2022;

NOW, THEREFORE, pursuant to the powers vested in me by the laws of the State of New York and the City of New York, including but not limited to the New York Executive Law, the New York City Charter and the Administrative Code of the City of New York, and the common law authority to protect the public in the event of an emergency:

Section 1. I hereby direct that section 1 of Emergency Executive Order No. 59, dated March 19, 2022, is extended for five (5) days.

§ 2. I hereby order that section 3 of Emergency Executive Order No. 50, dated March 4, 2022, is amended to read as follows.

§ 3. I hereby direct that:

a. Covered entities that had been covered by the Key to NYC program shall continue to require that a covered worker provide proof of vaccination, unless such worker has received a reasonable accommodation. Covered entities shall continue to keep a written record of their protocol for
checking covered workers' proof of vaccination and to maintain records of such workers' proof of vaccination, as described in subdivisions d and e of section 2 of Emergency Executive Order No. 317, dated December 15, 2021.

b. Records created or maintained pursuant to subdivision a of this section shall be treated as confidential.

c. A covered entity shall, upon request by a City agency, make available for inspection the records required to be maintained by this section, consistent with applicable law.

d. For the purposes of this Section:

(1)     "Covered entity" means any entity that operates one or more "covered premises," except that "covered entity" does not include pre-kindergarten through grade twelve (12) public and nonpublic schools and programs, houses of worship, childcare programs, senior centers, community centers.

(2)     "Covered premises" means any of the following locations, except as provided in subparagraph (iv) of this paragraph:

**(i) Indoor Entertainment and Recreational Settings, and Certain Event and Meeting Spaces**, including indoor portions of the following locations, regardless of the activity at such locations: movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial event and party venues, museums, aquariums, zoos, professional sports

arenas and indoor stadiums, convention centers and exhibition halls, hotel meeting and event spaces, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and billiard halls, and other recreational game centers;

**(ii)**     **Indoor Food Services**, including indoor portions of food service establishments offering food and drink, including all indoor dining areas of food service establishments that receive letter grades as described in section 81.51 of the Health Code; businesses operating indoor seating areas of food courts; catering food service establishments that provide food indoors on its premises; and any indoor portions of an establishment that is regulated by the New York State Department of Agriculture and Markets offering food for on-premises indoor consumption; and

**(iii)**    **Indoor Gyms and Fitness Settings**, including indoor portions of standalone and hotel gyms and fitness centers, gyms and fitness centers in higher education institutions, yoga/Pilates/barre/dance studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or other plyometric boxes, and other facilities used for conducting group fitness classes.

**(iv)**    "Covered premises" does not include houses of worship or locations in a residential or office building the use of which is limited to residents, owners, or tenants of that building.

(3) "Covered worker" means an individual who works in-person in the presence of another worker or a member of the public at a workplace in New York City. "Covered worker" includes a full- or part-time staff member, employer, employee, intern, volunteer, or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

"Covered worker" does not include:

(i)   an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

(ii)  an individual who enters the workplace for a quick and limited purpose;

(iii) a performing artist, or an individual accompanying such performing artist, while the performing artist is in a covered premises for the purpose of such artist's performance; or

(iv) a professional athlete, or an individual accompanying such professional athlete or such athlete's sports team, who enters a covered premises as part of their regular employment.

(4) "Proof of vaccination" means proof of receipt of a full regimen of a COVID-19 vaccine authorized for emergency use or licensed for use by the U.S. Food and Drug Administration or authorized for emergency use by the World Health Organization, not including any additional recommended booster doses. Such proof may be established by:

(i)   A CDC COVID-19 Vaccination Record Card or an official immunization record from the jurisdiction, state, or country where the vaccine was administered, or a digital or physical photo of such a card or record, reflecting the person's name, vaccine brand, and date administered; or

(ii)  A New York City COVID Safe App (available to download on Apple and Android smartphone devices); or

(iii) A New York State Excelsior Pass; or

(iv)  CLEAR's digital vaccine card; or

(v)   Any other method specified by the Commissioner of Health and Mental Hygiene as sufficient to demonstrate proof of vaccination.

