UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAVIER VASQUEZ,

                    Plaintiff,

          v.

CITY OF NEW YORK – OFFICE OF THE
MAYOR,

                    Defendant.

**MEMORANDUM & ORDER**
22-CV-05068 (HG) (VMS)

**HECTOR GONZALEZ**, United States District Judge:

On August 19, 2022, Plaintiff Javier Vasquez, a New York City Fire Department

("FDNY") firefighter, commenced this *pro se* action against the New York City Office of the

Mayor[1] alleging various claims primarily under Title VII of the Civil Rights Act ("Title VII"),

42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101 *et seq.*, related to requirements the FDNY imposed on its employees in 2021 to test or

be vaccinated for COVID-19.  *See generally* ECF No. 1 (Complaint).  Defendant has moved to

dismiss.  ECF No. 16 (Notice of Defendant's Motion); ECF No. 17 (Defendant's Motion).

Plaintiff opposes the motion.  ECF No. 31 (Plaintiff's Opposition); ECF No. 32 (Plaintiff's

Supplemental Opposition).  For the reasons set forth herein, Defendant's Motion to Dismiss is

granted in part and denied in part.

---

[1]     Defendant asserts that the Office of the Mayor, as an agency of the City of New York, is
not a suable entity and that the proper party in this action should be the City of New York.  ECF
No. 17 at 1 n.1.  Because Plaintiff is proceeding *pro se*, I will consider Plaintiff's complaint
against the Office of the Mayor as if he had brought his claims against the City of New York (the
"City") directly.  *See, e.g.*, *Cameron v. Coach Apparel Store*, No. 07-cv-3991, 2009 WL 536068,
at *2 (S.D.N.Y. Mar. 3, 2009) ("Keeping in mind that Plaintiff appears *pro se*, the Court will
construe his claims against the New York Police Department[,] . . . which is not a suable entity,
as being claims against the City of New York."); *Maier v. NYPD*, No. 08-cv-5104, 2009 WL
2915211, at *2 (E.D.N.Y. Sept. 1, 2009) (collecting cases).

## BACKGROUND

Plaintiff alleges that he was terminated from his employment with the FDNY because he did not comply with the City's requirement that City employees be vaccinated against COVID-19.  ECF No. 1 at 4, 6.  On August 31, 2021, City employees were required to submit proof of vaccination by September 13, 2021, or to participate in weekly testing for COVID-19.  *See* ECF No. 18-1 (Executive Order 78).  On October 20, 2021, the New York City Department of Health and Mental Hygiene ("DOHMH") issued an order requiring employees to show proof of vaccination by October 29, 2021; otherwise, they would be excluded from their assigned work location beginning on November 1, 2021.  ECF No. 18-2 §§ 2–3 (DOHMH Order).  The DOHMH Order specifically stated that "[n]othing in this Order shall be construed to prohibit any reasonable accommodation otherwise provided by law."  *Id.* § 8.

Since September 2019, Plaintiff was not an "active-duty" firefighter, but rather served in a "light duty" position.  ECF No. 31 at 3.  On October 1, 2021, Plaintiff sought an exemption from the requirement to receive the COVID vaccine or to submit to weekly testing, which was denied.  *See* ECF No. 18-5 at 3 (First Reasonable Accommodation Request); ECF No. 18-6 (First Reasonable Accommodation Denial).  Plaintiff appealed that decision but nevertheless participated in COVID-19 testing through his termination.  *See* ECF No. 31 at 4.  Subsequently, on October 20, 2021, Plaintiff submitted another reasonable accommodation request, this time seeking an exemption from the vaccination requirement.  ECF No. 18-8 at 3 (Second Reasonable Accommodation Request).  On December 13, 2021, the FDNY denied that request as well, stating that "[t]he asserted basis for the accommodation is insufficient to grant the requested accommodation, particularly in light of the potential undue hardship to the [FDNY]."  ECF No. 18-10 (Second Reasonable Accommodation Denial).  Plaintiff appealed that decision to the citywide appeals panel, which denied his appeal on July 11, 2022.  ECF No. 18-12 (Citywide

Appeal Denial).  The FDNY informed Plaintiff that vaccination was a "condition of continued employment," and that if he did not submit proof of vaccination within three days, he would be placed on leave without pay.  *Id.*  The FDNY subsequently terminated Plaintiff effective July 26, 2022, because he did not comply with the vaccination requirement.  ECF No. 18-13 (Termination Notice).[2]  Although other City employees who did not receive a COVID-19 vaccine were supposedly put on leave without pay status for a month before being terminated, Plaintiff alleges that he was terminated without first being placed on leave.  ECF No. 1 at 6.  Plaintiff also alleges that he was allowed to work unvaccinated for at least some period of time prior to his termination.  ECF No. 32 at 1.

Plaintiff alleges that his termination amounted to discrimination based on religion, national origin, and disability.  ECF No. 1 at 5.  The Complaint does not specifically identify his religion or national origin, but his Complaint references "Jesus," and Plaintiff says that he can "trace[]" his ancestry "back to [a] Biblical tribe."  *Id.* at 5, 10.  Plaintiff identified himself in a complaint that he filed with the New York State Division of Human Rights ("NYSDHR") as a Christian.  ECF No. 29-1 at 6 (NYSDHR Complaint Against FDNY and May 3, 2023, Determination).  The Complaint similarly does not identify a specific disability.  ECF No. 1 at 5.  However, Plaintiff says that he personally knows other FDNY employees who experienced "brain swelling" after receiving the COVID-19 vaccine, that the rate of death among FDNY employees increased after the City adopted its employee vaccine mandate, and that his "genetic father" "died shortly after receiving" a dose of a COVID-19 vaccine.  *Id.* at 7.  In his Opposition,

---

[2]      Although irrelevant to the instant motion, a New York state court subsequently determined that the FDNY's termination of Plaintiff was arbitrary and capricious, and ordered him reinstated with back pay.  *See Vasquez v. N.Y.C. Fire Dep't*, No. 533122/2022, 2023 WL 3681674, at *1–2 (N.Y. Sup. Ct. May 10, 2023).  The FDNY appealed that decision.  *See* ECF No. 35 at 13.

Plaintiff adds that he was "hired as a disabled veteran" and suggests that his "FDNY records" reflect this.  ECF No. 31 at 8.  He also alleges in his Opposition that he was prepared to "retire off a disability" around the time the COVID-19 pandemic began.  *Id.* at 3.

Plaintiff claims that the City's conduct violated Title VII, the ADA, and various federal constitutional provisions.  ECF No. 1 at 3–4; ECF No. 31 at 6–7.  He asserts additional federal claims under the Health Insurance Portability and Accountability Act ("HIPAA"), the National Labor Relations Act (the "NLRA"), the Occupational Safety and Health Act ("OSHA"), the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), and the Declaration of Independence.  ECF No. 1 at 4.  He invokes, without further explanation, 21 C.F.R. § 50.23, which is a regulation promulgated by the Food and Drug Administration ("FDA") that deals with "Informed Consent of Human Subjects" for certain types of medical testing.  ECF No. 1 at 4.  Then, Plaintiff asserts state claims under the New York State Human Rights Law ("NYSHRL") and the New York State Executive Department Handbook.  ECF No. 1 at 4.  Finally, Plaintiff invokes the New York City Human Rights Law ("NYCHRL") and the FDNY Equal Opportunity Employment Policy.  ECF No. 1 at 4.

