**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

| | | |
|---|---|---|
| JAVIER VASQUEZ, | : | 22-CV-05068 (HG) (VMS) |
| *Plaintiff,* | : | |
| v. | : | |
| CITY OF NEW YORK – OFFICE OF THE MAYOR, | : | **ORAL ARGUMENT REQUESTED** |
| *Defendant.* | : | |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL CIVIL RULE 6.3**

Christina Martinez, Esq.
Law Offices of Christina M. Martinez
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com

*Attorney for the Plaintiff*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT**…………………………………………………..1

**BACKGROUND** ................................................................................................. 2

**ARGUMENT** ...................................................................................................... 12

   **I.**   **The Court should grant the Plaintiff's motion to alter or amend the Court's decision dismissing the Plaintiff's First Amendment cause of action pursuant to FRCP 59(e) or for relief from that decision pursuant to FRCP 60(b).** ......................................................... 12

   **A.**   **Standard of Law** .............................................................................. 12

   **B.**   **Plaintiff's cause of action for a violation of the First Amendment to the United State Constitution should be reinstated, and Defendant's motion to dismiss that cause of action should be denied.** .......................................................................... 13

   **C.**   **The Court should grant the Plaintiff leave to amend his complaint.** ..................... 23

**CONCLUSION** ................................................................................................ 25

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Ansbro v. Nigro</u>, No. 150230/2022, 2022 WL 3028607 (N.Y. Sup. Ct. July 25, 2022) ……. 21

<u>Assam v. Deer Park Spring Water, Inc.</u>, 163 F.R.D. 400 (E.D.N.Y. 1995) ………………… 24

<u>Baptista v. Hartford Bd. of Educ.</u>, 427 F. App'x 39 (2d Cir. 2011) ………………………… 24

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) …………………………………….…… 14

<u>Blaskiewicz v. Cnty. of Suffolk</u>, 29 F. Supp. 2d 134 (E.D.N.Y. 1998) ……………………. 24

<u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682 (2014) …………………………..…….. 20

<u>Church of the Lukumi Babalu Aye, Inc.v. Hialeah</u>, 508 U.S. 520 (1993) ……………….. 18, 19

<u>Dahl v. Bd. of Trustees of W. Michigan Univ.</u>, 15 F.4th 728 (6th Cir. 2021) ……………..…. 18

<u>DePaola v. New York City Fire Dep't., et. al.</u>,
Index No. 85265/2022 (N.Y. Sup. Ct., Richmond Cnty) ………………………….….…. 11

<u>Dluhos v. Floating & Abandoned Vessel, Known as New York</u>, 162 F.3d 63 (2d Cir. 1998) .. 23

<u>Does 1-6 v. Mills</u>, 16 F.4th 20 (1st Cir. 2021) ……………………………………………….. 19

<u>E.E.O.C v. University of Detroit</u>, 904 F.2d 331 (6th Cir.1990) ………………..……………. 20

<u>Emp't Div., Dep't of Human Res. of Or. v. Smith</u>, 494 U.S. 872 (1990) ……………. 17, 18, 22

<u>Foman v. Davis</u>, 371 U.S. 178 (1962) ……………………………………………………… 24

<u>Fulton v. City of Philadelphia</u>, 141 S. Ct. 1868 (2021) …………………………..… 18, 21, 22, 23

<u>Harris v. New York State Dept. of Health</u>, 202 F.Supp.2d 143 (S.D.N.Y.2002) ………… 15, 21

<u>Henderson v. Metro. Bank & Trust Co.</u>, 502 F. Supp. 2d 372 (S.D.N.Y. 2007) …………... 13

<u>Hogan v. Fischer</u>, 738 F.3d 509 (2d Cir. 2013) …………………………………………… 25

iii

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

In the Matter of the Improper Practice Petition between the New York City Municipal Labor
Committee, et. al., and the City of New York and the Department of Health and Mental Hygiene,
MLC, 15 OCB3d 34 (BCB 2022), Docket No. BCB-4458-21), September 28, 2022 ……..… 8

Jackson v. Mann, 196 F.3d 316 (2d Cir. 1999) ………………………………………………… 17

Joinnides v. Floral Park–Bellerose Union Sch. Dist.,
2015 WL 1476422 (E.D.N.Y. Mar. 31, 2015) ………………………………………………… 24

Jolly v. Coughlin, 76 F.3d 468 (2d Cir. 1996) ………………………………………………… 16

Kane v. De Blasio, 19 F.4th 152 (2d Cir. 2021)………………………….……… 1, 18, 19, 20, 21

Keene v. City & Cnty. of San Francisco, 2023 WL 3451687 (9th Cir. May 15, 2023) …….. 16

Lucas v. Miles, 84 F.3d 532 (2d Cir.1996)) …………………………………………………….. 24

Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,138 S. Ct. 1719 (2018) ……….. 19

Owens v. Okure, 488 U.S. 235 (1989) …………………………………………………….…….. 25

Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476 (2d Cir.1985) ……………..……………… 20

Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995) ……………………………………… 24

RCX I, LLC v. Pitter-Nelson, 2014 WL 5809514 (S.D.N.Y. Nov. 6, 2014) ……………….. 24

Reyes v. New York State Off. of Child. & Fam. Servs.,
2003 WL 21709407 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d Cir. 2004) …….. 20

Ringhoffer, et. al. v. Mayo Clinic Ambulance, et. al., Docket Nos. 23-2994 (8th Cir. 2023).. 16

Rivicci v. New York City Fire Dep't,
Index No. 85131/2022, NYSCEF Doc. No. 56 (N.Y. Sup. Ct., Richmond Cnty, 2022) ….. 8, 22

Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14 (2020) ………………………… 23

Satchell v. Dilworth, 745 F.2d 781 (2d Cir. 1984) …………………………………………….. 23

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

Segatt v. GSI Holding Corp.,
No. 07 Civ. 11413, 2008 U.S. Dist. LEXIS 93207 (S.D.N.Y. Nov. 3, 2008) …………….. 13

Soto v. the City of New York, et. al.,
Index No. 157784/2022 NYSCEF Doc. No. 40, (N.Y. Sup. Ct., N.Y. Cnty, 2022) ……….. 13

