UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAVIER VASQUEZ,

        Plaintiff,

v.

CITY OF NEW YORK – OFFICE OF THE MAYOR,

        Defendant.

**MEMORANDUM & ORDER**
22-CV-05068 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Javier Vasquez sued the City of New York, "alleg[ing] that he was terminated from his employment with the FDNY [New York City Fire Department] because he did not comply with the City's requirement that City employees be vaccinated against COVID-19." *See Vasquez v. City of New York* ("*Vasquez I*"), No. 20-cv-05068, 2024 WL 1348702, at *1 (E.D.N.Y. Mar. 30, 2024).[1] Plaintiff now seeks leave to amend his Complaint "to add claims for retaliation, national origin discrimination, and violation of the First Amendment's Free Exercise Clause." ECF No. 62-1 at 6 (Motion to Amend, "Mot.").[2] Because Plaintiff has failed to propose amendments, his motion is denied. His motion is also denied for the independent reason that, even were the Court to construe proposed amendments for him, they would be futile.

## BACKGROUND

On March 30, 2024, the Court granted Defendant's motion to dismiss all claims except then-*pro se* Plaintiff's Title VII claim for religious discrimination based on Defendant's alleged

---

[1] Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

[2] The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

failure to accommodate.  *See Vasquez I*, 2024 WL 1348702, at *15.  Plaintiff then obtained counsel and, on April 12, 2024, filed a motion styled as a "Motion to Alter or Amend the Judgment Under F.R.C.P. 59(e) and/or f[or] Relief from the Judgment Under F.R.C.P. 60(b) and/or for Reconsideration or Reargument Pursuant to Local Civil Rule 6.3 and for Leave to Amend the Complaint Under F.R.C.P. 15."  *See* ECF No. 40.  On April 13, 2024, the Court struck that motion for failure to comply with the Court's Individual Practices, explained that it would not entertain a motion under Federal Rules 59(e) and 60(b) because there was no judgment or final order, and would also not entertain a motion to amend the Complaint without a pre-motion conference letter, as required by the Court's Individual Practices.  *See* Apr. 13, 2024, Text Order.  Later that day, Plaintiff refiled his motion, now styled as a motion for reconsideration under Local Civil Rule 6.3, but still making reference to Rules 59(e) and 60(b).  *See* ECF No. 41.  On April 30, 2024, the Court denied Plaintiff's motion for reconsideration because he "failed to identify any controlling law or facts overlooked by the Court in its prior Order" on the motion to dismiss.  *See Vasquez v. City of New York* ("*Vasquez II*"), No. 20-cv-05068, 2024 WL 1886656, at *1 (E.D.N.Y. Apr. 30, 2024).

Plaintiff filed a pre-motion conference letter in anticipation of a motion to amend on May 21, 2024.  ECF No. 55.  Defendant opposed that letter on May 29, 2024.  ECF No. 56.  On May 29, 2024, the Court denied the request for a pre-motion conference and set a briefing schedule.  *See* May 29, 2024, Text Order.  The Court subsequently granted Plaintiff two extensions of time to file his motion, which he ultimately filed on July 5, 2024.  In addition to his motion and attached exhibits, Plaintiff filed a separate exhibit later that same day.  *See* ECF No. 63 (Curatolo Aff.).  On July 8, 2024, without leave of the Court, Plaintiff filed an "important update," attaching a right to sue letter dated that same day.  *See* ECF No. 64 (Ltr. from Counsel); No. 64-1

(Right to Sue Letter). On July 19, 2024, Defendant filed a timely opposition. ECF No. 65 ("Opp.").[3]

Before proceeding, one additional piece of background is worth mentioning, although it is, as earlier, unnecessary for the resolution of this motion. Throughout his papers, Plaintiff refers to his state court proceeding challenging his termination. As this Court explained in the motion to dismiss posture, "a New York state court . . . determined that the FDNY's termination of Plaintiff was arbitrary and capricious, and ordered him reinstated with back pay." *See Vasquez I*, 2024 WL 1348702, at *1 n.2. Defendant appealed the state court's decision, staying its enforcement. *See* Opp. at 19. Defendant has not reinstated Plaintiff. *See id.*; Mot. at 18.