(5) I hereby order that section 20-1271 of the Administrative Code of the City of New York is modified by adding the following provision to the definition of "just cause:" Notwithstanding any provision of this chapter, a fast food employer shall be deemed to have just cause when a fast food employee has failed to provide proof of vaccination required by an emergency executive order issued in response to the COVID-19 pandemic and shall not be required to follow progressive discipline procedures prior to terminating the employee, provided that the employee shall have 30 days from the date when the employer notified the employee of the requirement to submit such proof and the employee shall be placed on leave following such notification until such proof is provided.  This provision shall not excuse the employer from the responsibility to provide a reasonable accommodation where required by law.

e. An individual who meets the requirements of subparagraph (iii) or (iv) of section 3(d)(3) of this Order shall be exempt from the Order of the Commissioner of Health dated December 13, 2021, relating to requiring COVID-19 vaccination in the workplace.

§ 3. I hereby direct the Fire and Police Departments, the Department of Buildings, the Sheriff, and other agencies as needed, to enforce the directives set forth in this Order in accordance with their lawful authorities, including Administrative Code sections 15-227(a), 28-105.10.1, and 28201.1, and section 107.6 of the Fire Code. Violations of the directives set forth in this Order may be issued as if they were violations under Health Code sections 3.07 and 3.11, and enforced by the Department of Health and Mental Hygiene or any other agency.

§ 4. This Emergency Executive Order shall take effect immediately and shall remain in effect for five (5) days unless it is terminated or modified at an earlier date.

Eric Adams
Mayor

# Exhibit D

SITE:https://www.businessinsider.com/new-york-suspends-unemployment-insurance-healthcarevaccine-mandate-2021-9

Healthcare workers who <u>refuse the COVID-19 vaccine</u> and are fired for failing to comply with a new state law will not be able to collect unemployment benefits unless they present a doctorapproved request for medical accommodation, according to the New York Department of Labor.

New York's new vaccine mandate, which goes into effect Monday, makes it necessary for workers in New York's hospitals and nursing homes to have received at least one dose of a COVID-19 vaccine. Employees working at in home care, hospice, and adult care facilities need to be vaccinated by October 7. The mandate also applies to all out-of-state and contract medical staff who practice in New York.

"Workers in a healthcare facility, nursing home, or school who voluntarily quit or are terminated for refusing an employer-mandated vaccination" are not eligible for unemployment insurance because the employer has a "compelling interest" for its employees to be vaccinated, according to the New York Department of Labor website.

New York Governor Kathy Hochul has said she is prepared to call in medically trained National Guard members and workers outside New York to aid with a potential shortage of healthcare workers once the mandate takes effect and some people are no longer eligible to come to work.

# Exhibit E, Part 1



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

JAVIER A. VASQUEZ,

Complainant,

v.

CITY OF NEW YORK, OFFICE OF THE MAYOR,

Respondent.

DETERMINATION AND
ORDER OF DISMISSAL FOR
LACK OF JURISDICTION

Case No.
10214854

---

Federal Charge No. 16GC200867

On 11/17/2021, Javier A. Vasquez filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named Respondent with an unlawful discriminatory practice relating to employment because of creed in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

Pursuant to Section 297.2 of the Human Rights Law, the Division finds that it does not have jurisdiction for the following reason: Complainant is employed by the City of New York, Fire Department ("FDNY"). Complainant and named Respondent neither have nor have ever had an employee-employer relationship.

The complaint is therefore ordered dismissed and the file is closed:

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under Title VII of the Civil Rights Act of 1964. Enforcement of the aforementioned law(s) is the responsibility of the U.S. Equal Employment Opportunity

# Exhibit E , Part 2

Commission (EEOC). You have the right to request a review by EEOC of this action. To secure review, you must request it in writing, within 15 days of your receipt of this letter, by writing to EEOC, New York District Office, 33 Whitehall Street, 5th Floor, New York, New York 10004-2112. Otherwise, EEOC will generally adopt our action in your case.

Dated: 03/02/22
Brooklyn, New York

STATE DIVISION OF HUMAN RIGHTS

By: _William LaMot_ _____
William LaMot
Regional Director

# Exhibit F



# 65-2

**An Official Communication
from the Uniformed Firefighters Association**



The Bravest

NYC Firefighters
IAFF Local 94
AFL CIO

204 East 23rd Street, New York, NY 10010 • Tel: 212-683-4832 • Fax: 212-683-0710 • www.ufanyc.org
Follow us on   Twitter: @ufanyc   Facebook: @ufanyc   Instagram: @fdny_ufa

## #109 of 2021  ·  December 23rd

### *Collective Bargaining Agreement*

The UFA has reached an agreement with the City of New York in settlement of a new three-year contract for all UFA members.