On March 31, 2023, Defendant moved to dismiss the Complaint.  ECF No. 16; ECF No. 17.  On May 9, 2023, the Court granted Plaintiff a ninety-day extension to respond to Defendant's motion to dismiss.  In the meantime, the Court granted Defendant's motion to supplement its Motion to Dismiss to provide additional information about the New York State Division of Human Rights' ("NYSDHR") determination that there was no probable cause to believe that the FDNY engaged in an unlawful discriminatory practice.  ECF No. 29 (Defendant's Pre-Motion Conference Letter); ECF No. 29-1 at 11; ECF No. 30 (Order Granting

Motion to Supplement Motion to Dismiss).  On June 28, 2023, Plaintiff filed his Opposition,

ECF No. 31, and he later filed another letter supplementing his Opposition, ECF No. 32.[3]

On July 12, 2023, Plaintiff requested leave to amend his Complaint "if [the Court]

decides that [his] cause of action pursuant to Title VII for failure to accommodate is

insufficient."  ECF No. 33 at 1 (Motion for Leave to Amend).  The Court denied Plaintiff's

motion for leave to amend, explaining that "if the Court grants Defendant's motion, its decision

w[ould] address whether granting Plaintiff leave to file an amended complaint would be futile."

ECF No. 34 at 1.  On July 19, 2023, Defendant filed its Reply, ECF No. 35, which included

another NYSDHR Complaint and Determination, ECF No. 36-1 (NYSDHR Complaint Against

Mayor's Office and March 2, 2022, Determination).

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4]  "A claim is plausible 'when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d

---

[3]     For the purposes of this motion, the Court accepts as true the well-pleaded allegations of
the Complaint, ECF No. 1, as well as the additional allegations raised by Plaintiff in opposition
to the motion to dismiss and his letter supplementing his Opposition, ECF No. 31; ECF No. 32
(together and henceforth, the "Opposition").  Although the general rule is that a plaintiff may not
raise new allegations in his opposition to a motion to dismiss, because Plaintiff is representing
himself, the Court will consider both the allegations in the Complaint and in Plaintiff's
Opposition in deciding the motion.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)
("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se*
party in his papers opposing the motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909,
at *2 (S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may
consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss.").

[4]     Unless noted, case law quotations in this Order accept all alterations and omit internal
quotation marks, citations, and footnotes.

Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court's obligation "to construe a *pro se* complaint liberally" continues to apply "[e]ven after *Twombly*" established the plausibility standard for assessing pleadings. *Newsome v. Bogan*, 795 F. App'x 72, 72 (2d Cir. 2020).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," along with any document for which "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  In deciding the City's motion to dismiss, the Court will therefore consider the two religious accommodation requests that Plaintiff submitted to the City, the City's initial denial of these requests, Plaintiff's appeals from those denials, and the two NYSDHR complaints and agency determinations.[5] *See* ECF Nos. 18-5, 18-6, 18-7, 18-8, 18-10, 18-12, 29-1, 36-1.  All of these documents are described or heavily relied upon in Plaintiff's Complaint, so the Complaint either incorporates them by reference or, alternatively, they are integral to the Complaint.  The Court will not, however, consider the email exchanges between Plaintiff and

---

[5]     As discussed further herein, because the contents of the NYSDHR documents implicate the Court's subject-matter jurisdiction, which is resolved on a Rule 12(b)(1) motion, the Court may look beyond the pleadings and consider them regardless of whether they are otherwise appropriate for consideration in the Rule 12(b)(6) posture. *See Levy v. NYC Health + Hosps.*, 660 F. Supp. 3d 220, 228 n.3 (S.D.N.Y. 2023).

City representatives that the City has filed as part of its motion to dismiss because they do not satisfy these criteria. *See* ECF No. 18-9, ECF No. 18-11.

## DISCUSSION

### I.   Plaintiff's Title VII National Origin Discrimination and ADA Disability Claims Are Dismissed for Failure to Exhaust

Although not a jurisdictional requirement, "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489–90 (2d Cir. 2018); *see also* 42 U.S.C. § 2000e–5(e), (f) (procedures for filing with the EEOC). The same is generally true of ADA claims. *See Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018); *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 124 (2d Cir. 2002). "[C]laims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency," and "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003). This test applies to both Title VII, *see id.*, and ADA claims, *see Rosado v. Port Auth. of New York & New Jersey*, No. 22-587, 2024 WL 658776, at *2 (2d Cir. Feb. 16, 2024); *Gomez v. NYPD*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016). In sum, "[t]he court[] will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge." *See Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995).

In this case, Plaintiff's complaint before the NYSDHR (which he authorized the NYSDHR to transmit to the EEOC), raised allegations of employment discrimination almost exclusively on the basis of his religion. In a list of checkboxes providing Plaintiff with the

opportunity to claim discrimination on many bases, Plaintiff selected only "Creed/Religion." *See* ECF No. 29-1 at 6. In a separate list concerning "[a]cts of alleged discrimination," Plaintiff selected, as relevant here, "Denied me an accommodation for my religious practices" and also wrote in "Denial of Permanent Religious Exemption to all Covid Mandates." *See id.* at 7. The Court is conscious that in reviewing the charges in the administrative complaint for relatedness, the focus of the inquiry is on the factual allegations rather than the specific labels used. *See Deravin*, 335 F.3d at 201. But even in his narrative description of his employment discrimination claim, his claim is limited to his religion, as he claimed that his "Religious Beliefs/Rights/Practices have been discriminated/violated"; that he sought "Religious exemption[s]" from vaccination and "other lesser prioritized Covid mandates"; that receiving the vaccine was "completely against [his] Religious Beliefs/Practices"; and that "[f]orcing [him] to live in fear of termination or fear of testing positive . . . . [wa]s not allowing [him] to practice [his] faith in God" or "practice [his] Bible's teachings." ECF No. 29-1 at 9. In addition, Plaintiff claimed that the FDNY "caused prejudice in the workplace and biased outlooks" with respect to unvaccinated employees like himself. *Id.*[6]

Plaintiff claims that he has exhausted his administrative remedies because he received a right to sue letter from the EEOC. ECF No. 31 at 5.[7] Not so. In view of the above, Defendant's argument, *see* ECF No. 17 at 17, that Plaintiff's instant claims of national origin and disability discrimination could not have "reasonably be[en] expected to grow out of the charge" of

---

[6] Plaintiff's other NYSDHR complaint was not materially different. *See generally* ECF No. 36-1.

[7] Plaintiff's right to sue letter relates only to Plaintiff's claim against the Mayor's Office, *see* ECF No. 1 at 12, ECF No. 36-1, but that is of no moment with respect to the relatedness inquiry. The claims in the two NYSDHR complaints are tightly interrelated and materially the same, which permits the Court to consider together the claims from each. *See Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir. 1980).

religious discrimination he made administratively, is persuasive.  *See Deravin*, 335 F.3d at 200–01.  This case is like *Gomez*, in which the plaintiff's "EEOC complaint focused exclusively on Defendants' failure to accommodate her disability and wrongful termination due to her disability." 191 F. Supp. 3d at 299–300.  Because the EEOC complaint "[a]t no point . . . reference[d], even in passing, sexual harassment or any other discrimination on the basis of race, gender, or any other group protected by Title VII," the court found that the Title VII sexual harassment claim the plaintiff brought in federal court was not reasonably related to the factual claims raised in the EEOC complaint. *Id.* at 300.  Accordingly, the district court dismissed the plaintiff's Title VII claim.  *Id.*; *see also Trivedi v. N.Y. State Unified Ct. Sys. Off. of Ct. Admin.*, 818 F. Supp. 2d 712, 737 (S.D.N.Y. 2011) (although plaintiff checked "religion" box on EEOC intake questionnaire, where "both that document and [plaintiff's] formal EEOC charge lack[ed] any substantive allegations that would have alerted the EEOC that he was pursuing a religious discrimination claim," plaintiff could not pursue such claim in federal court).