Sughrim v. New York,
No. 19CV7977RASDA, 2023 WL 5713191 (S.D.N.Y. Sept. 5, 2023) …………………… 17

Tandon v. Newsom, 593 U.S. 61 (2021) …………………………………………………… 22

Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div., 450 U.S. 707 (1981) ……………………… 21

Thompson v. Carter, 284 F.3d 411(2d Cir. 2002) ………………………………………….. 23

U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.,
860 F.3d 131(4th Cir. 2017) ………………………………………………….………... 15

U.S. Navy Seals 1-26 v. Biden, 27 F.4th 336 (5th Cir. 2022) …………………….…..,,,,… 18

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,
182 F.R.D. 97 (S.D.N.Y. 1998), aff'd, 241 F.3d 135 (2d Cir. 2001) …………………...… 12, 13

Vasquez v. New York City Fire Dep't, et. al.,
Index No. 533122/2022 (NY Sup. Ct., Kings Cnty) …………………..…... 8, 9, 10, 14, 21, 22

Welsh v. U.S., 398 U.S. 333 (1970) ………………………………………………………… 20

**Statutes**

Fed.R.Civ.P. 59(e) …………………………………………………………………… 12, 13

Fed.R.Civ.P. 15 ……………………………………………………………………....…….. 1

**Other Authorities**

L.Civ.R. 6.3 …………………………………………………….………………….. 12

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

*Transcript: Mayor de Blasio Holds Media Availability*, City of New York, September 23, 2021, available at https://www.nyc.gov/office-of-the-mayor/news/644-21/transcript-mayor-de-blasio-holds-media-availability ..................................................................................... 10

## <u>PRELIMINARY STATEMENT</u>

This motion, brought by newly-retained counsel to the previously *pro se* Plaintiff, Javier Vasquez, seeks reconsideration of this Court's March 30, 2024 Memorandum & Order. The Plaintiff only seeks relief from the dismissal of the Plaintiff's First Amendment claim. The First Amendment claim is necessary to afford Mr. Vasquez the full breadth of legal protection to which he is entitled. The Court's rationale for dismissal centered around the notion that a vaccine mandate like the one in question did not contravene the First Amendment, citing the Second Circuit's decision in <u>Kane v. De Blasio</u>. However, the crux of Mr. Vasquez's claim lies not in challenging the vaccine mandate itself but rather in contesting the Defendant's *refusal to accommodate* his sincerely held religious beliefs. And in <u>Kane</u>, although the Second Circuit found the Vaccine Mandate on its face was neutral and generally applicable, with respect to the application to those plaintiffs that were denied religious accommodations, the Second Circuit explicitly held that the City's actions were not neutral nor generally applicable, and further, could not satisfy strict scrutiny, thus "violat[ing] the First Amendment as applied to these Plaintiffs". <u>Kane v. De Blasio</u>, 19 F.4th 152, 166-69 (2d Cir. 2021).

Mr. Vasquez also seeks reconsideration of the Court's refusal to grant leave to amend the complaint. Plaintiff requests to amend in order to add the facts to support the First Amendment claim. Mr. Vasquez, formerly unrepresented, now benefits from legal counsel, imbuing his case with newfound clarity and depth.

In summation, this motion is not merely a legal maneuver but a plea for equity, compassion, and the reaffirmation of fundamental rights. Javier Vasquez, a veteran who has already sacrificed so much in service to his country and city, now stands at the precipice of financial ruin and despair. The City's egregious conduct has wrought havoc upon Mr. Vasquez's

life. Compelled to sell his home and having his car repossessed due to the inability to make the payments without his salary, he now grapples with dire circumstances. Struggling just to make ends meet, he and his family confront the harsh reality of eviction from the rented home they currently occupy. With the daunting task of putting food on the table, he is forced to resort to food pantries in order to sustain his wife and four children. It is incumbent upon this Court to heed the call of justice and grant the relief sought herein, thereby restoring faith in the sanctity of the law and the promise of equality before it.

## BACKGROUND

Plaintiff, Javier Vasquez, is a non-white Hispanic former firefighter for the New York City Fire Department ("FDNY"), who admirably served in the Marine Corp. After serving two tours in Iraq, he was honorably discharged at the rank of Sergeant. Mr. Vasquez is a Christian Israelite and Descendent of the Tribe of Ephraim. His faith prohibits him from receiving the COVID-19 vaccines because they utilize aborted fetal cell lines in their testing, development, or production, among other faith-based reasons.

In 2017, Mr. Vasquez was injured in the line of duty while responding to a fire. He hit his head and suffered a laceration and concussion. The laceration became infected causing further complications. After a short stint on light duty, on his first day back as a full duty firefighter, he suffered from dizziness at home, dropped glass and cut his Achilles tendon. He was then put on light duty for about one year, doing office work at FDNY headquarters located at Metrotech Center. Around November 2019, Plaintiff was assigned to light duty at Randall's Island, doing gate security. He was in a booth alone and would let people in and out of the Academy.

2

In early 2020, COVID-19 began circulating in New York City. Plaintiff continued to work in person. In 2021, he was assigned to light duty at Fire Department Operations Center at 9 Metrotech Center. This was a desk job, where he would receive calls from the field and provide information regarding active fires to firefighters responding in the field.

On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued the City Worker COVID-19 Vaccine Mandate, an Order requiring all City Workers, including Plaintiff, to receive a COVID-19 vaccine by October 29, 2021 ("the Health Commissioner's Order").[1] Subsection eight of the Health Commissioner's Order provides for reasonable accommodations.

The Defendants FDNY and the City did not collectively bargain with Plaintiff's Union, the Unified Firefighters Association, before implementing or enforcing the Vaccine Mandate. The City promulgated written policies and procedures with regard to its Vaccine Mandate – the "FAQs on New York City Employees Vaccine Mandate" – which stated that if an employee was granted a reasonable accommodation, the submission of a weekly PCR test was an allowable accommodation that would not cause an undue hardship and/or disruption.