## LEGAL STANDARD

When a party's time to amend as of right as has expired, Rule 15(a)(2) governs granting leave to amend. "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend). To state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible 'when the plaintiff pleads factual content that

---

[3] The Court previously denied Plaintiff leave to amend for the purpose of "bolster[ing]" his failure to accommodate claim because that claim survived Defendant's Rule 12(b)(6) motion. *See Vasquez I*, 2024 WL 1348702, at *14. After noting that the Court "considered [Plaintiff's] allegations raised for the first time in [his] voluminous Opposition papers," and thereby "effectively . . . afford[ing] [Plaintiff] two prior opportunities to amend," the Court denied Plaintiff further leave to amend with respect to the dismissed claims. *Id.*

3

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff's motion is denied for two reasons.  First, the Court denies his motion because he has failed to include an amended complaint.  Second, to the extent the Court construes proposed amendments for him, the Court determines that they would be futile.

### I.      Failure to Propose Amended Complaint

Plaintiff's motion is denied because it does not include a proposed amended complaint. The failure to include an amended complaint is puzzling because Plaintiff's counsel previously sought an extension of time, in part, "to ensur[e] that the amended complaint is thorough and complete."  ECF No. 57 at 1.  Regardless of why Plaintiff failed to include a proposed amended complaint, the Court agrees with Defendant, Opp. at 15–16, that Plaintiff's failure to do so is fatal because "[n]either Defendant[] nor the Court can properly evaluate whether the proposed amendment has any merit absent a proposed pleading." *See Capak v. Epps*, No. 18-cv-4325, 2020 WL 2543092, at *4 (S.D.N.Y. Apr. 7, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 2538998 (S.D.N.Y. May 19, 2020); *see also Owens v. Textron Fin. Corp.*, No. 13-cv-5948, 2014 WL 3887181, at *4–5 (S.D.N.Y. July 14, 2014), *aff'd*, 590 F. App'x 83 (2d Cir. 2015); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 366–67 (E.D.N.Y. 2013).  Denying the instant motion on this ground is particularly appropriate because the winding nature of Plaintiff's motion—which proposes three distinct claims articulated through a fluid mix of legal arguments and factual allegations—makes it impossible for the Court and Defendant to ascertain "the exact nature of the proposed amendments." *See Smith v. Planas*, 151 F.R.D. 547, 550 (S.D.N.Y. 1993)

4

("In order to satisfy the prerequisite of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought."). The motion is denied.

## II. Futility

Even if the Court construes proposed amendments out of Plaintiff's motion, the Court also denies the motion on the independent basis that the proposed amendments are futile.

### A. *Plaintiff's Proposed Retaliation Claim Fails to Adequately Plead Causation*

Plaintiff seeks to "add" a Title VII retaliation claim. Mot. at 18 (emphasis omitted). As the Court previously explained, to state a Title VII retaliation claim, Plaintiff must plausibly allege that "(1) Defendant discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vasquez I*, 2024 WL 1348702, at *9 (quoting *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)). And "[t]o establish causation, Plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Id.* (quoting *Vega*, 801 F.3d at 90). Here, Plaintiff's stated desire to "add" a retaliation claim is perplexing because he previously brought, and the Court dismissed, such a claim. *See id.* So Plaintiff has changed tact midstream, claiming that he "could not have brought the retaliation claim when the Complaint was filed since the retaliation took place in response to the filing of this action." Mot. at 18. Plaintiff details:

> Specifically, after Vasquez filed this action, Defendant retaliated against Vasquez by refusing to reinstate him to his employment. Despite the fact that the Vaccine Mandate was lifted, and that Vasquez won a state court proceeding which annulled the City's refusal to accommodate and subsequent termination, and ordered his immediate reinstatement, the City refused to reinstate Vasquez. However, other unvaccinated and similarly situated firefighters who did not file Title VII actions against the City were reinstated. The City refused to reinstate Plaintiff in retaliation for filing this lawsuit.