In addition to the wage increases of 7.95% for all Firefighters, Fire Marshals, Wipers, Marine Engineers and Pilots, we reached an agreement to obtain the 2.25% service and longevity differentials for our members.

Many thanks to OLR and the FDNY in getting this accomplished just in time for the holidays and prior to the start of the new administration.

Fraternally,

43

# Exhibit G

Article 78 of the CPLR v. N.Y.C. Fire Dep't Rivicci)

Opinion

No. 85131/2022

10-07-2022

TIMOTHY RIVICCI, Petitioner, v. NEW YORK CITY FIRE DEPARTMENT and THE CITY OF NEW YORK, Respondents. For A Judgment Pursuant To Article 78 of the CPLR

Ralph J. Porzio Judge:

Unpublished Opinion

AMENDED DECISION & ORDER

Ralph J. Porzio Judge:

Upon the papers filed in support of the application and the papers filed in opposition thereto, and after hearing oral arguments, it is

ORDERED that Motion #002 brought by Respondents for a judgment pursuant to CPLR 3211(a)(7) to dismiss the Petition on the grounds that the Petitioner failed to state a claim is hereby denied.

ORDERED that the Petition is hereby granted.

## BACKGROUND & PROCEDURAL HISTORY

Petitioner, Timothy Rivicci, (hereinafter "Petitioner"), is a former firefighter with the New York City Fire Department (hereinafter "FDNY"). By way of background, the Petitioner began working as a firefighter with the FDNY in 2016. During the Covid-19 pandemic, Mayor Bill DeBlasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City of New York. Thereafter, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency. It is noteworthy, that these declarations are still in effect, over two years later.

The Department of Health and Mental Hygiene (hereinafter "DOHMH") issued an Order on October 20, 2021, which required all New York City employees to receive vaccination against Covid-19 by on or before October 28, 2021. The City maintains that vaccination is a condition of employment with the City of New York. As the Petitioner failed to provide proof of vaccination by November 1,2021, he was placed on Leave Without Pay (hereinafter "LWOP"), On November 5, 2021, the Petitioner submitted a religious reasonable accommodation request to the FDNY Equal Employment Opportunity Office (hereinafter "FDNY EEO"). The FDNY ultimately denied this request, claiming that it constituted an undue hardship to the agency. The Petitioner appealed his denial to the City of New York Reasonable Accommodation Appeals Panel (hereinafter "City Panel"). On February 20, 2022, the City Panel denied the Petitioner's appeal in light of the undue hardship to the FDNY. On March 14, 2022, the Petitioner was terminated from employment for failure to be vaccinated.

This action was commenced with the filing of a Petition pursuant to CPLR Article 78 on June 10, 2022. The Petitioner alleges that the denial of his reasonable accommodation request and subsequent termination was affected by an error of law or was arbitrary and capricious. Petitioner seeks a judgment of reinstatement to his prior employment.

On July 21, 2022, the Respondents, FDNY and City of New York, filed a pre-Answer Motion to Dismiss. After oral arguments on August 12, 2022, the Court denied the Motion to Dismiss. The Court directed the Respondents to file their Answer. Oral arguments on the Petition were heard on October 4, 2022.

## MOTION TO DISMISS

Upon a motion to dismiss a complaint pursuant to CPLR §3211, a court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff." Morris v. Gianelli, 71 A.D.3d 965, 967 [2d Dept. 2010]. A motion to dismiss should be granted where the Complaint fails to "contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." Matlin Patterson ATA Holdings LLC v. Fed. Express Corp., 87 A.D.3d 836, 839 (1st Dept. 2011).