The allegations in this case lead the Court to the same outcome.  "[C]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 440 (S.D.N.Y. 2023).  Accordingly, Plaintiff's claims of national origin and disability discrimination claims in violation of Title VII and the ADA are not reasonably related to the one type of claim he brought before the NYSDHR concerning religious discrimination, and are dismissed for failure to exhaust.  *See Gomez*, 191 F. Supp. 3d at 299–301 (dismissing unexhausted Title VII and ADA claims).  Even if the Court were to stretch Plaintiff's NYSDHR complaint to include an oblique claim of disability discrimination on the basis of Plaintiff's

unvaccinated status,[8] the Court cannot reasonably interpret that claim to encompass the claimed

disability now before it, which concerns an unspecified disability that Plaintiff claims was known

to the FDNY at the time he was hired. *See* ECF No. 1 at 5; ECF No. 31 at 8.[9]  That latter claim

was never presented to the EEOC, is unexhausted, and must be dismissed. *See Chandler v. AMR*

*Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1178 (S.D.N.Y. 2003) (concluding that Title VII claim

concerning failure to accommodate disability connected to enlarged prostate was not reasonably

related to allegations concerning plaintiff's back and leg injuries in EEOC charge); *see also*

*Spillers v. N.Y.C. Health & Hosps. Corp.*, 763 F. App'x 138, 139 (2d Cir. 2019) (affirming

dismissal of ADA failure to accommodate claim on exhaustion grounds where *pro se* plaintiff

"alleged discrimination on the basis of his disability" in his EEOC complaint "but did not

include a failure to accommodate claim or indicate that he sought any accommodation for his

disability, even though the EEOC complaint form gave him an opportunity to do so").

---

[8]      Even if such claim had been properly brought before the NYSDHR, exhausted, and then brought before this Court, it would have failed because vaccination status (or, for that matter, being regarded as having COVID-19), is not cognizable under the ADA.  *See Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-cv-2936, 2023 WL 2163774, at *5–6 (E.D.N.Y. Feb. 22, 2023). The same rationale would also defeat any claim Plaintiff might have tried to advance under the Genetic Information Nondiscrimination Act ("GINA").  *See* ECF No. 1 at 6 (Plaintiff alleges that COVID-19 testing is "genetic testing" for which he "never gave permission/consent").  GINA does not prohibit an employer from requiring proof of a COVID-19 vaccination, nor does it preclude a requirement to take COVID-19 tests, which do not analyze genetic information.  *See Russo v. Patchogue-Medford Sch. Dist.*, No. 22-cv-01569, 2024 WL 149131, at *6 (E.D.N.Y. Jan. 12, 2024) (collecting cases).

[9]      In any case, Plaintiff's claim of disability discrimination appears to just be a repackaging of his religious discrimination claim.  *See* ECF No. 1 at 5 (describing his "disability or perceived disability" as "Disabled Marine Corps Veteran on the job not accommodated for his Religious Exemption request for Covid Mandates").

## II.     Plaintiff States a Claim for Religious Discrimination for Failure to Accommodate

Plaintiff's claim based on religious discrimination under Title VII succeeds, but only in part.  Defendant does not claim that Plaintiff failed to exhaust his religious discrimination claim, *see* ECF No. 17 at 17, which is now properly before the Court.  Plaintiff alleges that Defendant discriminated against him on the basis of his religion by terminating his employment, failing to promote him, imposing unequal terms and conditions of employment, retaliating against him, and engaging in "[h]arassment, [ps]yc[h]ological[,] and [e]motional [a]buse."  ECF No. 1 at 4.[10] Plaintiff produces reams of materials, taking issue with, among other things, various policy choices made by the City of New York, as well as other aspects of society.  *See, e.g.*, ECF No. 1 at 10 (requesting relief with respect to the promotion of vaccination on broadcasting systems and street advertisements); ECF No. 31 at 3 (alleging generalized "mishandl[ing]" of the pandemic). Very little of this material can even be construed as raising a religious discrimination claim under Title VII (or any other statute, as discussed further herein).  But enough does to state a claim, albeit a narrow one.  As best the Court can decipher, Plaintiff appears to allege that Defendant discriminated against him by not granting him a religious exemption from both COVID-19 testing and the requirement to receive a COVID-19 vaccination, *see, e.g.*, ECF No. 1 at 6–7; ECF No. 31 at 1–2.

"Title VII makes it unlawful for an employer 'to discharge . . . or otherwise to discriminate against any individual' in his or her employment 'because of such individual's . . . religion.'"  *See Does 1–2 v. Hochul*, 632 F. Supp. 3d 120, 144 (E.D.N.Y. 2022) (quoting 42

---

[10]     Plaintiff also alleges that Defendant failed to accommodate his disability, but as discussed above, that claim is not properly before the Court because it is unexhausted.  *See* ECF No. 1 at 4.  Based on Defendant's pleadings, he appears to intend to assert a failure to accommodate claim on the basis of religious discrimination.  *See, e.g.*, ECF No. 32 at 1.

U.S.C. § 2000e-2(a)(1)).  A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86–87 (2d Cir. 2015).  At the pleading stage, a plaintiff does not need to allege specific facts establishing each element of a *prima facie* case of discrimination.  *Id.*  But a complaint must have facts that "plausibly suppor[t]" that "the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016); *see also Littlejohn v. City of New York*, 795 F.3d 297, 309–10 (2d Cir. 2015) (an employment discrimination complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face).

The core of Plaintiff's claim is that Defendant violated Title VII by refusing to exempt him from its COVID-19 precautions—in particular, the requirement to be vaccinated.  *See* ECF No. 1 at 5; ECF No. 31 at 1–2.  To establish a *prima facie* case of religious discrimination for failure to accommodate, Plaintiff must show that (1) he held a "bona fide religious belief conflicting with an employment requirement"; (2) he informed his employer of this belief; and (3) he was "disciplined for failure to comply with the conflicting employment requirement."  *See Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *accord Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).  If the *prima facie* case is shown, "the burden then shifts to the employer to show it could not accommodate the employee['s] religious beliefs without undue hardship."  *Knight*, 275 F.3d at 167; *see also Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-5265, 2023 WL 6214236, at *2 (E.D.N.Y. Sept. 25, 2023) (citing *Knight* and *Baker*

and explaining that a "modified" inquiry applies to failure to accommodate claims). This test is compatible with *Vega*'s requirement that Plaintiff adequately plead that his religion was a "motivating factor" in the adverse employment decision, in that "taking adverse action 'because of' the plaintiff's 'religious practice' [is] 'synonymous with refusing to accommodate the religious practice.'" *See Grimes v. N.Y. & Presbyterian Hosp.*, No. 23-cv-652, 2024 WL 816208, at *5 (S.D.N.Y. Feb. 26, 2024) (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015)).

Here, Plaintiff has made the necessary *prima facie* showing. As to the first prong concerning whether Plaintiff has a bona fide religious belief, Plaintiff's belief must be both sincerely held and religious. *See Beickert*, 2023 WL 6214236, at *2. As one of many examples, Plaintiff alleges that Defendant's failure to grant him exemptions, *inter alia*, "forces [him] into a lifestyle of practicing fear," requires him to consent to "a violation to [his] body/temple, which is of God," and also requires him, in some way, to condone abortion. ECF No. 18-5 at 4–5. He further alleges that these activities and others are inconsistent with his Christianity. *See id.* Although Plaintiff's allegations concerning his religious beliefs strike the Court as somewhat nebulous, whether he sincerely holds them is a factual question inappropriate for resolution on a motion to dismiss. *See Beickert*, 2023 WL 6214236, at *3 (collecting cases). Similarly, "both the Supreme Court and the Second Circuit have cautioned courts regarding their limited function when determining whether religious beliefs are protected." *See id.* (citing *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) and *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir. 2003)). To be sure, at least some portions of Plaintiff's concerns about the Defendant's COVID-19 precautions are not religious in nature and do not raise a Title VII claim. *Compare* ECF No. 1 at 7 (expressing concerns about the safety of the vaccine), *with Beickert*, 2023 WL 6214236, at *4 (concluding that plaintiff failed to allege a bona fide religious

13

belief where plaintiff, despite citing a Bible passage, conceded that she would take a vaccine whose safety and effectiveness had been sufficiently tested).  But here, drawing all inferences in favor of Plaintiff, *see Matson*, 631 F.3d at 63, and conscious of the Court's circumscribed role in policing Plaintiff's religious beliefs, the Court concludes that Plaintiff has adequately alleged that he sincerely holds beliefs, which he "conceives of . . . as religious in nature," *see Patrick v. LaFevre*, 745 F.2d 153, 158 (2d Cir. 1984), and that they conflict with the testing and vaccination requirements to which he was subject.