On the same day the Vaccine Mandate was issued, October 20, 2021, Mr. Vasquez submitted his request for a religious exemption to the COVID-19 vaccine mandate. On the FDNY-provided form, he indicated that his current work status was "Light Duty". He wrote that the COVID-19 vaccine is "evil" by using aborted fetal cells in the research, development, and

---

[1]Health Commissioner's Order, accessible at
https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf

3

testing of these vaccines and is how "Satan" "invade[s] our spiritual temple" which would "cause [his] salvation to be taken away via a wicked vaccine". He also wrote:

> However, I cannot receive a COVID-19 vaccine because that would violate my sincere held religious beliefs. All of the currently available COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or testing. As a Christian, I believe that life begins at conception and ends at natural death.

After citing to various scripture and Christian doctrine that explains that life begins in the womb and abortion is murder, he stated "…hence it is my sincerely held religious belief that abortion is murder, a violation of the Ten Commandments ('You shall not murder.' Exodus 20:13), and, for that reason, it would violate my sincerely held religious beliefs to cooperate with or be complicit in abortion in any way."

He also explained how this tenet of his faith specifically related to COVID-19 vaccination: "The COVID-19 vaccines were developed or tested using cell lines that were generated or derived from tissues of aborted fetuses." He also believes that receiving the COVID-19 vaccination would violate his body, which he believes, according to scripture, is the "temple of the Holy Spirit":

> I have to be careful with what I put into my temple and avoid contaminating it in many different ways. Such as the stem cells that are from innocent children murdered (aborted) in a mother's womb for science version of "greater good". Which is what a Christian evil adversary (Satan, lucifer, many names) is using through people/circumstances to invade out spiritual temple. Resulting to a lost or struggle of maintaining our salvation, that we need to enter the Kingdom of Heaven, with Gods approval. The "vaccine" has the same characteristics of a pagan (evil) ritual of sacrificed children body components, to gain rewards such as freedom, money, etc. Participating in such works creates a cause and effect of supply and demand as well, thus a bigger public push for more aborted children in many ways.

He specifically explains each different vaccine brand's connection with abortion. He clearly articulates in closing:

4

> So, it is my sincerely held religious belief that, in being vaccinated with any of the currently available COVID-19 vaccines, I would be cooperating with and complicit in abortion – the ending of an innocent human life – and that such would constitute a sin against God and a violation of His Commandments, for which I would be held morally accountable by God. I cannot partake in this in any shape or form.

A true and accurate copy of Plaintiff's request for religious accommodation is attached as **Exhibit 1**.

Mr. Vasquez remained unvaccinated and continued working while engaging in weekly PCR testing.

On October 24, 2021, an attorney from the Equal Employment Opportunity Office of the FDNY e-mailed the Plaintiff notifying him that he "must include" "[a] Statement in Support from the applicant's Religious or Spiritual Leader that is specific to the applicant setting forth: (a) that the applicant is known to the religious or spiritual leader, (b) the applicant is in good standing with the faith and (c) the tenant of faith that prohibits the applicant from receiving the vaccine." A true and accurate copy of this e-mail is attached as **Exhibit 2**.

On December 13, 2021, FDNY denied his request for a religious accommodation to the Vaccine Mandate. The denial stated in pertinent part: "The asserted basis for the accommodation is insufficient to grant the requested accommodation, particularly in light of the potential undue hardship to the Department." A true and accurate copy of the denial is attached as **Exhibit 3**.

On December 29, 2021, Vasquez's Union President, Andrew Ansbro, notified members, including Vasquez that he sent a letter to the FDNY in which he "demanded that the FDNY provide reason for each firefighter's exemption or RA denial" and articulating concern over the "improper process being employed by the Department."

5

On January 5, 2022, in response to the Union President Andrew Ansbro's demand, the FDNY sent Vasquez and all other firefighters who were denied accommodations, a "supplemental" denial which added the sentence: "Given the state of the public health emergency, the nature of the Department's life-saving mission, and the impact to the safety and health of Department members and the public that Department members regularly interact with, the requested accommodation could not be granted." A true and accurate copy of the Supplemental Denial is attached as **Exhibit 4**.

The FDNY never contacted Plaintiff regarding his request before denying his request.

The FDNY granted other employees reasonable accommodations – for both medical and religious reasons – to the COVID-19 Vaccine Mandate. Even *full-duty* firefighters, living in the firehouse and fighting fires, were granted the reasonable accommodation of weekly PCR testing and masking.

Vasquez appealed the FDNY's denial. The FDNY then forwarded his request for a religious accommodation to the Vaccine Mandate to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel") for a final determination. Plaintiff continued to work in person and submit weekly COVID-19 testing while the Citywide Panel considered his request.

On March 24, 2022, Mayor Eric Adams issued New York City Emergency Executive Order No. 62, exempting professional athletes and performing artists from the NEW YORK CITY COVID-19 Vaccine Mandate.

6

On July 11, 2022, the Citywide Panel denied Mr. Vasquez's appeal. No reason was given. The "classification" for the appeal was "Does Not Meet Criteria." A true and accurate copy of the Citywide Panel's denial is attached as **Exhibit 5**.

The Defendant never contacted Plaintiff to discuss his accommodation request before this final denial. There was no interactive process or cooperative dialogue regarding his request for accommodation.

On July 23, 2022, Plaintiff was put on Leave Without Pay ("LWOP").

On July 25, 2022, Justice William Perry of the New York State Supreme Court, New York County, held that the "petitioners have demonstrated a likelihood of success on the merits, as they have shown that the respondents failed to engage in 'meaningful/cooperative' dialogue with petitioners regarding the accommodations for religious exemptions to the vaccine mandate" on a preliminary injunction motion brought by the United Firefighters Association against the Defendants FDNY and City of New York. Matter of Ansbro v. Nigro, Index No. 150230/2022, 2022 WL 3028607 (Sup. Ct., N.Y. County 2022).

On July 27, 2022, Mr. Vasquez was terminated. A true and accurate copy of the termination notice is attached as **Exhibit 6**.