5

*Id.* As such, Plaintiff's proposed amendment is quite specific, as he claims that he was retaliated against because of *this* Title VII suit. *See id.* Defendant opposes Plaintiff's proposed amendment on the basis that he has failed to plausibly allege causation. *See* Opp. at 24.

Defendant's argument is persuasive. Plaintiff does not plausibly allege that "but for" the existence of this lawsuit, he would have been reinstated after the state court decision. *Vasquez I*, 2024 WL 1348702, at *9 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). To begin, both sides raise arguments concerning temporal proximity. Plaintiff claims that "the City refused to reinstate Plaintiff immediately" after the state court decision, Mot. at 20–21, while Defendant argues that the seven-and-a-half-month gap between the initiation of this suit and the state court decision is too "attenuated" to adequately allege causation, Opp. at 24. To be sure, "temporal proximity can demonstrate a causal nexus," but the proximity "must be very close." *See Billings v. Murphy*, No. 22-2010, 2024 WL 444727, at *2 (2d Cir. Feb. 6, 2024). And it is the Court's role to "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Here, Plaintiff's effort to shoehorn "immedia[cy]" into the temporal proximity framework is unavailing. Because Plaintiff's claim is based on Defendant's inaction, it is different from a typical retaliation claim reliant on temporal proximity. *E.g.*, *Vega*, 801 F.3d at 92 (increased workload, curriculum changes, wage deduction, and negative performance review all took place no later than three months after teacher engaged in protected activity). That does not necessarily take temporal proximity off the table for Plaintiff, but his allegation here is even less straightforward because the triggering event for the retaliation was the pronouncement of a state court decision, an event Defendant had no control over. *Cf. Singleton v. Mukasey*, No. 06-cv-6588, 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008) (on summary judgment, finding a

genuine issue as to causation because the plaintiff had initiated litigation against his employer before his employer did not promote him), *aff'd sub nom.*, *Singleton v. Holder*, 363 F. App'x 87 (2d Cir. 2010); *Sampson v. Int'l Union of Operating Eng'rs Loc. 14-14B*, No. 22-cv-3588, 2023 WL 8530116, at *2 (E.D.N.Y. July 10, 2023) ("After initiating [a first lawsuit], Plaintiff alleges that Defendant's discriminatory practices against him intensified.").

In this vein, Plaintiff's theory, according to which this case functions as a backdrop so as to create an "immediate" link to any subsequent adverse action, stretches the temporal proximity concept beyond its analytical breaking point. As Plaintiff would have it, any adverse litigation position taken by Defendant in the state court action would be sufficient to animate a federal Title VII retaliation claim. That is not the law. *See Redd v. N.Y. State Div. of Parole*, 923 F. Supp. 2d 371, 389 (E.D.N.Y. 2012) ("[T]he court seriously doubts that every single activity a plaintiff conducts in connection with an ongoing litigation can constitute a separate 'protected activity' that would restart the causation clock; if that were true, just about any adverse employment action taken during a lengthy discrimination case could be considered the result of retaliatory animus."). Plaintiff's assertion that the City's decision to stand on its rights in the state court action "clearly raises a 'permissible inference' of retaliatory intent because Defendant could not retaliate against Vasquez prior to th[at], being that he was already terminated" is an unsupported (and confusing) legal conclusion. Mot. at 20–21.[4] Even if the Court credits Plaintiff's argument that this was Defendant's first opportunity to retaliate against Plaintiff in the precise form of not rehiring him, the random timing of the state court decision nevertheless

---

[4] On this point, Plaintiff refers to *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980), which, as relevant here, stands only for the principle that "courts have recognized that proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment." That uncontroversial statement does not support his novel conception of temporal proximity.

7

renders it "of dubious inferential value." *See Mazur v. N.Y. State Dep't of Corrs.*, No. 20-cv-624, 2023 WL 2744739, at *5 (W.D.N.Y. Jan. 20, 2023). That is especially true here because, as Defendant accurately observes, Plaintiff has put forward no plausible allegation connecting the City's litigation position in the state action to this one. *See id.*; Opp. at 25. Thus, in this case's "particular" context, it is inappropriate for the Court to draw the requested inference. *Espinal*, 558 F.3d at 129.