CPLR §3211 (a)(7) provides that "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that...the pleading fails to state a cause of action." The Court will consider "whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail." Guggenheimer v. Ginzburg, 43 N.Y.2d 268,275 (1977). Dismissal pursuant to CPLR 3211(a)(7) is warranted if the evidentiary proof disproves an essential allegation of the complaint, even if the allegations of the complaint, standing alone, could withstand a motion to dismiss for failure to state a cause of action. Korinsky v. Rose, 120 A.D.3d 1307, 1308 (2d Dept. 2014). Courts have repeatedly granted motions to dismiss where the factual allegations in the claim were merely conclusory and speculative in nature and not supported by any specific facts." See Residents for a More Beautiful Port Washington, Inc. v. Town of North Hempstead, 153 A.D.2d 727 [2d Dept 1989]; Stoianoff v. Gahona, 248 A.D.2d 525 [2d Dept. 1998].

Here, the Court finds it clear that the Petitioner has a cause of action cognizable at law. Therefore, the Motion to Dismiss is denied and in the interest of justice, the Respondents were permitted to Answer and all other claims within the motion papers are addressed below.

ARTICLE 78

Standard of Review

Judicial review of the acts of an administrative agency under article 78 is limited to questions expressly identified by statute (see CPLR §7803; Matter of Featherstone v. Franco, 95 N.Y.2d 550, 554 [2000]). CPLR §7803 states:

The only questions that may be raised in a proceeding under this article are:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

5. A proceeding to review the final determination or order of the state review officer pursuant to subdivision three of section forty-four hundred four of the education law shall be brought pursuant to article four of this chapter and such subdivision; provided, however, that the provisions of this article shall not apply to any proceeding commenced on or after the effective date of this subdivision.

Under CPLR Article 78, the Petitioners must establish that the agency determination or decision is so "lacking in reason for its promulgation that it is essentially arbitrary." NY State Ass 'n. of Counties v. Axelrod, 78 N.Y.2d 158, 166 (1991). The standard of review is "whether the regulation has a rational basis, and is not unreasonable, arbitrary, or capricious." Matter of Consolation Nursing Home, Inc., v. Commr. Of New York State Dept. of Health, 85 N.Y.2d 326, 331-332 [1995]. The reviewing court "must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." O 'Rourke v. City of NY, 64 Misc.3d 1203 [A] [Sup. Ct. Kings County 2019]. The Court "may not substitute its own judgment of the evidence...but should review the whole record to determine whether there exists a rational basis to support the findings upon which the ...determination is predicated." Purdy v. Kreisberg, 47 N.Y.2d 354, 358 (1979). "Public health agencies, in particular, are entitled to a high degree of judicial deference when acting in their area of their particular expertise." C.F. v. NYC Dept. Of Health & Mental Hygiene, 191 A.D.3d 52, 69 [2d Dept. 2020].


In reviewing alleged arbitrary and capricious administrative determinations, a reviewing court's function is limited to "whether the record contains sufficient evidence to support the rationality of the...determination." Atlas Henrietta LLC v. Town of Henrietta Zoning Ed. Of Appeals, 46 Misc.3d 325, 332 [Sup. Ct. 2013] affd, 120 A.D.3d 1606 [2014]. Furthermore, "capricious action in a legal sense is established when an administrative agency on identical facts decides differently." Italian Sons & Daughters, Inc. v. Common Council of Buffalo, 453 N.Y.S.2d 962 [4th Dept. 1982], Reasonable Accommodation Process

The Petitioner submitted his "Request for Reasonable Accommodation" on November 5, 2021. In his request, the Petitioner requested weekly testing and/or antibody testing as a possible accommodation. On November 29,2021, the FDN Y EEO denied the Petitioner's Accommodation Request, stating that Petitioner's "asserted basis for the accommodation is insufficient to grant the requested accommodation, particularly in light of the potential undue hardship to the Department."

On or about December 6, 2021, the Petitioner appealed the denial of his accommodation request. On or about January 7, 2022, the Petitioner received an email regarding "Supplemental Information: Denial of Religious Request for Vaccine Mandate Exemption." The Petitioner was informed that his exemption request was denied because "the asserted religious basis seeking the exemption was insufficient in light of the potential undue hardship to the Department." On or about February 20, 2022, the City Panel denied the Petitioner's appeal, citing "Employer undue hardship" without any further description as to what the undue hardship was.