As to the second prong, Defendant does not dispute that Plaintiff informed his employer about his religious beliefs.  *See, e.g.*, ECF No. 18-5.  Nor does Defendant contest the third prong, which is that Plaintiff was (i) threatened for refusal to participate in testing[11] and (ii) was ultimately terminated for failure to comply with the vaccination requirement.  *See* ECF No. 18-

---

[11]    With respect to the reasonable accommodation request for an exemption from testing only, it is a close call whether Plaintiff has sufficiently alleged a violation of the third *Knight* element, or that he was "disciplined for failure to comply." 275 F.3d at 167.  Plaintiff alleges that he was "coerce[d] . . . to take PCR testing" as the FDNY "us[ed] [his] income as leverage"—*i.e.*, he would be put on unpaid leave or lose his job for not submitting to testing. ECF No. 31 at 4.  But Plaintiff admits that he participated in at least some mandatory testing. *See id.*  Some courts have held that where a plaintiff complies with the allegedly objectionable employment requirement, and therefore does not face an "adverse employment action," the third *Knight* element is not satisfied.  *See, e.g.*, *O'Neill v. City of Bridgeport Police Dep't*, 719 F. Supp. 2d 219, 226–27 (D. Conn. 2010).  But other "[c]ourts have found that a threat of disciplinary action is sufficient to establish the third [*Knight*] element."  *See Sughrim v. New York*, No. 19-cv-7977, 2023 WL 5713191, at *15 (S.D.N.Y. Sept. 5, 2023).  Thus, for example, in *Livingston v. New York*, the court concluded that where an employee received a notice that his absences due to Sabbath and religious holiday observance "may result in disciplinary action or termination," that threat was sufficient to satisfy the third *Knight* element.  563 F. Supp. 3d 201, 243 (S.D.N.Y. 2021) (capitalization omitted).  That is similar to this case, in which Executive Order 78, for example, warned of "disciplinary action" for failure to comply with the test-or-vaccinate requirement.  ECF No. 18-1 § 2.  Reading *pro se* Plaintiff's pleadings to "raise the strongest arguments that they suggest," *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006), and drawing all inferences in his favor, *see Matson*, 631 F.3d at 63, the Court cannot conclude as a matter of law and at this early juncture that Plaintiff was not "disciplined for failure to comply" with the testing requirement.  As discussed further below, this part of his failure to accommodate claim survives, even if by a thread.

14

13; ECF No. 31 at 4.  Because Plaintiff has adequately made out his *prima facie* case for failure to accommodate, the burden shifts to Defendant to show that it could not accommodate Plaintiff's beliefs without undue hardship.  *See Knight*, 275 F.3d at 167.

An undue hardship is "shown when a burden is substantial in the overall context of an employer's business."  *See D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (quoting *Groff v. DeJoy*, 600 U.S. 447, 468 (2023)).  The defense of an undue hardship may be raised on a Rule 12(b)(6) motion "if the defense appears on the face of the complaint."  *See id.*  Defendant advances two arguments to show an undue hardship.  For one, Defendant suggests that granting Plaintiff's accommodation would have presented an undue hardship because "Defendant was required to comply with the lawful vaccine mandate."  ECF No. 17 at 22.  To be sure, courts in this Circuit have consistently held that an accommodation that requires a defendant to violate the law imposes an undue hardship.  *See Parks v. Montefiore Med. Ctr.*, No. 23-cv-4945, 2024 WL 917330, at *2 (S.D.N.Y. Mar. 4, 2024) (collecting cases). And with respect to the initial test-or-vaccinate requirement, it is unclear if reasonable accommodations for religious objections were permitted under Executive Order 78.  *See* ECF No. 18-1; ECF No. 31 at 4.  However, Defendant never argues that the City would have actually been required to violate the law by granting an exemption from testing.  Accordingly, this portion of the failure to accommodate claim survives, even if by the thinnest of possible margins.

With respect to the later vaccination requirement, the case is clearer.  Unlike in the line of cases concerning the now-repealed Section 2.61 of the New York Administrative Code, *see Parks*, 2024 WL 917330, at *2, which did not provide for religious exemptions, *see Does 1–2*, 632 F. Supp. 3d at 131, the DOHMH Order in this case contemplates just that, as it was required not to "be construed to prohibit any reasonable accommodation otherwise required by law."

ECF No. 18-2 ¶ 8.[12] Thus, Defendant's argument, which just begs the question of whether

Plaintiff's request presented an undue hardship to the FDNY, is not persuasive.  Indeed,

Defendant pivots away from its theory when it asserts that "no reasonable accommodation was

available that would allow Plaintiff to continue performing his duties at the FDNY and would

not endanger staff, patients, and even Plaintiff himself."  *See* ECF No. 17 at 22.

In turn, Defendant's second and primary undue hardship argument is the same as that the

FDNY provided to Plaintiff in a supplemental letter dated January 5, 2022, in which it denied

him an exemption from the vaccine mandate "in light of the potential undue hardship to the

[FDNY]."  ECF No. 17 at 24 (quoting ECF No. 18-11 (Jan. 5, 2022, Letter Regarding

Supplemental Information on Denial of Request for Vaccine Mandate Exception)[13]).  It

explained that the FDNY reached this decision "[g]iven the state of the public health emergency,

the nature of the [FDNY]'s life-saving mission, and the impact to the safety and health of

[FDNY] members and the public that [FDNY] members regularly interact with."  *Id.* (quoting

ECF No. 18-11).  On this front, Defendant's argument that the refusal of employees like Plaintiff

to comply with COVID-19 prevention mandates in the midst of the public health emergency is

persuasive, especially in view of the Second Circuit's statement that "Title VII does not require

covered entities to provide the accommodation that Plaintiff[] prefers."  *See We The Patriots*, 17

F.4th 266, 292 (2d Cir. 2021) ("*We The Patriots I*").  This would seem especially true with

---

[12]     Indeed, the Second Circuit's explanation that Title VII does not require "a blanket
religious exemption allowing [plaintiffs] to continue working at their current positions
unvaccinated" was based on the contours of Section 2.61:  "[I]t may be *possible* under [Section
2.61] for an employer to *accommodate*—not *exempt*—employees with religious objections, by
employing them in a manner that removes them from [Section 2.61]'s definition of 'personnel.'"
*See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021).

[13]     The Court considers this document only to the extent that Defendant explicitly
incorporates it into its memorandum of law.

respect to the less invasive testing requirement.  However, unlike, for example, cases in which a court can determine based on the complaint that the requested accommodation would cause the defendant to violate the law, Defendant's argument presents an issue for the factfinder.  *See Groff*, 600 U.S. at 468 (describing the "fact-specific" nature of the inquiry).[14]

At this early juncture, the Court cannot conclude "as a matter of law" that exempting Plaintiff from testing and vaccination requirements "would have caused [Defendant] undue hardship," *see Grimes*, 2024 WL 816208, at *5, especially where Plaintiff alleges that he had been in a "light duty" role with limited interaction with others since September 2019, ECF No. 31 at 3.  *See Grimes*, 2024 WL 816208, at *5–6 (considering that plaintiff had an almost entirely remote position prior to the imposition of a vaccine mandate and denying motion to dismiss Title VII failure to accommodate claim).  Therefore, Defendant's motion to dismiss Plaintiff's claim of religious discrimination based on failure to accommodate is denied.  *See Adams v. N.Y. State Unified Ct. Sys.*, No. 22-cv-9739, 2023 WL 5003593, at *1–2 (S.D.N.Y. Aug. 4, 2023) (denying motion to dismiss plaintiff's failure to accommodate claim where employee alleged that failure to grant her an exemption from vaccination policy, which provided for medical and religious exemptions, violated her Christian beliefs).