On September 28, 2022, the Board of Collective Bargaining granted an improper practice petition brought by Plaintiff's Union, the United Firefighters Association, and held that the "City had a duty to bargain over mandatory subjects contained in its policies to implement the Vaccine Mandate and that it failed to do so." In the Matter of the Improper Practice Petition between the New York City Municipal Labor Committee, et. al., and the City of New York and the Department of Health and Mental Hygiene, MLC, 15 OCB3d 34 (BCB 2022), Docket No. BCB-

7

4458-21), September 28, 2022, at p. 7 (holding City violated legal obligation to collectively

bargain regarding topics such as reasonable accommodation procedures (p. 14) LWOP and

termination (p. 12) regarding the Vaccine Mandate).

On November 11, 2022, Plaintiff commenced an Article 78 proceeding challenging the

Defendants' denial of his request for a religious accommodation to the Vaccine Mandate and

subsequent termination as arbitrary and capricious. In that proceeding, the Defendant submitted

two affirmations in support of its Answer. The first affirmation was by Don Nguyen, the

Assistant Commissioner of the Equal Employment Opportunity Office at the FDNY. He

provided the explanation for the FDNY's denial: "In Petitioner's case, he is a certified first

responder who would respond not only to fires but medical emergencies with vulnerable

populations of people. Because of the nature of this work, we considered any chance of COVID-

19 illness/transmission that was not minimized to the best of our ability to be a direct threat

against co-workers or patients. Therefore, given the nature of Petitioner's work and his

interaction with the public his request for a religious accommodation could not be granted."

Nguyen Affirmation, Vasquez v. New York City Fire Dep't, et. al., Index No. 533122/2022,

NYSCEF Doc. No. 36, p.10. A true and accurate excerpt of the Nguyen Affirmation is attached

as **Exhibit 7**. However, Mr. Vasquez had been on light duty for years and he did not respond to

fires or medical emergencies. Nguyen's affirmation also revealed that the FDNY evaluated

medical accommodation requests without regard to undue hardship. A benefit religious

applicants were not entitled to. Id. at p. 5. And full-duty firefighters were permitted to work in

their positions with medical accommodations. Rivicci v. New York City Fire Dep't, Index No.

85131/2022, NYSCEF Doc. No. 56, p. 6 (N.Y. Sup. Ct., Richmond Cnty, October 7, 2022).

The City also submitted the affirmation of Eric Eichenholtz, the Managing Attorney of the New York City Law Department, Office of the Corporation Counsel, and architect of the Citywide Panel. He provided the explanation for the Citywide Panel's denial: "The Panel voted to affirm the denial of the reasonable accommodation because the FDNY established an undue hardship if the Petitioner's RA were to be granted. Petitioner did not articulate any other instances of vaccine and/or medicine refusal other than his refusal of the COVID-19 vaccination.[2] Moreover, the belief articulated a prohibition from taking a vaccine that contains cells from aborted fetuses was inapplicable to COVID-19 vaccines because they do not contain cells from aborted fetuses. Finally, Petitioner did not set forth how his religious beliefs conflict with the vaccine requirement. The Panel also voted to affirm based on undue burden to the FDNY. In this regard, the Panel was mindful that the FDNY was to consider both Petitioner's individual work circumstances and their role within the FDNY as well as the cumulative effect that any accommodation, if granted, would have on the ability of the FDNY to operative under the criteria set forth by federal, state, and local laws." Eichenholtz Affirmation, Vasquez v. New York City Fire Dep't, et. al., Index No. 533122/2022, NYSCEF Doc. No. 35, p.9. A true and accurate excerpt of the Eichenholtz Affirmation is attached as **Exhibit 8**.

The City unlawfully required a letter from clergy stating that vaccination was prohibited by a specific tenet of the applicant's religion. The City improperly rejected requests for accommodations based on religious objections to the use of aborted fetal cell lines, and refused

---

[2] To be clear, the FDNY never asked Vasquez to articulate any other instances of vaccine and/or medicine refusal, nor did they reach out to him at all before denying his request.

9

to acknowledge a "conflict" where an applicant's religion did not explicitly require the refusal of vaccines. The Mayor admitted as much in a statement to the Press:

> **Question:** Could you maybe go into some of that criteria so I know like with religious exemptions, for example, there have been leaders such as the Pope that have said it's okay you know, to get – for Catholics to get the vaccine. So, are there any religious exemptions that you know of?
> **Mayor:** Yeah, it's a great question. Thank you. Yes. And very powerfully Pope Francis has been abundantly clear that there's nothing in scripture that suggests people shouldn't get vaccinated. Obviously, so many people of all faiths have been getting vaccinated for years and decades. There are, I believe it's two well-established religions, Christian Science and Jehovah's Witnesses that have a history on this, of a religious opposition. But overwhelmingly the faiths all around the world have been supportive of vaccination. So, we are saying very clearly, it's not something someone can make up individually. It has to be, you're a standing member of a faith that has a very, very specific long-standing objection. Go ahead.

*Transcript: Mayor de Blasio Holds Media Availability*, City of New York, September 23, 2021, available at https://www.nyc.gov/office-of-the-mayor/news/644-21/transcript-mayor-de-blasio-holds-media-availability.[3]

On March 30, 2023, the Honorable Francois Rivera, of the Supreme Court of the State of New York, Kings County, granted Plaintiff's Article 78 petition, ordering the Defendant to reinstate him to his position with the FDNY, among other relief. Vasquez v. New York City Fire Dep't, et. al., Index No. 533122/2022, NYSCEF Doc. No. 67. A true and accurate copy of the Decision & Order is attached as **Exhibit 9**. Despite Judge Rivera's order, and multiple requests to be reinstated, the Defendant has adamantly refused to reinstate Plaintiff. But Defendant has reinstated other firefighters who won Article 78 proceedings.

---

[3] Plaintiff requests that the Court take judicial notice of the transcript of the Mayor's statements, available on the City's website.

10

Plaintiff's attorney represents several firefighters who were terminated or put on Leave Without Pay due to denial of their religious accommodation requests. The Defendant reinstated these firefighters after winning Article 78 proceedings. This includes a firefighter who was on Light Duty just like Mr. Vasquez. Notably, these other firefighters who were reinstated were white and not Hispanic.