Perhaps recognizing the weakness of the temporal proximity claim, Plaintiff attempts to bolster his position with "comparator evidence," pointing to three other firefighters who were denied religious exemptions, fired, and later reinstated after prevailing in state court. Mot. at 21. Plaintiff writes that "none of [the three comparators] filed a Title VII proceeding—which confirms that Plaintiff's protected activities were a 'but-for' cause of Defendant's refusal to reinstate Plaintiff." *Id.* Defendant responds that the decision as to whether to appeal state court decisions requiring reinstatement was made on a case-by-case basis. Opp. at 26.

Plaintiff's comparator allegations do not help him. Again, he is right to observe that "[a]n inference of discrimination may arise if a plaintiff can show that he was treated differently than similarly situated employees." *Redd*, 923 F. Supp. 2d at 390. But the comparators must be similarly situated "in all material respects," which "requires a reasonably close resemblance of the facts and circumstances of [P]laintiff's and comparator's cases—a determination that must be made based on both an examination of the acts and an examination of the context and surrounding circumstances in which those acts were evaluated." *Id.* (emphasis omitted). Here, Plaintiff stumbles on both aspects, but especially the second, contextual one.[5] Recall the specific

---

[5] Although not the focus here, Plaintiff's own allegations (to the extent they can be deciphered in the absence of a proposed amended complaint) further undermine the claim that the comparators are similarly situated as he asserts that just one of the three "was on Light Duty just like Vasquez," a role which did not require him to "respond to fires or medical

retaliatory act Plaintiff wants to allege: failure to rehire him after prevailing in the state trial court. *See* Mot. at 21. Accordingly, it is not enough for Plaintiff to simply point to other firefighters who did not bring Title VII suits and were rehired; he must also allege that their state suits were sufficiently similar. That is a tall task which Plaintiff does not come close to meeting, as both his motion and the affidavits from those firefighters barely speak to the nature of their suits. *See* Mot. at 21–22; ECF No. 62-12 (Rivicci Aff.)[6]; ECF No. 62-13 (Starna Aff.); ECF No. 63. In light of the foregoing and the absence of any further factual allegations, the Court is persuaded by Defendant's argument that Plaintiff's causation allegations are implausible, and that permitting amendment would therefore be futile. *See* Opp. at 26–27.

### B. *Plaintiff's Proposed National Origin Discrimination Claim Is Unexhausted*

As with his retaliation claim, Plaintiff seeks to "add" a claim alleging national origin discrimination under Title VII. Mot. at 22 (emphasis omitted). Like the previous issue, Plaintiff previously asserted a national origin discrimination claim, which the Court dismissed in its prior Order for failure to exhaust. *See Vasquez I*, 2024 WL 1348702, at *3–4. As a reminder, to bring this kind of claim in federal court, "a plaintiff must first pursue available administrative remedies and file a timely complaint with the [Equal Opportunity Employment Commission, "EEOC"]." *Id.* at *3 (quoting *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489–90 (2d Cir. 2018)). What Plaintiff really seeks to do now is not add, but rather to bolster, his national origin

---

emergencies." Mot. at 12, 14. Thus, at least two of the comparators appear not to have been similarly situated for the basic reason that they were not "subject to the same workplace standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also Mathis v. Eisner*, No. 03-cv-771, 2008 WL 4298330, at *5 (D. Conn. Sept. 17, 2008) (having "different job responsibilities" undercuts claim that employees were "subject to the same workplace standards").

[6]     This affidavit provides the most detail, explaining that Defendant appealed the state court decision, but contains no other factual averments showing that the case was similar to Plaintiff's. *See* ECF No. 62-12 ¶ 3.

9

discrimination claim. Although he somewhat oddly refers to this as an "alternative" argument to his Title VII retaliation claim, the thrust of his contention is that "three comparators[,] . . . all non-Hispanic white males" were, unlike Plaintiff, "reinstated to their employment positions despite remaining unvaccinated" and despite having had, like Plaintiff, "successful state court proceedings." Mot. at 22–23.