Under federal law, the City of New York must make reasonable accommodations for religious practices of its employees, unless the accommodation results in undue hardship on the conduct of the employer's business. Baker v. The Home Depot, 445 F.3d 541 [2d Cir. 2006]. Pursuant to the NYC Administrative Code, the City of New York must reasonably accommodate an employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless the accommodation would create an undue hardship or present a direct threat. See NYC Admin. Code 8-107(3). Furthermore, the Respondents must show that accommodating the employee would cause a "significant interference with the safe or efficient operation of the workplace." See NYC Admin. Code 8-107(3)(b). Moreover, "the determination that no reasonable accommodation would enable the person requesting an accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.'" See NYC Admin. Code 8-107 (28)(e) (emphasis added).

DECISION

In this action, it is of note that the denial of the Petitioner's religious reasonable accommodation request only included the reasons "potential undue hardship" from the FDNY and, on appeal, an "undue hardship" from the City Panel. This Court finds the denial of the Petitioner's reasonable accommodation request was arbitrary and capricious

because the reasons given for the denial were vague and conclusory. See CPLR 7803(3); See also Loiacano v. The Board of Education of the City of New York, et al, Index No.: 154875/2022 (wherein the Court found that the denial of a reasonable accommodation "simply states that the panel reviewed her request and denied it without explaining why it did so.") See DeLetto v. Eric Adams, et al, Index No. 156459/2022 decision dated 9/13/2022, (wherein the Court found the denial of a religious exemption, finding that the determination of the NYPD was "irrational because it did not provide any individualized analysis.") and Police Benevolent Assoc, v. City of New York, et al. Index 151531 /2022 (wherein the Court struck down the vaccine mandate as to the members of the Police Benevolent Association on the following grounds: (1) that the City cannot unilaterally impose a condition of employment without collective bargaining with the PBA; (2) the mandate is invalid to the extent it seeks enforcement by putting workers on leave without pay or terminating them; and (3) members of the PBA that were wrongfully terminated and/or put on leave without pay were directed to be reinstated).

Furthermore, the Court finds that the denial of the Petitioner's reasonable accommodation request was made in violation of lawful procedure. See CPLR §7803. Neither the FDNY, nor any other City agency, engaged in a cooperative dialogue with the Petitioner regarding an accommodation to satisfy the essential requisites of a job, in direct violation of the New York City Human Rights Law. NYC Admin. Code 8-107 (28)(e).

Simply citing an "undue hardship" is not an explanation for denial of a reasonable accommodation. Further, there is no evidence within the record that the Petitioner's religious beliefs are not sincerely held. This appears to be a generic denial, without any reasoning for the denial of this Petitioner's request. Further compelling, is the Affidavit of Don Nguyen, the Assistant Commissioner of Equal Employment Opportunity at the FDNY, provided by the Respondents, wherein he explained that the FDNY has granted twenty (20) reasonable accommodations, both for medical and religious exemptions. The Petitioner, on reply, at the Court's request, submitted the Affidavits of Robert Banome and Stephen Fitzgerald, members of the FDNY who were granted reasonable accommodations of weekly testing and mask wearing. The Court cannot help but question, why were those accommodations of testing and masking granted, while this Petitioner's request for an accommodation would cause an "undue burden" to the Department. It makes no difference to this Court whether the accommodation was granted for a religious or medical reason. The record is bereft of any reasoning, rational or otherwise.

Though the Court cannot substitute its own judgment for an agency determination, the question presented is whether there exists a rational basis within the record to support the determination. See Purdy v. Kreisberg, Al N.Y.2d 354, 358 (1979) and Atlas Henrietta

LLC v. Town of Henrietta Zoning Bd. Of Appeals, 46 Misc.3d 325, 332 [Sup. Ct. 2013] aff'd, 120 A.D.3d 1606 [2014]. There is not.

By granting some accommodations while denying others, without a rational reason, the FDNY and the City of New York have acted in an arbitrary and capricious manner. See Italian Sons & Daughters, Inc. v. Common Council of Buffalo, 453 N.Y.S.2d 962 [4th Dept. 1982]. The Respondents statements during litigation "does not suddenly transform the denial into one that contains logical reasoning." Loiacano v. The Board of Education of the City of New York, et al, Index No.: 154875/2022. Furthermore, the City of New York has regularly and arbitrarily enforced vaccination and masking mandates. As this Court previously ruled in the Goldenstein, et al, v. New York City Dept. of Health & Mental Hygiene et al, athletes and performing artists can "work" in our city because they were granted a blanket vaccination exemption by the Mayor, meanwhile, our essential workforce is being terminated and punished for non-compliance. Vaccination mandates were lifted for those in the private sector but doubled down on with the City workforce.