### III.    Plaintiff Has Failed to State Any Other Claim Under Title VII

In addition to his failure to accommodate claim, Plaintiff alleges that Defendant engaged in religious discrimination on nearly every other conceivable basis.  *See* ECF No. 1 at 4 (alleging that Defendant discriminated against him on the basis of his religion by terminating his

---

[14]    Defendant cites no authority demonstrating that its undue hardship rationale with respect to the importance of the vaccine mandate is a sufficient basis for the Court to grant a motion to dismiss post-*Groff*.  None of its authority even relates to Title VII.  *See* ECF No. 17 at 24 (citing *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120 (E.D.N.Y. 2021) and *Maniscalco v. N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33 (E.D.N.Y. 2021)).

employment, failing to promote him, imposing unequal terms and conditions of employment, retaliating against him, and engaging in "[h]arassment, [ps]yc[h]ological[,] and [e]motional [a]buse"); ECF No. 31 at 9 (referencing a "hostile work environment"). As above, Defendant does not challenge any of these theories on exhaustion grounds. Nevertheless, Plaintiff fails to state a claim under any.

### A. *Wrongful Termination*

To state a claim for wrongful termination, Plaintiff must allege that "he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Assuming that Plaintiff sufficiently alleges the first three prongs, he does not even come close to plausibly alleging that his firing occurred under circumstances giving rise to an inference of religious discrimination. *See id.* For example, he does not identify any remarks that indicate that Defendant addressed him in "religiously degrading terms," nor does he identify any comparators[15] outside his protected group who received more favorable treatment. *See D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988, 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023), *aff'd*, No. 23-476, 2023 WL 7986441 (2d Cir. Nov. 17, 2023). On the contrary, Plaintiff's own pleadings demonstrate that he was fired for not complying with his employer's vaccination requirement, thereby providing an "obvious alternative explanation" for his termination that "undermine[s] h[is] own cause by alleging facts that refute any inference of

---

[15] For this reason, Plaintiff also fails to plausibly state a claim based on "unequal terms and conditions of employment." ECF No. 1 at 4. To state a claim under such a theory, Plaintiff must allege that "there were other similarly situated employees, outside of the protected class, who engaged in conduct substantially similar to that of [P]laintiff but received preferential treatment." *Vanhorne v. N.Y.C. Transit Auth.*, 273 F. Supp. 2d 209, 215 (E.D.N.Y. 2003). Plaintiff has not even attempted to do so, and that claim is dismissed.

discrimination." *See Powell v. Merrick Acad. Charter Sch.*, No. 16-cv-5315, 2018 WL 1135551, at *7–8 (E.D.N.Y. Feb. 28, 2018).  Plaintiff does just this by alleging that he was "terminated due to not providing a covid shot," which he claims was a "punishment."  ECF No. 31 at 4.  Accordingly, his wrongful termination claim is dismissed.

### B.  Retaliation

To state a Title VII retaliation claim, Plaintiff must plausibly allege that "(1) [Defendant] discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  To establish causation, Plaintiff "must plausibly plead a connection between the act and his engagement in protected activity." *Id.* Even assuming that Plaintiff engaged in protected activity, his pleadings are entirely deficient with respect to causation because he does not allege at all, much less plausibly allege, that "his . . . protected activity was a but-for cause of the alleged adverse action by the [FDNY]."  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Adams*, 2023 WL 5003593, at *4 (denying motion to dismiss with respect to failure to accommodate claim but granting motion with respect to retaliation claim).  Here, "[P]laintiff[] identif[ies] no facts directly demonstrating retaliatory animus, nor any evidence of disparate treatment."  *See Mone v. N.Y. State Unified Ct. Sys.*, No. 21-cv-6914, 2023 WL 4424093, at *12 (E.D.N.Y. Mar. 22, 2023), *report and recommendation adopted*, 2023 WL 4073770 (E.D.N.Y. June 20, 2023), *aff'd*, No. 23-964, 2024 WL 1109258 (2d Cir. Mar. 14, 2024).  Nor does Plaintiff allege that any discipline "would not have occurred in the absence of the *retaliatory* motive."  *See Grimes*, 2024 WL 816208, at *9 (emphasis added) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)). In contrast and as discussed above, for instance, Plaintiff concedes that he was fired for not complying with the vaccine mandate.  *See, e.g.*, *Evans v. N.Y.C. Dep't of Educ.*, No. 22-cv-7901, 2023 WL 8034449, at *9 (S.D.N.Y. Nov. 20, 2023) (dismissing retaliation claim where "COVID

policy applied to all employees and [plaintiff's] own pleadings show he was disciplined as a consequence of the refusal to comply with the policy, rather than as retaliation for opposition to it"); *Grimes*, 2024 WL 816208, at *10 (dismissing retaliation claim because plaintiff was warned of consequences for not complying with vaccination policy).

### C.  Failure to Promote

To state a *prima facie* case of discriminatory failure to promote, Plaintiff must plausibly allege that:  "1) he is a member of a protected class; 2) he applied for promotion to a position for which he was qualified; 3) he was rejected for the position; and 4) the employer kept the position open and continued to seek applicants."  *See Mauro v. S. New Eng. Telecomms., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000).  Plaintiff somewhat confusingly alleges that he either "became" or "was able to take [his] Lieutenant['s] test [he] had been studying for, not any other tests [he] had previously applied for due to Defendant['s] handling of the workforce."  ECF No. 31 at 9. Plaintiff attaches a screenshot of an email indicating that the FDNY postponed his promotional exam "[d]ue to the ongoing precautions regarding COVID-19."  ECF No. 31 at 55.  Plaintiff has pleaded himself out of court on this claim.  Unfortunately for Plaintiff, frustration about the pandemic's role in interrupting career advancement is a very far cry from stating a plausible claim for employment discrimination.  Plaintiff's situation is similar to that of a plaintiff who complains of employment discrimination where the desired position was eliminated and "there was no position to be filled."  *See Hoag v. Fallsberg Cent. Sch. Dist.*, 279 F. Supp. 3d 465, 477 (S.D.N.Y. 2017).  In such cases, courts routinely hold that a failure to promote claim fails.  *See id.* (collecting cases).  Because Plaintiff fails to allege at all that he applied for a promotion and that request was rejected, his failure to promote claim is dismissed.

### D.  Hostile Work Environment

Plaintiff also raises a vague assertion that he was subjected to a hostile work environment.  *See* ECF No. 1 at 7; ECF No. 31 at 9.  Under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "The Second Circuit has held that 'proving the existence of a hostile work environment involves showing both objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'"  *See LaFontant v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 18-cv-23, 2023 WL 6610764, at *8 (S.D.N.Y. Oct. 10, 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).