On or about February 9, 2023, the New York City Department of Health and Mental Hygiene amended the Vaccine Mandate, no longer requiring exclusion from the workplace for City Workers who do not provide proof of COVID-19 vaccination. Thus, there is no alleged public health reason for refusing to reinstate Plaintiff. Yet, the City still refuses to reinstate Mr. Vasquez.

And on February 22, 2023, the Defendant made a judicial admission that it would not create an undue hardship to accommodate firefighters because "in the summer of 2002, COVID cases and deaths were extremely low…" DePaola v. New York City Fire Dep't., et. al., Index No. 85265/2022, NYSCEF Doc. No. 87, November 3, 2023, p. 14-15, attached as **Exhibit 10**. In DePaola, a full-duty firefighter won an Article 78 proceeding challenging the Defendants' denial of his request for a religious accommodation to the Vaccine Mandate. Id. at NYSCEF Doc. No. 52,  March 27, 2023. DePaola was denied a religious accommodation to the Vaccine Mandate based on undue hardship but later granted a medical accommodation. Id. at p. 1-2. The Defendants argued that it was an undue hardship to accommodate DePaola when he applied for a religious accommodation in November of 2021 but due to the low cases and deaths over the summer of 2022, when he was granted a medical accommodation, it was no longer an undue hardship to accommodate him with PCR testing. Id., NYSCEF Doc. No. 87, November 3, 2023,

11

p. 14-15. Here, Mr. Vasquez was ultimately denied in July of 2022 – a time when the Defendants

claim it was no longer an undue hardship to accommodate firefighters.

Mr. Vasquez filed a new charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") alleging retaliation and national origin discrimination with

regard to the City's refusal to reinstate him to his position. The EEOC has informed Plaintiff that

the notice of right to sue will be issued by the end of next week.

The Defendants' unlawful actions have turned Plaintiff's world upside-down. He was

forced to sell his home and his car was repossessed. He can barely keep food on the table,

struggling just to make ends meet, and forced to visit food pantries in order to feed his family.

He, along with his wife and four children, are now being evicted from the home he rents.

## ARGUMENT

**I.**    **The Court should grant the Plaintiff's motion to alter or amend the Court's decision dismissing the Plaintiff's First Amendment cause of action pursuant to FRCP 59(e) or for relief from that decision pursuant to FRCP 60(b).**

   **A.  Standard of Law**

Courts have ample discretion to grant relief under FRCP 59(e), 60(b) and Local Rule 6.3.

Whether to grant or deny a motion for reconsideration or reargument is in the "sound discretion

of a district court judge and will not be overturned on appeal absent an abuse of discretion." U.S.

Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 182 F.R.D. 97, 100 (S.D.N.Y.

1998), aff'd, 241 F.3d 135 (2d Cir. 2001).

A motion "to alter or amend" a judgment under Fed.R.Civ.P. 59(e), or a motion for

reconsideration or reargument under Local Civil Rule 6.3, provides the Court with an

opportunity to "prevent manifest injustice." U.S. Titan, Inc, 182 F.R.D. at 100;  L.Civ.R. 6.3

(movant "shall ... serve [ ] ... a memorandum setting forth the matters or controlling decisions which counsel believes the court has overlooked"). "While Rule 59(e) ... does not prescribe specific grounds for granting a motion to alter or amend a judgment, the movant must [either] present factual matters or controlling decisions the court overlooked that might materially have influenced its earlier decision ... [or] demonstrate the need to correct a clear error or prevent manifest injustice." Segatt v. GSI Holding Corp., No. 07 Civ. 11413, 2008 U.S. Dist. LEXIS 93207, at *8 (S.D.N.Y. Nov. 3, 2008) (citation omitted); *see also* Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007) (citation omitted) (moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

### B. Plaintiff's cause of action for a violation of the First Amendment to the United State Constitution should be reinstated, and Defendant's motion to dismiss that cause of action should be denied.

This Honorable Court granted the Defendants' motion to dismiss as to the Plaintiff's cause of action for a violation of the First Amendment to the United States Constitution. The Court explained: "Plaintiff appears to claim that the vaccine mandate violated the First Amendment's Free Exercise Clause." Memorandum & Order, March 30, 2023, p. 22. However, the Court mistakenly overlooked the crux of Plaintiff's free exercise claim – that the Defendants' *refused to accommodate* him. Compl., p. 5 ("Defendants discriminated against me based on my: religion – Denied 2 religious exemptions…"). It is the failure to accommodate that substantially burdened his free exercise of religion. Soto v. the City of New York, et. al., Index No. 157784/2022 NYSCEF Doc. No. 40, 11/14/2022 (granting NYPD police officer preliminary injunction prohibiting NYPD from "taking any adverse employment action against petitioner for

13

refusing to violate her religious beliefs in violation of the New York State Constitution's free exercise clause, holding "Petitioner has demonstrated that her irreparable injury, would not necessarily be her loss of employment and monetary compensation, but the NYPD's infringing upon the petitioner's right to exercise religious freedom under the constitution" by "denial of her religious accommodation to be exempt from the vaccine mandate"). Taking into consideration the liberal construction standard for a *pro se* plaintiff, there are "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

This Court dismissed Plaintiff's First Amendment cause of action on the grounds that the Second Circuit has already ruled that a *vaccine mandate* like the one at issue here did not violate the First Amendment, and because it was neutral and generally applicable, this Court held that "Plaintiff advances no plausible allegations that would lead the court to a different outcome in this case…" But it is not the *vaccine mandate* itself being challenged; rather it is the Defendants' refusal to accommodate the Plaintiff that must be analyzed for neutrality and general applicability.