In response, Defendant argues that Plaintiff's most recent EEOC charge, for which he has now obtained a right to sue letter, did not include a claim of national origin discrimination. Opp. at 17. This argument is persuasive. The charge—which Plaintiff submitted earlier this year with the assistance of counsel—only checked the box for retaliation, not national origin discrimination. ECF No. 66-16 at 1 (2024 EEOC Charge).[7] Searching further, the substance of the charge turns on his claim of retaliation based on the outcome of the state court proceeding. *See id.* at 4–5. It is totally silent as to his national origin and national origin discrimination. *See id.* As the Court previously made clear, where the administrative complaint does not mention, "even in passing," the allegedly discriminatory conduct, the claim is clearly unexhausted. *Vasquez I*, 2024 WL 1348702, at *4. Amending the Complaint to include an unexhausted claim is futile. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 414 (S.D.N.Y. 2017).

### C. Plaintiff's Proposed Free Exercise Claim Fails Because the Alleged Conduct Satisfies Rational Basis Review

Plaintiff seeks to amend the complaint to "add" a claim that Defendant's denial of his religious accommodation request violated the First Amendment's Free Exercise Clause. Mot. at

---

[7] This document is conspicuously absent from Plaintiff's submission. *See* Mot. at 15 ("Vasquez filed a new charge of discrimination with the [EEOC] alleging retaliation and national origin discrimination with regard to the City's refusal to reinstate him to his position."). The Court may nevertheless consider the document in this posture because Plaintiff obviously "had knowledge [of it] and relied [on it] in bringing suit." *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 457 (E.D.N.Y. 2017).

23 (emphasis omitted). He writes that his "Complaint included a claim under the First Amendment, which this . . . Court dismissed on the grounds that the Second Circuit has already ruled that a *vaccine mandate* like the one at issue here did not violate the First Amendment. This amendment would add the necessary allegations regarding Defendant's refusal to accommodate Plaintiff and the policies Defendant utilized." Mot. at 23 (emphasis in original). As an initial matter, to the extent Plaintiff is suggesting that the Court did not consider an as-applied challenge in resolving the initial motion to dismiss, he is wrong. The Court rejected that precise claim when Plaintiff previously raised it on reconsideration. *See Vasquez II*, 2024 WL 1886656, at *2–3. Now, Plaintiff asks the Court to permit him to amend the Complaint to assert the additional allegations the Court could not entertain in the reconsideration posture. *See id.* at *3. Construing the statements in his motion as proposed amendments, the Court finds that Plaintiff has failed to plausibly allege a Free Exercise violation based on Defendant's procedure for granting religious accommodation requests and the application of those procedures to him.

The viability of Plaintiff's proposed Constitutional claim turns on the Second Circuit's decision in *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021). *See* Mot. at 26–27. As this Court previously explained, in that case

> the Second Circuit held that the plaintiffs, who were subject to a different [vaccine] mandate, were "entitled to preliminary relief on the narrow ground that the procedures employed to assess their religious accommodation claims were likely constitutionally infirm as applied to them." *See Kane*, 19 F.4th at 158–59. Specifically, the Second Circuit concluded that those plaintiffs demonstrated a likelihood of success on the merits because the City's accommodation standards were neither neutral, running afoul of the First Amendment by questioning the validity of plaintiffs' religious beliefs, nor generally applicable, because of the "substantial discretion" afforded to those responsible for religious accommodation requests, as well as the inconsistent application of that discretion. *See id.* at 168–69. The Second Circuit therefore examined the accommodation procedures under strict scrutiny and concluded that they were not narrowly tailored to the State's interest in preventing the spread of COVID-19. *See id.* at 169.