Mayor's Emergency Executive Order 62; https://wwwl.nyc.gov/office-of-themayor/iiews/062-003/emergencyexecutive-order-62; last accessed October 4,2022.

Hindsight is a powerful tool. The pandemic today is not what it was a year, or even two years, ago. Being vaccinated does not prevent an individual from contracting or transmitting Covid-19, Guidelines regarding quarantine and isolation are the same for vaccinated and unvaccinated individuals. This is not a commentary on the efficacy of vaccination, but about how we are treating our first responders, the ones who worked day-to-day through the height of the pandemic. They deserve better.

The undue burden to the FDNY was never articulated and there appears to be no rational basis within the record to support the determination by the City of New York as to this Petitioner. There was no cooperative dialogue and no options given to the Petitioner as to how to maintain his position, while not contradicting his sincerely held religious beliefs. A cooperative dialogue is not a suggestion. It is required by law. It is of no concern to this Court that the FDNY received more exemption requests than anticipated. Each request for an exemption, whether it be medical or religious, required that the law be followed. As the record contains insufficient evidence to support the Respondents' determination and there was no cooperative dialogue regarding the accommodation request, the denial of the Petitioner's reasonable accommodation is hereby annulled.

Finally, the Court is granting the Petitioner's application for backpay and attorney's fees. Per the Respondent's submission of the Affirmation of Eric Eichenholtz, the Chief Assistant Corporation Counsel for Employment Policy and Litigation, "a grant of a reasonable accommodation for an employee on LWOP results in the employee being restored to payroll and provided with back pay for the period of time they were on LWOP status." The Court further finds that an award of attorney's fees to the Petitioner is warranted under the facts and circumstances of this case. See Auguste v. Wing, 269 A.D.2d 239 [1st Dept. 2000]; Graves v. Doar, 87 A.D.3d 744 [2d Dept. 2011]; Perez v. New York Slate Dept. of Labor, 259 A.D.2d 161 [3d Dept. 1999],

Accordingly, it is hereby

ORDERED that the Petition is granted in that the Petitioner is entitled to a religious exemption from the vaccine mandate.

ORDERED that the Petitioner's termination from the FDNY is hereby annulled.

ORDERED that the Petitioner is reinstated to his full employment status, effective October 5, 2022, at 5:00PM.

ORDERED that the Petition is granted in that the Petitioner is entitled to back pay in salary and benefits from November 5, 2021, the date he submitted his request for a reasonable accommodation.

ORDERED that an award of attorney's fees is granted to the Petitioner.

ORDERED that the Petitioner is directed to submit a proposed order and judgment regarding back pay and attorney's fees consistent with this decision on or before October 12,2022.

# Exhibit H, Part 1



# Important Information Regarding Your <mark>DCAS</mark> Examination — Application Deadline Extension

☆

 Inbox

**Online Application Syst...** 4/7/2020
to ⌄

Dear Candidate,

Our records indicate that you applied for one or more of the following examinations:

| EXAM TITLE | EXAM NO | EXAM TITLE | EXAM NO |
|---|---|---|---|
| Assistant Landscape Architect | 0167 | Lieutenant (Fire) (Prom) | 0569 |
| Associate Fraud Investigator (Prom) | 0568 | Mechanical Engineer | 0170 |
| Associate Youth Development Specialist (Prom) | 0515 | Occupational Therapist (DOE) | 0171 |
| Bridge Operator | 0168 | Police Communications Technician | 0144 |
| Construction Project Manager | 0169 | Supervisor of Mechanical Installations and Maintenance | 0172 |
| Fire Protection Inspector | 0804 | Supervisor of Mechanics (Mechanical Equipment) (Prom) | 0520[ |

Due to CoVID-19, the application period has been extended to midnight EST on **4/21/2020.**

If your exam contains an Education and test part (EEE) and you have not yet final submitted your EEE, you must do so



# Exhibit H, Part 2



# Important Information Regarding DCAS Exam – Promotion to Lieutenant (Fire), Exam No. 0569

▶ Inbox

Online Application Sys... 4/30/2020
to ∨

Dear Candidate,

You are receiving this message because you applied for the multiple-choice test for Promotion to Lieutenant (Fire), Exam No. 0569. The testing period for this exam was scheduled to begin on Saturday, May 16, 2020. Due to the ongoing precautions regarding COVID-19, DCAS is postponing this exam administration.