Plaintiff's allegations again fall far below the "severe and pervasive" standard needed to state a hostile work environment claim.  First, Plaintiff alleges that his work environment became hostile because the "chain of command" at work would "enforce orders" related to COVID-19 precautions.  ECF No. 1 at 7.  The mere fact that Plaintiff disagreed with the orders he was subjected to and disliked how they were implemented is insufficient to plausibly plead that his workplace was "permeated with *discriminatory* intimidation."  *Littlejohn*, 795 F.3d at 320–21 (emphasis added).  Second, Plaintiff alleges that a coworker made a "discriminat[ory] joke" by posting a satirical picture of Jesus in a group chat, which he claims is an example of "many" similar situations.  *See* ECF No. 31 at 4–5, 12.  Plaintiff claims that such actions were somehow caused by Defendant's "irrational mishandling of covid."  *See id.* at 4.  At most, Plaintiff alleges that his coworkers' conduct was rude and offensive, but it is well-settled that "allegations related

to abrasive relations in the workplace, without more, are insufficient to state a Title VII hostile work environment claim." *See Bledsoe v. Delta Air Lines, Inc.*, No. 23-cv-03146, 2024 WL 1142321, at *5 (E.D.N.Y. Mar. 15, 2024).  In particular, "Plaintiff's allegation of a single remark by a non-supervisory coworker," as here, "is insufficient to state a hostile work environment claim." *See id.* at *4.  Thus, his hostile work environment claim is dismissed.[16]

### IV.    Plaintiff's Federal Constitutional Claims Fail

In his Opposition, Plaintiff obliquely asserts violations of the First, Thirteenth, and Fourteenth Amendments.  ECF No. 31 at 6–7.  First, Plaintiff appears to claim that the vaccine mandate violated the First Amendment's Free Exercise Clause.  *See id.*  But the Second Circuit has already ruled that a vaccine mandate applicable to, among others, Department of Education staff, and like the one at issue here, did not violate the First Amendment.  *See Kane v. De Blasio*, 19 F.4th 152, 164–66 (2d Cir. 2021).  The Second Circuit found that the mandate was neutral and generally applicable, and accordingly, survived rational basis review as "a reasonable exercise of the State's power to act to protect the public health."  *See id.* at 166; *see also We The Patriots I*, 17 F.4th at 290 (reaching the same conclusion with respect to the vaccination requirement for healthcare workers).  Plaintiff advances no plausible allegations that would lead the Court to a different outcome in this case, as he does not allege that the accommodation process employed by the FDNY with respect to any of the mandates he was subject to was not neutral or generally applicable.  *See Bonilla v. City of New York*, No. 22-cv-7113, 2023 WL

---

[16]    In the checkbox portion of his Complaint, Plaintiff also wrote in "[h]arassment, [ps]yc[h]ological[,] and [e]motional [a]buse," ECF No. 1 at 4.  Absent any further explanation from Plaintiff, and having reviewed Plaintiff's pleadings liberally, Plaintiff appears to use this terminology to rebrand his hostile work environment claim.  Because this labeling adds nothing more to push his hostile work environment claim into the realm of the plausible, to the extent he is attempting to allege something different, such claim must also fail.  *See Iqbal*, 556 U.S. at 678 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

8372859, at *5 (S.D.N.Y. Dec. 4, 2023) (rejecting as-applied challenge to vaccination requirement in part because plaintiff failed to allege that citywide appeals process was not neutral or generally applicable).

Plaintiff also claims that being required to comply with COVID-19 prevention measures somehow ran afoul of the Thirteenth Amendment, *see* ECF No. 31 at 6, which provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Plaintiff's allegation is meritless and does not even come close to plausibly alleging that Plaintiff was "*forced to work* for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *See McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (emphasis added) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). Plaintiff had a choice but was dissatisfied with it. That is not a Thirteenth Amendment violation.

Plaintiff also fleetingly suggests that the denial of his request for an exemption violated the Fourteenth Amendment. *See* ECF No. 31 at 6–7. That claim fails immediately because Plaintiff alleges not a single fact to support such a claim. Even if he had tried, "[a] procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *See Garland*, 574 F. Supp. 3d at 127. In *Garland*, the court rejected a group of FDNY employees' procedural due process challenge to the same vaccination policy at issue in this case. *See id.* at 123. There, the court determined that plaintiffs' claim was precluded where they failed to use the established grievance procedures in their collective bargaining agreement. *See id.* at 129. It further found that, in any case, plaintiffs received "ample pre-deprivation notice," including of the DOHMH Order making vaccination a condition of employment and "their

23

ability to seek a reasonable accommodation," prior to being placed on leave-without-pay status. *See id.* at 130. In that case, plaintiffs failed to avail themselves of the reasonable accommodation process in time, rendering hollow their claim "that they were deprived of their constitutional right to due process." *See id.* This case is easier. Plaintiff cannot sustain a procedural due process challenge when he availed himself, on multiple occasions, of the same extensive pre-deprivation reasonable accommodation processes, *see* ECF No. 1 at 7, and he advances no other allegations so as to render those procedures constitutionally suspect. The fact that he is dissatisfied with the outcome of that process does not retroactively render it constitutionally deficient.

Any substantive due process challenge fares no better. Even assuming that the COVID-19 mandates implicated some fundamental right, Plaintiff "'must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' such that the Due Process Clause 'would not countenance it even were it accompanied by full procedural protection.'" *See Maniscalco*, 563 F. Supp. 3d at 39 (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021)). Again, Plaintiff alleges nothing to support such a claim. But even if he had attempted to, it would have failed. Just as the court in *Maniscalco* determined that the mandatory vaccination policy for the Department of Education reflected "a rational policy decision surrounding how best to protect children during a global pandemic," it was similarly "not shocking" for the FDNY to require its employees to be tested or vaccinated under these circumstances. *See id.* at 39–40.

## V. Plaintiff's Additional Federal Claims Fail

Plaintiff brings claims under OSHA, HIPPA, the CARES Act, 21 C.F.R. § 50.23, and the Declaration of Independence. Neither OSHA, HIPPA, nor the CARES Act contains a private right of action. *See Donovan v. Occupational Safety & Health Review Comm'n*, 713 F.2d 918,

926 (2d Cir. 1983) (OSHA); *Augustus v. AHRC Nassau*, 976 F. Supp. 2d 375, 400 n.42 (E.D.N.Y. 2013) (OSHA), *aff'd*, 596 F. App'x 41 (2d Cir. 2015); *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) (HIPPA); *Cook v. Peters*, No. 23-cv-2211, 2024 WL 778134, at *2 (N.D. Ohio Feb. 26, 2024) (collecting cases regarding various provisions of the CARES Act and concluding that the law provides no private right of action).  Similarly, 21 C.F.R. § 50.23 regulates FDA trials, but "[t]here is no private right of action to enforce FDA regulations."  *See Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 104 n.8 (E.D.N.Y. 2020) (citing *PDK Labs v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)); *Schmidt v. City of Pasadena*, No. 21-cv-08769, 2023 WL 4291440, at *14–15 (S.D. Cal. Mar. 8, 2023) (specifically addressing 21 C.F.R. § 50.23 and citing 21 C.F.R. § 50.1(a), which describes the regulation's scope).  Finally, the Declaration of Independence also does not supply a cause of action.  *See Parola v. IRS*, No. 98-cv-7179, 1999 WL 1215557, at *7 (E.D.N.Y. Dec. 15, 1999); *Nguyen v. Bank of America*, No. 14-cv-1243, 2015 WL 58602, at *3 (E.D.N.Y. Jan. 5, 2015).  Accordingly, these claims are dismissed.

Plaintiff's claim under the NLRA also fails.  The NLRA does not cover public employers and employees.  *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021); 29 U.S.C. § 152(2) (excluding "any State or political subdivision thereof" from the definition of "employer").  Plaintiff alleges that he was a member of the FDNY.  ECF No. 1 at 3.  He was, therefore, a public employee excluded from the NLRA's scope.  *Cf. D'Onofrio v. City of New York*, No. 07-cv-0731, 2010 WL 4673879, at *9 (E.D.N.Y. Sept. 14, 2010) (NYPD employee excluded from scope of NLRA), *report and recommendation adopted*, 2010 WL 4673948 (E.D.N.Y. Nov. 5, 2010).  Accordingly, Plaintiff fails to state a claim under the NLRA, and his claim is dismissed.  *See Green*, 16 F.4th at 1075.