The City did not give Mr. Vasquez a reason for the denial of his religious accommodation, which stated only "Does Not Meet Criteria." However, in the state court proceeding brought by Mr. Vasquez, the City explained its reasons for denial: "[T]he belief articulated a prohibition from taking a vaccine that contains cells from aborted fetuses was inapplicable to COVID-19 vaccines because they do not contain cells from aborted fetuses. Finally, Petitioner did not set forth how his religious beliefs conflict with the vaccine requirement." Affirmation of Eric Eichenholtz, Vasquez v. New York City Fire Dep't, et. al.,

14

Index No. 533122/2022, NYSCEF Doc. No. 35, p. 9.[4] "The core of [the City's] defense is that it did not fail to reasonable accommodate [Vasquez's] religious beliefs because there was in fact no conflict between [Vasquez's] beliefs and its requirement that [Vasquez] [receive the COVID-19 vaccine]." U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc., 860 F.3d 131, 142 (4th Cir. 2017). This is precisely what the defendants argued in Consol Energy – that there was no religious conflict with regard to its requirement that employees use a hand scanner system. Id. at 142. In Consol Energy, the Fourth Circuit denigrated the defendant-employer for its "failure to recognize this conflict—in its dealings with [plaintiff] as well as its litigation of this case." Id. at 142. The court said that this failure "appears to reflect [defendant's] conviction that [plaintiff']s religious beliefs, though sincere, are mistaken: that the Mark of the Beast is not, as [plaintiff] believes, associated with mere participation in a scanner identification system." Id. at 142. The court also noted that the defendant "point[ed] to evidence that [plaintiff]'s pastor does not share [plaintiff]'s belief that there is a connection between the scanner and the Mark of the Beast." Id. at 142. The Fourth Circuit held:

> But all of this, of course, is beside the point. It is not Consol's place as an employer, nor ours as a court, to question the correctness or even the plausibility of Butcher's religious understandings. See Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine ... the plausibility of a religious claim."). Butcher's religious beliefs are protected whether or not his pastor agrees with them, cf. Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 715–16, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (protection of religious beliefs not limited to beliefs shared by religious sect), and whether or not Butcher's pastor—or Consol, or the manufacturer of Consol's scanning system—thinks that Butcher, in seeking to protect his religious conscience, has drawn the line in the right place, see id. at 715, 101 S.Ct. 1425 ("[I]t is

---

[4] The Court may take judicial notice of the affirmation submitted by the Defendant in the state court action. Harris v. New York State Dept. of Health, 202 F.Supp.2d 143, 173 n. 13 (S.D.N.Y.2002).

not for us to say that the line [the religious objector] drew was an unreasonable one.").[3]
So long as there is sufficient evidence that Butcher's beliefs are sincerely held—which
the jury specifically found, and Consol does not dispute—and conflict with Consol's
employment requirement, that is the end of the matter.

Id. at 142-143.

The EEOC recently filed an amicus brief, affirming that objections based on aborted fetal

cell lines in COVID-19 vaccines constitute religious conflicts, countering the employer's

argument similar to that of the City. Ringhoffer, et. al. v. Mayo Clinic Ambulance, et. al., Docket

Nos. 23-2994, Brief of the EEOC as Amicus Curiae[5], p 19-25 (October 31, 2023), a true and

accurate excerpt is attached as **Exhibit 11**. And the City's contention that Vasquez "had not

asserted sincere religious beliefs because [his] beliefs were not scientifically accurate" violates

the First Amendment.  Keene v. City & Cnty. of San Francisco, 2023 WL 3451687, at *2 (9th

Cir. May 15, 2023) (held district court's holding that plaintiff failed to demonstrate religious

conflict was based on a factual error that the COVID-19 vaccines did not derive from aborted

fetal cell lines and reflects a misunderstanding  of the law); See Jolly v. Coughlin, 76 F.3d 468,

469 (2d Cir. 1996) (concluding that prison officials cannot impinge on sincere religious belief

simply by showing that "as an objective matter, the plaintiff's belief is not accurate or logical").

"It is not [the City's] place as an employer … to question the correctness or even the plausibility

---

[5] Plaintiff requests that the Court take judicial notice of the Amicus Brief submitted by the EEOC in an appeal in the Eighth Circuit, which is accessible on ECF at
https://ecf.ca8.uscourts.gov/n/beam/servlet/TransportRoom?servlet=ShowDocMulti&incPdfHeader=Y&pacer=t&CSRF=csrf_-4720766515524620691&incPdfHeaderDisp=Y&caseId=107030&dktType=dktPublic&outputType=doc&d=5332002&outputForm=view&incPdfFooter=&dls=4871330%252C4871327

of [Vasquez]'s religious understandings." Emp't Div., Dep't of Human Res. of Or. v. Smith, 494

U.S. 872, 887 (1990).

The City's rationale for its denial of Vasquez's religious accommodation request reveals

that the City wields unchecked authority in determining which religious beliefs merit

accommodation and displays clear bias and discriminatory treatment in its determinations. The

City has denied Vasquez's request for religious accommodation "based on its own assessment as

to whether [the refusal of vaccination] is a tenet or requirement of an applicant's faith. Because

that practice plainly runs afoul of the First Amendment and Title VII's prohibition on

determining 'the objective truth of Plaintiffs' beliefs'," Plaintiff has clearly stated a plausible

claim for relief under the First Amendment. Sughrim v. New York, No. 19CV7977RASDA,

2023 WL 5713191, at *10 (S.D.N.Y. Sept. 5, 2023)(*quoting* Jackson v. Mann, 196 F.3d 316, 320

(2d Cir. 1999)). In Sughrim, the defendant denied the plaintiffs' requests for religious

accommodation to maintain a beard, because the state decided that maintaining a beard was not

required by their religions, and therefore the employees' religious beliefs did not conflict with

the beard requirement. Sughrim, 2023 WL 5713191, at *12. Here, the City likewise denied

Vasquez's request for religious accommodation because it unilaterally determined that there was

no conflict between Vasquez's religion and receiving the vaccine, and that in any event,

Vasquez's beliefs were incorrect. This violates the Free Exercise Clause and demonstrates a clear

hostility to the religious beliefs and practices of the Plaintiff. The Defendants have violated the

Free Exercise Clause by denying the Plaintiff's accommodation for the Vaccine Mandate "based

on their own interpretation of what tenets of h[is] faith are – that is, the verity of the religious

belief." Id. at *10.