11

*See Vasquez II*, 2024 WL 1886656, at *3. On this point, Plaintiff asserts, in an entirely conclusory manner, that Defendant's exemption procedure were neither neutral nor generally applicable. *See* Mot. at 26. Although Plaintiff cites abundant out-of-Circuit case law of questionable persuasive authority, the Court can construe only thin factual allegations out of his motion (a problem made worse by the absence of a proposed amended complaint). But just as another court recently explained, Plaintiff's motion "does not contain allegations analogous to the facts in *Kane* that made the [Department of Education]'s procedures subject to strict scrutiny." *See Chinchilla v. NYPD*, No. 23-cv-8986, 2024 WL 3400526, at *4 (S.D.N.Y. July 12, 2024) (in challenge to exemption procedure, granting motion to dismiss Free Exercise claim). In *Chinchilla*, Judge Ho persuasively analyzed the plaintiff's Free Exercise claim on very similar facts, and his decision in that case is instructive here. *See* Opp. at 32–33.

Here, Plaintiff's "allegations do not establish that [Defendant]'s exemption procedures [were] not neutral or generally applicable," distinguishing this case from "the 'exceedingly narrow' situation presented by *Kane*." *See Chinchilla*, 2024 WL 3400526, at *4 (quoting *Kane*, 19 F.4th at 167). To evaluate neutrality, the Court considers if the policy lacks facial neutrality or "targets religious conduct for distinctive treatment." *Kane*, 19 F.4th at 164. Plaintiff plausibly alleges neither. Despite his repeated legal assertions to the contrary, Plaintiff fails to plausibly allege that his religious beliefs "were . . . evaluated for their objective validity by comparison to those of other members of h[is] faith," as in *Kane*, meaning "there is no analogous allegation of non-neutrality." *See Chinchilla*, 2024 WL 3400526, at *4. Plaintiff takes issue with "the FDNY's requirement that [he] submit a letter from his 'religious leader' stating that he is in good standing with the faith and explaining how rejection of the COVID-19 vaccination is required by the tenets of [his] religion." Mot. at 28. Similarly, he alleges that in the state court litigation, Defendant claimed that Plaintiff's objection to the COVID-19 vaccine on the basis that

12

it contained "cells from aborted fetuses" was "inapplicable to COVID-19 vaccines because they do not contain [such] cells." *Id.* at 24 (quoting ECF No. 62-9 ¶ 30 (Eichenholtz Decl. from State Court)). Relatedly, he takes issue with how Defendant told the state court that he "did not set forth how his religious beliefs conflict with the vaccine requirement." *Id.* (quoting ECF No. 62-9 ¶ 30). But these factual assertions merely "describe a process intended to determine the *sincerity* of [his] religious beliefs." *Chinchilla*, 2024 WL 3400526, at *4. Plaintiff inaccurately conflates such conduct with Defendant "substitut[ing] [its] judgment about whether [his] religious belief is correct," making an "assessment of his faith," and even "presuppos[ing] the illegitimacy of" his beliefs. Mot. at 25–27. However, in contrast to a case involving an inquiry into the "objective validity" of a plaintiff's religious belief, Plaintiff's allegations fall neatly into a line of persuasive authority from this Circuit rejecting Free Exercise claims based on Defendant's permissible assessments of sincerity. *See Chinchilla*, 2024 WL 3400526, at *4 (collecting cases); *see also Bonilla v. City of New York*, No. 22-cv-7113, 2023 WL 8372859, at *5 (S.D.N.Y. Dec. 4, 2023) ("[T]he panel asked appellants to describe their use of other medication and vaccines to assess whether their fetal stem cell-based objections to vaccination were sincerely held, not whether they were objectively legitimate."). Accordingly, Plaintiff fails to plausibly allege lack of neutrality.

As to general applicability, Plaintiff's sparse allegations fare no better. The challenged exemption procedure "is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021). To succeed on the first path, "there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over