We hope you understand our decision to postpone this exam and we apologize for any inconvenience this may cause you. When a decision is made regarding the new multiple-choice test date for this exam you will be notified via email.

If you no longer wish to take this exam and you paid the application fee, you may request a refund of the application fee. Applicants who would like to receive a refund must write to DCAS by replying to this email (OASys@dcas.nyc.gov) no later than July 1, 2020. However, please note that we will not begin issuing refunds until August 31, 2020. In your emailed request, please include the following:

- Your full name and,

# Exhibit I



Vaccine Mandate Appeal Disposition  Inbox ×

EEO VAX RA (FDNY) <EEOVAXRA@fdny.nyc.gov>
to me ▾

Mon, Jul 11, 2022, 6:53 PM

**FIRE DEPARTMENT**
9 Metro Tech Center, Brooklyn N.Y.  11201-3857

**EQUAL EMPLOYMENT OPPORTUNITY OFFICE**

**CONFIDENTIAL NOTICE**

July 11, 2022

VIA E-MAIL

Re:     **Appeal Denial** of Request for Vaccine Mandate Exemption – Fire Operatives

Javier Vasquez 1455681

The Fire Department has been informed that the New York City Appeals Panel ("Appeals Panel") has **denied your appeal** for a reasonable accommodation ("RA") seeking an exemption from the October 20, 2021, Order of the Commissioner of Health and Mental Hygiene, which requires all City employees to be vaccinated against COVID-19 ("vaccine mandate") as a condition of continued employment.

**You must submit proof of receipt of a COVID-19 vaccine within three (3) days of the Appeals Panel decision or you will be placed on leave without pay ("LWOP") status.** If the vaccination is Moderna or Pfizer, you must receive a second dose within 45 days thereafter.

**If you have already been fully vaccinated or if you have retired from the FDNY, please disregard this letter.**

To the extent that you do not comply with the vaccine mandate within three days, further employment action may be taken depending on the rules applicable to your title.

Sincerely,

The FDNY Office of
Equal Employment Opportunity

# Exhibit J

# AFFIDAVIT

I Marvin-Harold: Taylor., have worked with Firefighter Vasquez during the period in question. I witnessed the difficulty brought upon him by the COIVD-19 mandate. He openly expressed his concerns with having to take the weekly PCR tests to stay employed and continue supporting his family. The test was given openly and without privacy in the FDNY headquarters auditorium among several other people. Firefighter Vasquez is a man that is open and honest about his religious views and practices. Firefighter Vasquez was under constant stress and duress concerning his job and the life and liberty of his family. We also talked candidly about him finding mediocre work in order to continue supporting his family, and the financial burden that would begin to fall on his wife; moving out of NY would be a last resort if he could not find sufficient income.

Even though he submitted to the weekly testing and was consistently found negative to having COVD 19 anti- bodies, he and many others were labeled unvaccinated. As the weekly testing was performed openly and without privacy, not disclosing his vaccination status no longer mattered; it rendered the vaccination disclosure form useless. Further, a phone call would be made daily to our department from the auditorium, informing us of what members had to go down for testing. Except for 11 Firefighters, Vasquez and many others had their religious exemptions denied without explanation.

Firefighter Vasquez would often express how he saw the divide that was caused in New York City by former Mayor Bill de Blasio. I witnessed medical staff refer to Firefighters as the unvaccinated that were still doing testing. To be unvaccinated was to be socially ostracized in an work environment.

Firefighter Vasquez would speak on the increasing numbers of members becoming ill after having been vaccinated and be allowed to continue to work. We would receive phone calls in our department that would confirm those conversations. Towards the end of his employment with the FDNY, Vasquez took the initiative when he felt sick, to go on medical leave. To my knowledge, no one from that tour became sick afterwards. That was the last time I had the pleasure to work with Firefighter Vasquez.

If any clarity is needed, you may reach out to me.

By: _Marvin-Harold: Taylor_

The Affiant/Living man did appear, and prepare the foregoing instrument before me on this **28**

Day of ___June___ **2023**

NANCY J. FUENTES
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 21, 2027
COMMISSION #2357067

/s/ Javier Vasquez