**VI.    The Court Lacks Jurisdiction Over Plaintiff's NYSHRL and NYCHRL
Claims Pursuant to the Election of Remedies Doctrine**

Because Plaintiff brought his NYSHRL claim before the NYSDHR, that statute's election
of remedies provision, "with certain exceptions . . . precludes resort to courts after claims have
been filed with a local commission on human rights." *See Desardouin v. City of Rochester*, 708
F.3d 102, 106 (2d Cir. 2013); N.Y. Exec. Law § 297(9).  Similarly, the NYCHRL provides "a
cause of action in any court of competent jurisdiction . . . unless [the claimant] has filed a
complaint with the city commission on human rights or with the [NYSDHR] with respect to such
alleged unlawful discriminatory practice or act of discriminatory harassment or violence."
N.Y.C. Admin Code § 8-502(a).  There are two exceptions to the bar:  (1) where the NYSDHR
complaint "is not dismissed on the merits, but rather for administrative convenience,
untimeliness, or on the basis that the election of remedies is annulled" and (2) "when a plaintiff
does not directly file a complaint with the NYSDHR, but rather with the EEOC, which thereafter
files it with the NYSDHR in accordance with Title VII requirements." *See Quirino v. New
Jewish Home*, No. 19-cv-05778, 2021 WL 11430535, at *9 (S.D.N.Y. Feb. 19, 2021), *report and
recommendation adopted*, 2021 WL 1089602 (S.D.N.Y. Mar. 22, 2021).

In addition to precluding the same claims raised before the NYSDHR from being asserted
in court, the election of remedies doctrine also contains an "expansive" derivative bar.  *See
Ramirez v. NYP Holdings, Inc.*, No. 18-cv-12058, 2020 WL 470011, at *4 (S.D.N.Y. Jan. 29,
2020).  Even where, as here, a plaintiff raises only a NYSHRL claim in his complaint, it is well-
settled that "a claimant's [NYSDHR] complaint addressing the same incident, and that results in
a finding of no probable cause, procedurally bars the claimant from relief under the NYCHRL."
*See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 189 (S.D.N.Y. 2011).  Further, "[t]he
election of remedies bar . . . precludes consideration of *any* claim . . . arising out of the same

incident on which [plaintiff's] [NY]SDHR complaint was based."  *See id.* at 188 (emphasis

added).  Thus, in a case in which a plaintiff asserts only a NYSHRL claim before the NYSDHR,

the bar extends beyond potential NYCHRL claims, as discussed above, to also reach other

theories of liability and factual assertions that could have been asserted under either statute.

As to additional theories of liability, "raising a new legal theory is not enough to escape

the bar . . . if that theory is premised on the same events underlying plaintiff's NYSDHR . . .

complaint."  *See Luna v. NYC Taxi & Limousine Comm'n*, No. 21-cv-1408, 2022 WL 20319227,

at \*9 (E.D.N.Y. Sept. 7, 2022); *see also Williams v. City of New York*, 916 F. Supp. 2d 517, 522

(S.D.N.Y. 2013) ("A claimant cannot avoid the jurisdictional bar by merely adding additional

elements of damage arising out of the same underlying conduct or by changing his legal

theory.").  Accordingly, where a plaintiff includes in his NYSDHR complaint the very events on

which he "base[s] his claim of" another kind of discrimination, a court may not subsequently

entertain that additional theory of discrimination.  *See Higgins*, 836 F. Supp. 2d at 189–90

(where plaintiff explicitly raised only racial discrimination claims before the NYSDHR, still

finding religious discrimination claims barred by the election of remedies doctrine because

plaintiff had presented the "same operative events," which included a mention of his religious

practice, to the NYSDHR); *Son v. Greenland Produce & Grocery, Inc.*, No. 11-cv-9533, 2013

WL 12084500, at \*6 (S.D.N.Y. Mar. 11, 2023) (although plaintiff raised only racial

discrimination claim before the NYSDHR, claims of age and disability discrimination pleaded

for the first time in federal court were barred because they arose out of the same facts as those in

the NYSDHR complaint), *aff'd sub nom. Son v. Lee*, No. 13-1827, 559 F. App'x 81 (2d Cir.

2014); *Quirino*, 2021 WL 11430535, at \*13 (concluding that election of remedies bar applied to

failure to promote claim asserted for the first time in litigation).  The bar similarly precludes

SECTION

claims against a defendant not named in the NYSDHR complaint where the underlying claims are based on the same incident.  *See Ramirez*, 2020 WL 470011, at *5.

Second, "[s]o long as substantially the same facts are involved, . . . the doctrine of election of remedies will bar any subsequent court proceedings.  The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies."  *See DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. Mar. 31, 2014); *see also Skates v. Inc. Vill. of Freeport*, No. 15-cv-1136, 2016 WL 1459659, at *21 (E.D.N.Y. Jan. 28, 2016) ("Importantly, the election of remedies bars a later lawsuit of unlawful termination even where Plaintiff's lawsuit raises additional facts."), *report and recommendation adopted*, 2016 WL 1452391 (E.D.N.Y. Apr. 12, 2016); *Luna*, 2022 WL 2319227, at *10 (concluding that *pro se* plaintiff's assertion of "forced resignation" was barred even though it did not appear in the NYSDHR complaint because it "ar[o]se from the same incidents of discrimination and retaliation").  Thus, for example, where a plaintiff alleges that his termination was "nothing more than the culmination of an employer's allegedly unlawful practice, the claim that such termination was retaliatory is nonetheless barred."  *See Skates*, 2016 WL 1459659, at *21.

In this case, the election of remedies bar precludes Plaintiff from bringing any claim he now asserts under the NYSHRL and the NYCHRL.  Plaintiff filed two complaints with the NYSDHR, one naming the Mayor's Office as respondent and the other naming the FDNY.  *See* ECF No. 29-1 at 2 (FDNY); ECF No. 36-1 at 2 (Mayor's Office).  Although the NYSDHR determinations reflect that Plaintiff filed the complaints on November 17, 2021, he appears to have actually filed them in December 2021.  *See* ECF No. 29-1 at 9–11 (referencing a December 19, 2021, appeal of his denied exemption request); ECF No. 36-1 at 10, 12.  In any case, Plaintiff's NYSDHR complaints, which are substantially similar, track his allegations in this

case, and fundamentally turn on the FDNY's denials of requests for exemption from testing and vaccination requirements. *See, e.g.*, ECF No. 29-1 at 9. His allegations specifically mentioned the denial of his exemption requests as well as his religious objections. *See id.* (claiming that "[t]he workplace is violating my religious beliefs in the d[e]cision not to take the vaccine" and objecting to "weekly testing").

The NYSDHR dismissed his complaint against the Mayor's Office for lack of jurisdiction because there was no employee-employer relationship.[17] *See* ECF No. 36-1 at 12. With respect to his complaint against the FDNY, the NYSDHR found no probable cause supporting a violation of the NYSHRL. *See* ECF No. 29-1 at 11. The NYSDHR specifically considered Plaintiff's claim of religious discrimination based on a failure to accommodate his request for an exemption from the vaccination policy. *See id.* Although the NYSDHR ruled that Plaintiff's claim was "premature" because he was still appealing the FDNY's initial denial of Plaintiff's accommodation request, the NYSDHR also provided numerous substantive grounds for its final determination, including that no adverse action had been taken against him and that the FDNY provided non-discriminatory grounds for its decision by relying on the City's vaccination policy. *See id.* at 12. The NYSDHR also appeared to credit the FDNY's undue burden claim. *See id.*

In this case, Plaintiff's NYSHRL religious discrimination claims are directly barred because Plaintiff raised them in his NYSDHR complaints. *See Higgins*, 836 F. Supp. 2d at 187–

---

[17]    A dismissal by the NYSDHR for lack of jurisdiction is not a dismissal for administrative convenience so as to escape the election of remedies bar. *See Moodie v. Fed. Res. Bank of N.Y.*, 58 F.3d 879, 880, 882 (2d Cir. 1995) (where NYSDHR dismissed complaint on the basis that employer "was not subject to the jurisdiction of the [NYSHRL]," subsequent claim in court was barred); N.Y. Comp. Codes R. & Regs. tit. 9, §§ 465.5(d), (e) (distinguishing "[d]ismissal[s] for lack of jurisdiction or probable cause" from "[d]ismissal[s] for administrative convenience"). In this case, the distinction is academic because the two NYSDHR complaints are materially the same, and as such, the Court would have reached the same conclusion with respect to the election of remedies bar even had it just considered the NYSDHR complaint against the FDNY.