17

Vasquez specifically challenges the denial of his request for a religious accommodation. Dahl v. Bd. of Trustees of W. Michigan Univ., 15 F.4th 728, 732 (6th Cir. 2021) (University's failure to grant religious exemptions to plaintiffs burdened their free exercise rights). "The question, then, is not whether [Defendants have] a compelling interest in enforcing its vaccination policies generally, but whether it has such an interest in denying an exception to [] Plaintiff." U.S. Navy Seals 1-26 v. Biden, 27 F.4th 336, 351 (5th Cir. 2022) (held plaintiffs' "First Amendment freedoms are seriously infringed" by denials of their religious accommodations to vaccine mandate) (cleaned up, *quoting* Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1881 (2021)). Significantly, in Kane, cited by this Court, the Second Circuit found the procedures the City used in deciding religious accommodation requests to the Vaccine Mandate for teachers were neither generally applicable nor neutral, and did not "survive strict scrutiny". Kane v. De Blasio, 19 F.4th 152, 169 (2d Cir. 2021). In Kane, the court held that the Vaccine Mandate itself "on its face" was neutral and generally applicable, but not so as applied to the plaintiffs who were denied religious accommodations under procedures that "violated the First Amendment as applied to these Plaintiffs". Id. at 166-68.

Because the City burdened Plaintiff's religious exercise through policies lacking neutrality and general applicability, the City's denial of Plaintiff's religious exemption is subject to strict scrutiny under the Free Exercise Clause. Id. at 169; Church of the Lukumi Babalu Aye, Inc.v. Hialeah, 508 U.S. 520, 531-32 (1993); Fulton, 141 S. Ct. at 1877. Neutrality and general applicability are distinct concepts, and therefore challenged conduct could fail the separate test of general application even if it satisfied the neutrality criteria. Lukumi, 508 at 542 (referring to general applicability as a "second requirement of the Free Exercise Clause").

18

"To be neutral, a law may not single out religion *or religious practices*" <u>Does 1-6 v. Mills</u>, 16 F.4th 20, 29 (1st Cir. 2021) (*citing* <u>Lukumi</u>, 508 U.S. at 532-34) (emphasis added) as the government "fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." <u>Fulton</u>, 141 S. Ct. at 1877. Here, like in <u>Kane</u>, the City's actions were not neutral to Plaintiff's religious practices. "The Supreme Court has explained that "the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." <u>Kane</u>, 19 F.4th at 168 (*quoting* <u>Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n</u>,138 S. Ct. 1719, 1731 (2018)). The Second Circuit held in <u>Kane</u> that they had "grave doubts" that the standards used by the City to determine religious accommodations were "consistent with this bedrock First Amendment principle." The court explicitly admonished the City for only considering religious accommodations for "recognized and established religious organizations" and for denying requests "where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." <u>Kane</u>, 19 F.4th at 168. The court also noted that the City rejected one of the plaintiff's beliefs as "merely personal, because there are other Orthodox Christians who choose to get vaccinated." <u>Id</u>. at 168.

> Denying an individual a religious accommodation based on someone else's publicly expressed religious views — even the leader of her faith —runs afoul of the Supreme Court's teaching that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, *or the validity of particular litigants' interpretations of those creeds*." *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109

19

S.Ct. 2136, 104 L.Ed.2d 766 (1989) (emphasis added); *see also Frazee v. Illinois Dep't of Emp. Sec.*, 489 U.S. 829, 833, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989) (noting that "disagreement among sect members" over whether work was prohibited on the Sabbath had not prevented the Court from finding a free exercise violation based on the claimant's "unquestionably  ... sincere belief that his religion prevented" him from working (citing *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)).

Id. at 168–69.

Thus, the court held that the standards employed by the City to decide religious accommodation requests "were not neutral, triggering the application of strict scrutiny". Id. at 169. The City's actions here are also not neutral for the same reasons. The City cannot attempt to parse what a person religiously opposed to abortion believed would make him complicit, as the Supreme Court of the United States advised on this issue: "it is not for us to say that the line he drew was an unreasonable one." Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 725 (2014); *see* E.E.O.C v. University of Detroit, 904 F.2d 331 (6th Cir.1990) (professor pled Title VII religious discrimination when professor's union required payment of an agency fee which went to an organization that supported abortion). Decades of jurisprudence make it clear that the law "protects more than the … practices specifically mandated by an employee's religion." Reyes v. New York State Off. of Child. & Fam. Servs., No. 00 CIV. 7693(SHS), 2003 WL 21709407, at *6 (S.D.N.Y. July 22, 2003), aff'd, 109 F. App'x 466 (2d Cir. 2004) (internal citations omitted).

Furthermore, defendant's position would require this Court to make a determination as to whether or not a particular practice is or is not required by the tenets of the employee's religion. In Title VII cases concerning religious discrimination, as in questions regarding the free exercise of religion, it is only appropriate for a court to engage in an analysis of the sincerity of a plaintiff's religious beliefs, and not the verity of those beliefs.

Id. at *6 (*citing* Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 482 (2d Cir.1985)); Welsh v. U.S., 398 U.S. 333, 343 (1970) (beliefs were religious although his church did not teach those

20

beliefs); <u>Thomas v. Rev. Bd. Of Ind. Emp't Sec. Div.</u>, 450 U.S. 707, 715 (1981) (disagreement among sect workers as to whether their religion made it sinful to work in an armaments factory irrelevant to whether belief was religious because "[t]he guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect."). It is impermissible for an employer, let alone a government employer, "to question the correctness or even the plausibility of [Plaintiff]'s religious understandings." <u>Smith</u>, 494 U.S. at 887.

The FDNY's requirement that Vasquez submit a letter from his "religious leader" stating that he is in good standing with the faith and explaining how rejection of the COVID-19 vaccination is required by the tenets of their religion is blatantly unconstitutional. <u>Ansbro v. Nigro</u>, No. 150230/2022, 2022 WL 3028607, at *3 (N.Y. Sup. Ct. July 25, 2022) ("improper request" for "documentation from religious leaders" from firefighters applying for religious accommodations to the Vaccine Mandate was made without respondents first articulating any objective basis for questioning either the religious nature or the sincerity of the applicant's belief and how this information relates to the person requesting the accommodation).