13

religiously motivated conduct." *Kane*, 19 F.4th at 165. Plaintiff fails to plausibly allege that the exemption procedure was not generally applicable. He merely claims that "[t]he City had an unequal policy: firefighters with secular accommodations were granted regardless of undue hardship, while those seeking religious accommodations, like Vasquez, were denied due to alleged undue hardship." Mot. at 28. But Plaintiff's own allegations immediately render that bold claim implausible. Specifically, he incorporates into his motion an affirmation from his state court case in which the FDNY's Assistant Commissioner of the Equal Employment Opportunity Office stated that, as of March 2023, the FDNY provided "36 reasonable accommodations for Fire Operations members from the vaccine mandate," 29 of which were for "medical reasons" and seven of which were for "religious reasons." *Id.* at 30 (citing ECF No. 62-8 ¶ 41).[8] That factoid is not enough to plausibly allege that the exemption procedure lacked general applicability. In addition, unlike in *Kane*, Plaintiff makes no non-conclusory allegation that those responsible for "reviewing [his] request[] for religious accommodations had substantial discretion over whether to grant" it, *Kane*, 19 F.4th at 169, nor that "exemptions were granted inconsistently,"[9] *Chinchilla*, 2024 WL 3400526, at *5. He has failed to plausibly plead a lack of general applicability.

---

[8]  Plaintiff also cites a transcript from a different state court proceeding involving Plaintiff's counsel, in which a witness explained that the FDNY "granted both religious and medical exemptions at different times." Mot. at 30 (citing ECF No. 62-1 at 4–5).

[9]  On this point, Plaintiff also claims, without any detail, that "the City allowed volunteer firefighters to work unvaccinated." Mot. at 29. That does not alter the Court's analysis. Such a claim is similar to the one advanced by the plaintiffs in *Kane*, who argued that the at-issue vaccine mandate was not generally applicable because it applied only to Department of Education employees but not contractors. 19 F.4th at 166. The Second Circuit rejected that argument, writing that "neither the Supreme Court, our court, nor any other court of which we are aware has ever hinted that a law must apply to all people, everywhere, at all times, to be 'generally applicable.'" *Id.* Rather, "a law can be generally applicable when . . . it applies to an entire class of people." *Id.* (emphasis omitted). Like in *Kane*, Plaintiff has not explained why

14

Because Plaintiff has failed to plausibly allege that the exemption procedure was not neutral or generally applicable, the Court evaluates the allegations under the "extremely deferential standard" of rational basis review. *Id.* at *6. Accepting all allegations in his motion as true, Plaintiff cannot establish that "Defendant[] lacked any conceivable rational basis" in denying his request. *See id.* As applied to him, the exemption procedure "was a reasonable exercise of the State's power to act to protect the public health." *Kane*, 19 F.4th at 166; *see also* ECF No. 17 at 24 (Defendant's Motion to Dismiss) (explaining the "public health" basis for the denial). Therefore, Plaintiff fails to plausibly allege a Free Exercise violation, and any amendment to include that claim would be futile. *See Chinchilla*, 2024 WL 3400526, at *6 (dismissing as-applied challenge); *Bonilla*, 2023 WL 8372859, at *5 (same).

*      *      *

Given the Court's experience with this case, the Court believes that a closing observation is warranted. Since Plaintiff obtained counsel, this case's center of gravity has palpably shifted to debates about the meaning and consequence of the state court proceeding. To take one of several examples, Plaintiff complains that Defendant has "adamantly refused to reinstate Plaintiff" following the state court's decision and speaks of the success of Plaintiff's counsel in representing firefighters in state court litigations challenging their terminations. *See* ECF No. 41-1 at 16; *see also, e.g.*, Mot. at 18. Indeed, Plaintiff's instant motion appears more concerned with the merits of Plaintiff's arguments in the state action than with the viability of his federal claims. The Court understands that Plaintiff is frustrated by the state court litigation, but "[f]ederal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*,

---

those subject to the mandate applicable to him were not "such a class," so this additional fact about the volunteer firefighters, taken as true, makes no difference. *Id.*

15

511 U.S. 375, 377 (1994), and this case is not a vehicle for Plaintiff to try to collaterally enforce his state court judgment.  In view of today's decision, the Court reminds Plaintiff that this case is narrow:  "only his Title VII claim for religious discrimination based on Defendant's alleged failure to accommodate survives."  *Vasquez I*, 2024 WL 1348702, at *15.  Accordingly, any further discovery and dispositive motion practice shall remain limited to that claim.

    SO ORDERED.

                                                   */s/ Hector Gonzalez*
                                                   HECTOR GONZALEZ
                                                   United States District Judge

Dated: Brooklyn, New York
        August 9, 2024