88.  Any distinctions between his NYSDHR complaints and the Complaint in this case are immaterial with respect to the broad derivative bar imposed by the election of remedies doctrine. First, the derivative bar precludes any NYCHRL religious discrimination claims because they arise out of the same operative facts concerning the denial of Plaintiff's exemption requests as those raised in the NYSDHR complaints.  *See id.* at 189.  Second, although Plaintiff checked off boxes in his Complaint in this case, *see* ECF No. 1 at 4, which purported to articulate new theories of religious discrimination not explicitly raised in his NYSDHR complaints, any such claims arising under the NYSHRL and NYCHRL are also barred.  Merely rebranding the same operative facts under the guise of a new legal theory will not allow Plaintiff to circumvent the bar.  *See Luna*, 2022 WL 20319227, at *9.  The same applies to his new allegations of national origin and disability discrimination under either statute because Plaintiff's barebones allegations based on those theories in this case are based on the exact same operative facts concerning the FDNY's denials of his exemption requests.  *See, e.g.*, *Son*, 2013 WL 12084500, at *6.  Finally, even if some of the alleged discriminatory conduct took place after Plaintiff filed his complaints (including his ultimate termination), it is clear that such conduct was "nothing more than the culmination of [his] employer's allegedly unlawful practice" of denying his accommodation requests.  *See Skates*, 2016 WL 1459659, at *21.  Because the election of remedies bar is jurisdictional, the Court dismisses Plaintiff's NYSHRL and NYCHRL claims without prejudice. *See Bledsoe*, 2024 WL 989845, at *7.

### VII.   Plaintiff Lacks a Cause of Action for His Remaining State Claims

Plaintiff also brings claims pursuant to the New York State Executive Department Handbook ("Handbook") and the FDNY Equal Opportunity Employment Policy ("Policy"). ECF No. 1 at 4.  The Handbook and Policy are not statutes nor regulations, and neither provides Plaintiff with a cause of action.  The Handbook makes clear that it "does not grant any legal

rights to any employee, nor is it intended to bind the State in any way." *See* Ex. 18-15 at 13 (Handbook). And Plaintiff provides zero support for the proposition that the Policy is privately enforceable. *See generally Blake v. State*, 69 N.Y.S.3d 142, 143 (N.Y. App. Div. 2018) ("[A]n agency's failure to follows its own internal policy . . . does not give rise to a private cause of action."). The Court therefore dismisses any claims under the Handbook or Policy.

### VIII.   The Court Denies Leave to Further Amend

As previously discussed, Plaintiff seeks leave to amend in the event that the Court "decides that [his] cause of action pursuant to Title VII for failure to accommodate is insufficient." *See* ECF No. 33 at 1. The Court denied that request without prejudice and explained that it "w[ould] assess the allegations made in Plaintiff's motion" when deciding this motion. *Id.* That issue is now moot: as explained above, Plaintiff stated a claim for religious discrimination based on failure to accommodate even absent the additional allegations in the proposed amendment. Granting additional leave to amend merely to attempt to bolster the failure to accommodate claim, which survives, is unnecessary. Because "the new allegations do not affect the claims to be tried, are unnecessary, and would needlessly require the defendant to expend time and resources drafting an answer" in response to a lengthened and amended complaint, leave to amend is inappropriate here. *See Barrett v. United Parcel Serv.*, No. 18-cv-2046, 2020 WL 4016826, at *2 (E.D.N.Y. May 14, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 4016016 (E.D.N.Y. July 16, 2020); *see also Hallmark v. Cohen & Slamowitz, LLP*, 299 F.R.D. 407, 410 (W.D.N.Y. 2014) ("Leave to amend . . . need not be granted where the allegations the plaintiff seeks to add are unnecessary to support the asserted claims."). Plaintiff will have the opportunity to obtain evidence to support the claims he merely restates in his proposed amendments during discovery and may present that evidence at summary judgment. *See Barrett*, 2020 WL 4016826, at *4.

Construing Plaintiff's motion to amend liberally and not limited just to his failure to accommodate claim, the Court also considers whether his proposed amendments would be futile with respect to the now-dismissed claims.  Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff what would effectively be a third opportunity to amend his Complaint. *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).  Here, because I have considered the allegations raised for the first time in the voluminous Opposition papers, *see* ECF No. 31; ECF No. 32, as if they were included in a formal amended complaint, Plaintiff has effectively already been afforded two prior opportunities to amend.  *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022).  Notably, Plaintiff's primary opposition, *see* ECF No. 31, was sixty pages long and included ten exhibits, some with multiple parts.  Plaintiff has pleaded his case exhaustively.

"[L]eave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim." *Jahad v. Holder*, No. 19-cv-4066, 2023 WL 8355919, at

*10 (S.D.N.Y. Dec. 1, 2023).  That is precisely the case here with regard to the claims now

dismissed.  None of Plaintiff's proposed amendments would cure the various defects that have

prevented the Court from reaching the merits of his claims in this case, including failure to

exhaust, the election of remedies, and the failure of certain statutes, regulations, and other

policies to provide him with a cause of action.  Nor would the proposed amendments save his

claims packaged under different Title VII labels in this case because his proposed amendments

merely restate and reformulate claims which already appear in his papers.  *See, e.g.*, ECF No. 33

at 1 ("My sincerely held religious beliefs prevent me from receiving the COVID-19 vaccine.").

In such circumstances, leave to amend is inappropriate.  *See Marquez v. Hoffman*, No. 18-cv-

7315, 2021 WL 6133972, at *3 (S.D.N.Y. Dec. 29, 2021) (denying leave to amend where

"repetitive" proposed amendments would not "bolster the plausibility of . . . claims").  Similarly,

granting Plaintiff leave to amend even beyond the proposed amendments would be futile.  In

opposition, he either summarized and presented new facts in great detail over nine single-spaced

pages and with exhibits, *see* ECF No. 31, or, for most claims, simply directed the Court back to

his original Complaint, *see id.* at 9.  Because there "is still no indication that a valid claim" under

any other law or theory "might be stated if given a [third] chance," amendment would be futile.

*See Barrett*, 2020 WL 4016826, at *3.

*     *     *

Although Plaintiff asserts nearly every imaginable claim in his pleadings, only his Title

VII claim for religious discrimination based on Defendant's alleged failure to accommodate

survives.  Accordingly, the scope of discovery in this case shall be limited to that single claim.

To be clear, at this early stage, the Court takes no position on whether Plaintiff's refusal to

comply with his employer's mandates ultimately entitles him to relief on his claim of

employment discrimination.  Defendant may marshal compelling evidence to defeat that

allegation, particularly with regard to the purported undue burden of accommodating Plaintiff's total exemption requests.  But whether it can do so is a question for another day.

## CONCLUSION

Defendant's motion to dismiss Plaintiff's Title VII religious discrimination claim based on its alleged failure to accommodate is DENIED.  Defendant's motion to dismiss Plaintiff's other Title VII claims as well as his claims arising under the U.S. Constitution, OSHA, HIPPA, CARES Act, 21 C.F.R. § 50.23, Declaration of Independence, NLRA, New York State Executive Department Handbook, and FDNY Equal Opportunity Employment Policy, for failure to state a claim, is GRANTED.  Defendant's motion to dismiss Plaintiff's NYSHRL and NYCHRL claims is GRANTED for want of jurisdiction.

Defendant is directed to answer Plaintiff's one remaining claim on or before April 30, 2024.  Defendant is further directed to mail and email Plaintiff a copy of this Order, along with copies of the unpublished decisions referenced in this Order, in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), on or before April 8, 2024.

SO ORDERED.

  */s/ Hector Gonzalez* 
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
     March 30, 2024