And like in <u>Kane</u>, the City's procedure used to deny Plaintiff's accommodation request was also not "generally applicable to all those seeking religious accommodation." 19 F.4th at 169. The City had "substantial discretion over whether to grant those requests." <u>Id.</u> at 169. The City targets Plaintiff's explanation for his religious objection to the COVID-19 vaccination, and is specifically considering the particular reasons for Vasquez's refusal of the COVID-19 vaccination. Because they deem his religious beliefs do not actually conflict according to their own views, they argue that Plaintiff is not worthy of an exemption. "A law is not generally

21

applicable if it invites the government to consider the particular reasons for a person's conduct by creating a mechanism for individualized exemptions" Fulton, 593 U.S. at 523 (*quoting* Smith, 494 U.S. at 884). The City's policies invite the government to perform a subject analysis of Vasquez's conduct while allowing individualized exemptions. "Where such a system of individual exemptions exists, the government may not refuse to extend that system to cases of religious hardship without a compelling reason." Fulton, 593 U.S. at 523.

"A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Id. at 534. The FDNY permitted firefighters to continue working while unvaccinated for medical reasons. Rivicci v. New York City Fire Dep't, Index No. 85131/2022, NYSCEF Doc. No. 56, p. 6 (N.Y. Sup. Ct., Richmond Cnty, October 7, 2022) ("The Court cannot help but question, why were those accommodations of testing and masking granted, while this Petitioner's request for an accommodation would cause an 'undue burden' to the Department. It makes no difference to this Court whether an accommodation was granted for a religious or medical reason.").

Strict scrutiny applies here. "[N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID." Tandon v. Newsom, 593 U.S. 61, 63 (2021). Here, the government allowed other FDNY employees to continue working unvaccinated while engaging in weekly PCR testing. Nguyen Affirmation[6], Vasquez v. New York City Fire Dep't, et. al.,

---

[6] The Court may take judicial notice of the affirmation submitted by the Defendant in the state court action. Harris v. New York State Dept. of Health, 202 F.Supp.2d 143, 173 n. 13 (S.D.N.Y.2002).

Index No. 533122/2022, NYSCEF Doc. No. 36, p. 9 (FDNY has granted 36 reasonable

accommodations for Fire Operations members – 29 for medical reasons and 7 for religious

reasons). These precautions were sufficient to accommodate the religious beliefs that the

Defendants deemed worthy. Id. at 63 (citing Roman Cath. Diocese of Brooklyn v. Cuomo, 592

U.S. 14, 19 (2020)). The Defendants cannot show "that public health would be imperiled if less

restrictive measures were imposed". Roman Cath. Diocese, 592 U.S. at 19. Particularly, where

they are implementing those less restrictive measures for others. The Defendants "cannot survive

strict scrutiny because denying religious accommodations based on the criteria outlined in the

Accommodation Standards, such as whether an applicant can produce a letter from a religious

official, is not narrowly tailored to serve the government's interest in preventing the spread

of COVID-19." Kane 19 F.4th at 169. "Put another way, so long as the government can achieve

its interests in a manner that does not burden religion, it must do so." Fulton, 141 S. Ct. at 1881.

Thus, the City cannot satisfy strict scrutiny.

### C.  The Court should grant the Plaintiff leave to amend his complaint.

Plaintiff seeks leave to amend the complaint with regard to his First Amendment cause of

action. The Second Circuit holds that "a *pro se* litigant in particular 'should be afforded every

reasonable opportunity to demonstrate that he has a valid claim.'" Dluhos v. Floating &

Abandoned Vessel, Known as New York, 162 F.3d 63, 69 (2d Cir. 1998) (*quoting* Satchell v.

Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)); *see* Thompson v. Carter, 284 F.3d 411, 419 (2d Cir.

2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit

require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal

complaints before dismissing them."). Amending Plaintiff's original Complaint – which was

23

drafted by a *pro se* litigant – would provide Plaintiff the much-needed opportunity to properly articulate his causes of action.

Plaintiff filed this action *pro se*, and only retained counsel to represent him in this action on April 8, 2024. Plaintiff has proceeded thus far to the best of his ability, however the original Complaint is inartfully pleaded. It would be substantially prejudicial if his First Amendment claim was dismissed without the opportunity to amend his complaint.  Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) ("A *pro se* plaintiff in a civil rights action should be afforded the opportunity to amend his complaint, even where the request is made after the court has entered judgment dismissing the complaint.").

In general, a motion to amend should be granted unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995) (*citing* Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 228 (1962)). All parties and the Court will benefit from a clearly articulated complaint with facts particular to Plaintiff's failure to accommodate and Free Exercise causes of action.

The Plaintiff has retained counsel. Thus, the Court's rationale that any amendment would be futile no longer stands. "Of course, as a *pro se* litigant, [Plaintiff] cannot be expected to act with the diligence or skill of an attorney." Baptista v. Hartford Bd. of Educ., 427 F. App'x 39, 43 (2d Cir. 2011). This is why courts afford *pro se* litigants "leniency" in asserting their claims. Id. (*citing* Lucas v. Miles, 84 F.3d 532, 538 (2d Cir.1996)). It would benefit all parties and this Court to allow Plaintiff to amend his Complaint, drafted by legal counsel. The amendment would not cause prejudice to the Defendant. To the contrary, it will be more efficient for all parties to

24

move forward with a clearer, more concisely stated Complaint that clearly articulates both the facts and Plaintiff's causes of action.

## **CONCLUSION**

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiff's motion to for reconsideration of the Memorandum & Order entered on March 30, 2024, vacating the dismissal of Plaintiff's claim pursuant to the First Amendment to the United States Constitution. This Court should reinstate the Plaintiff's cause of action pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution, and deny the Defendant's motion to dismiss as to that cause of action. The Court should grant Plaintiff leave to amend the complaint with regard to the First Amendment claim.

Dated: Staten Island, New York          Respectfully submitted,
       April 13, 2024

_____
Christina Martinez, Esq.
Law Offices of Christina M. Martinez
245 Bricktown Way, Suite J
Staten Island NY 10309
T: (347) 215-4543
ChristinaMartinezEsq@gmail.com
*Attorney for the Plaintiff*

25