UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

JAVIER VASQUEZ,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

----------------------------------------------------------------------- x

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AMENDED LOCAL RULE 56.1 STATEMENT OF MATERIAL UNDISPUTED FACTS**

22-CV-5068 (HG) (VMS)

Pursuant to Local Civil Rule 56.1(b) of the United States District Court for the Eastern District of New York, Plaintiff Javier Vasquez responds to Defendant's Rule 56.1 Statement of Material Undisputed Facts as follows:

**A. COVID-19 Testing and Vaccine Mandate**

1.    On August 31, 2021, then New York City Mayor Bill de Blasio issued Executive Order 78, which mandated that City employees and City contractors submit proof of COVID-19 vaccination by September 13, 2021. See Ex. A.

**RESPONSE TO ¶1**: Partially Admit with Clarification. To clarify, Executive Order 78, entitled "MANDATORY VACCINATION OR TEST REQUIREMENT FOR CITY EMPLOYEES AND COVERED EMPLOYEES OF CITY CONTRACTORS", mandated City employees to submit proof of COVID-19 vaccination *or* submit weekly testing. Def. Ex. A, Executive Order 78 at p. 1.

2.    Employees who were not vaccinated were required to submit to weekly testing commencing September 13, 2021. See Ex. A.

**RESPONSE TO ¶2**: Admit.

3.    On October 20, 2021, then Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), Dr. David Chokshi, issued an order requiring all City

employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. on October 29, 2021. See Ex. B.

**RESPONSE TO ¶3**: Admit.

4.    The DOHMH Order required that by October 29, 2021, City employees must provide proof to the agency or office where they work that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a single- dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine. See Ex. B.

**RESPONSE TO ¶4**: Admit.

5.    The DOHMH Order required that any City employee not providing the above-described proof must be excluded from their assigned work location beginning on November 1, 2021. See Ex. B. at ¶¶ 2-3.

**RESPONSE TO ¶5**: Partially Admit with Clarification. To clarify, City employees who did not provide proof of vaccination but were granted reasonable accommodations did not need to be excluded from their assigned work location. *See* Def. Ex. B, City Vaccine Mandate at ¶8; *see* Pl. Ex. 5, ECF Doc. No. 79-11, Nguyen Dep. Tr. 176:5-24.

6.    Moreover, the DOHMH Order specifically provides that "[n]othing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law." See Ex. B. at at ¶ 8.

**RESPONSE TO ¶6**: Admit.

7.    Following the issuance of the DOHMH Order, the City issued a set of Frequently Asked Questions ("FAQs) to address employee concerns regarding the vaccination mandate. See Ex. C.

**RESPONSE TO ¶7**: Admit.

8.       The FAQs provided that, beginning November 1, 2021, City staff who were not in compliance with the vaccine mandate and had not applied for a reasonable accommodation to exempt them from compliance would be placed on Leave Without Pay (LWOP). See Ex. C p. 1.

**RESPONSE TO ¶8**: Admit.

9.       The FAQs also stated that an employee may be immediately removed from LWOP and be restored to payroll by arriving at their assigned work location with proof of one dose of a vaccine. Id. However, an employee that continued to refuse to comply with the vaccine mandate and had chosen not to apply for an accommodation may be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement. See Ex. C p. 13.

**RESPONSE TO ¶9**: Plaintiff admits that the FAQs state that an employee may be immediately removed from LWOP and be restored to payroll by arriving at their assigned work location with proof of one dose of a vaccine. Plaintiff denies that the FAQs state that an employee who does not comply *may* be terminated; the FAQs actually state: "Employees who refuse to comply *will* be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement." Def. Ex. C p. 13 ¶51 (emphasis added).

10.       In response to the DOHMH Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests. The Department of Citywide Administrative Services ("DCAS") issued guidance in connection with the City Order, which included a document entitled "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate." See Ex. D.

**RESPONSE TO ¶10**: Plaintiff admits that the Department of Citywide Administrative Services ("DCAS") issued a document titled *"Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate"*, which is attached as Defendant's Exhibit D. Plaintiff lacks knowledge

or information sufficient to admit or deny the City's assertion as to the motivation or purpose behind issuing the document and therefore denies that portion of the statement.

11.     This document and the FAQ together laid out the guidelines for seeking an exemption from the DOHMH Order through a reasonable accommodation request. Any City employee who was denied a reasonable accommodation by their agency had the right to appeal that denial to the City of New York Reasonable Accommodation Appeals Panel ("Citywide Panel"). See Ex. D.

**RESPONSE TO ¶11**: Admit.

12.     The Citywide Panel was created specifically in response to the DOHMH Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency. See Ex. D. Eichenholtz 30(b)(6) Dep. Ex. Q. 17:3-22.

**RESPONSE TO ¶12**: Admit.

13.     The Citywide Panel was comprised of representatives from the Office of the Corporation Counsel ("Law Department"), the New York City Department of Citywide Administrative Services ("DCAS"), the New York City Department of Health and Mental Hygiene ("DOHMH") and the City Commission on Human Rights ("CCHR"). Ex. O; Eichenholtz 30(b)(6) Dep. Ex. Q. 20:21-21:8.

**RESPONSE TO ¶13**: Admit.

**B.      Plaintiff's Reasonable Accommodation Request**

14.     Plaintiff submitted a religious accommodation request to be exempt from the COVID-19 vaccine and COVID-19 testing on September 30, 2021. See Ex. E.

**RESPONSE TO ¶14**: Admit.

15.     During this time, Plaintiff was working "light duty.  See Nguyen Dep. Ex. P. 173:2.

**RESPONSE TO ¶15**: Admit.

16.    Light duty is a temporary duty status during a time where an individual cannot, at that moment, fulfill the essential duties of the job.  See Nguyen Dep. Ex. P. 129:9-17.

**RESPONSE TO ¶16**: Deny. An individual on Light Duty is able to perform the essential functions of a Light Duty assignment and is exempt from performing the same essential functions as full-duty firefighters, such as responding to emergency medical calls and engaging in fire suppression activities. Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Request for Admissions, No. 20-25, deemed admitted; *see* Pl. Ex. 1, ECF. Doc. No. 79-7, Pl. Dep. Tr. 33:7-25 (explaining job duties).

17.    Plaintiff was never found to be permanently unfit.  See Nguyen Dep. Ex. P. 173:2-11.

**RESPONSE TO ¶17**: Deny. The FDNY's Deputy Chief Medical Officer and Medical Board Committee found Plaintiff to be permanently unfit for full-duty firefighting duties on July 3, 2020. A true and accurate copy of the letter[1] from the FDNY Deputy Chief Medical Officer is attached as Pl. **Exhibit 23**.[2]

18.    Plaintiff was working at the information hub of the FDNY ("FDOC") which is staffed with dozens of member sitting in a room working with each other in close quarters.   See Nguyen Dep. Ex. P. 131:9-132:17; 160:21-161: 5.

**RESPONSE TO ¶18**: Admit that Plaintiff was working at FDOC, but denies that he worked in "close quarters" with dozens of members. Vasquez Decl.¶10-13. (FDOC was large space where Plaintiff was socially distanced (at least six feet apart) from the other members he worked with, which was five firefighters – one for each borough – including him).

19.    The FDNY denied Plaintiff's request on October 6, 2021 and gave Plaintiff information about how to appeal the decision. See Ex. F.

---

[1] This letter was produced by the Defendant in discovery.
[2] Plaintiff continues the sequential exhibit numbering from the Statement of Material Facts and begins numbering here with Exhibit 23.

**RESPONSE TO ¶19**: Admit.

20.     Plaintiff appealed the decision on October 20, 2021. See Ex. G.

**RESPONSE TO ¶20**: Admit.

21.     The Plaintiff noted that citing to the fact that his father was "[k]illed from taking the COVID vaccine."  See Ex. G. p.4.

**RESPONSE TO ¶21**: Admit with Clarification. Plaintiff believes that the COVID-19 vaccine is "evil" and is a "weapon" that Satan used against his father, causing his death. Pl. Ex. 24, Pl. Dep. Tr. 50:4-24. (Additional excerpts from Plaintiff's deposition transcript is attached as Pl. Ex. 24)

22.     Exemptions to the Covid-19 vaccine were decided on a case by case basis.  See Nguyen Dep. Ex. P. 162:13-163:7; 223:3-6.

**RESPONSE TO ¶22**: Admit.

23.     On October 26, 2021, Plaintiff submitted a second accommodation request, seeking an exemption from the COVID vaccine mandate on both medical and religious grounds. See Ex. H.

**RESPONSE TO ¶23**: Partially admit. Plaintiff did submit a second accommodation request, on or about this date, but Plaintiff is not aware of the precise date.

24.     On October 24, 2021, the FDNY EEO Office sent Plaintiff an email requesting more documentation from Plaintiff to support his religious accommodation request and his medical accommodation request. See Ex. I.

**RESPONSE TO ¶24**: Deny. The October 24, 2021 email from the FDNY EEO Office was not a request for "more documentation". It was sent in response to Plaintiff's inquiry seeking information about how to apply for a religious accommodation. Def. Ex. I, ECF Doc. No. 78-12, p. 1 ("We are in receipt of your request for information or application…"). The email provided instructions on what to include in a religious accommodation request and attached the required application form.

*Id.* (see "Attachments" at top of e-mail). Plaintiff subsequently completed and submitted the application on or about October 26, 2021. See ¶23 above (application submitted on October 26, after the October 24 e-mail from the FDNY EEO Office).

25.    On December 13, 2021, the FDNY denied his accommodation request because the basis for the accommodation was insufficient to grant the accommodation in light of the undue hardship it would place on the FDNY. See Ex. J.

**RESPONSE TO ¶25**: Plaintiff admits that the FDNY sent a letter dated December 13, 2021, denying his religious accommodation request. Plaintiff denies the characterization of the letter, which actually stated that the "asserted basis for the accommodation is insufficient to grant the requested accommodation, particularly in light of the *potential* undue hardship to the Department." Def. Ex. J, ECF Doc. No. 78-13. Plaintiff denies any implication that the FDNY made a finding of actual undue hardship. *See* Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Requests for Admission, No. 5, 8, deemed admitted.

26.    Allowing a firefighter to stay on light duty, unvaccinated, working in FDOC for an indefinite amount of time was determined to be an undue hardship.  See Nguyen Dep. Ex. P. 136:9-14.

**RESPONSE TO ¶26**: Deny. Allowing a firefighter to stay on light duty, unvaccinated, working in FDOC while submitting weekly testing did not create an undue hardship. Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Requests for Admission, Nos. 14, 28, 31, deemed admitted; Pl. Ex 8, ECF Doc. No. 79-14, FAQs at ¶32. Plaintiff himself was accommodated with weekly testing while working at FDOC from October 2021 through July 2022. Pl. Ex. 5, ECF Doc. No. 79-11, Nguyen Dep. Tr. 132:11-133:9; 158:2-21; 228:19-229:2; Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Requests for Admission, No. 29-30, deemed admitted. Even full duty firefighters, who engaged in close contact with the public and other FDNY employees, including those who lived, slept, and ate in shared spaces within the firehouse,

were granted religious accommodations and allowed to keep working unvaccinated. SOMF ¶88, 90, 92, 93 (citing Pl. Ex. 5, ECF Doc. No. 79-11, Nguyen Dep. ¶159:12-14, 181:5-17; McCormack Aff., ECF Doc. No. 79-3; Fitzgerald Decl., ECF Doc. No. 79-5; Whalen Decl., ECF Doc. No. 79-4; Pl. Ex. 9, ECF Doc. No. 79-15, Def. Resps. to Pl.'s First Set of Interrogs, No. 5; Pl. Ex. 14, ECF Doc. No. 79-20, FDNY tracking accommodation spreadsheet; Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Requests for Admission, No. 1, deemed admitted; Pl. Ex. 15, ECF Doc. No. 79-21, Def. Supplemental Resps. To Pl.'s First Set of Interrogatories, No. 6). And the FDNY granted religious and medical accommodations to other FDNY employees, including titles such as EMTs, Clerical Associates, Accountants, Project Managers, etc. SOMF ¶ 94-96 (citing Pl. Ex. 14, ECF Doc. No. 79-20, FDNY tracking accommodation spreadsheet; Pl. Ex. 15, ECF Doc. No. 79-21, Def. Supplemental Resps. To Pl.'s First Set of Interrogatories, No. 7).

27.    By October 27, 2021, the FDNY EEO Office had received over 1,176 requests for a reasonable accommodation related to the DOHMH Order. Of those 1,170 applications, approximately 937 requested accommodation for religious reasons and 229 requested accommodation for medical reasons. The remainder asserted neither a religious nor medical basis. See Ex. N ¶ 13. See Nguyen Dep. Ex. P. 227:8-19.

**RESPONSE TO ¶27**: Admit.

28.    After October 27, 2021, the FDNY EEO Office requests for a reasonable accommodation related to the DOHMH Order. Of those more than 850 applications, approximately 729 requested accommodation for religious reasons, and 195 requested accommodation for medical reasons. See Ex. N ¶ 14.

**RESPONSE TO ¶28**: Admit.

29.    The FDNY EEO Office also considered the specific job function of each applicant to determine whether the accommodation sought could negatively impact Department

operations or interfere with services provided to the public. More than 1,900 of the applicants seeking an exemption from the DOHMH Order held the ranks Firefighter, Fire Officers, Emergency Medical Services ("EMS") Technicians ("EMTs"), Paramedics, or EMS Officers. Members within these titles are first responders who directly engage in the Department's mission of protecting life and property, which entails substantial interaction with sick, injured, and otherwise vulnerable populations within New York City.  Ex. N ¶ 26. See also Nguyen Dep. Ex. P. 55:7-14.

**RESPONSE TO ¶29**: Deny. The FDNY EEO Office clearly did not consider Plaintiff's specific job function because they claimed that "he is a certified first responder who would respond not only to fires but medical emergencies with vulnerable populations of people" and "interaction with the public".  Def. Ex. N, ECF Doc. No. 78-3 at ¶43. But this was not Plaintiff's job function. Additional excerpts from Nguyen's Deposition are attached hereto as Exhibit 25. See Ex. 25, Nguyen Dep. Tr. 129:2-17; 187:14-188:17. Plaintiff's job function in his Light Duty assignment required administrative work and handling phone calls, responding to firefighters out in the field, as well as taking phone calls from FDNY employees who were calling out on medical leave; Plaintiff did not engage in fire suppression activities or respond to emergency medical calls. (Pl. Ex. 1, Pl. Dep. 33:2-25; Ex. 3, Pl.'s Requests for Admission, No. 17-18, deemed admitted; see Ex. 5, Nguyen Dep. 186:6-18). Plaintiff did not interact with the public in his Light Duty assignment. (Ex. 1, Pl. Dep. 36:1-3; Ex. 5, Nguyen Dep. 174:11-13).

30.    The only available exemption for firefighters was weekly testing and masking. See Nguyen Dep. Ex. P. 67:11-16.  169:4-7.  See Ex. C ¶ 24.

**RESPONSE TO ¶30**: Deny. Weekly testing and masking was the only accommodation *considered* by the Defendant. Nguyen Dep. Tr. 171:5-12; 64:8-65:9. *It was not the only accommodation available*. FDNY's EEO Policy listed "job reassignments and lateral transfers"

as potential accommodations. Pl. SOMF ¶82 (citing Ex. 12, FDNY EEO Policy at p. 29). The Defendant did not consider reassignment. Pl. SOMF ¶83 (citing Ex. 5, Nguyen Dep. 216:17-22). Additionally, the City promulgated guidance on mitigation strategies that would reduce the risk of COVID-19 transmission, entitled "Managing the Office in the Age of COVID-19", Pl. SOMF ¶64-65 (citing Ex. 10, Mitigating COVID-19 Policy, see p. 5-18), which suggested ventilation interventions (p. 5), the use of portable HEPA filtration systems (p. 6), cleaning and disinfecting protocols (p. 7), physical distancing (p. 14), alternative work schedules (p. 12), physical barriers (e.g., plexiglass or similar materials) (p. 10), face coverings (p. 13), health screenings (p. 14), isolation and quarantine (p. 16, 18). *See also* Pl. Ex. 3, ECF Doc. No. 79-9, Pl.'s Requests for Admission, No. 43, deemed admitted. The Defendant did not consider the feasibility of any of these accommodations. Pl. SOMF ¶66 (citing Ex. 5, Nguyen Dep. 206:7-19), Pl. SOMF ¶67 (citing Ex. 5, Nguyen Dep. 206:20-207:7), Pl. SOMF ¶69 (citing Ex. 5, Nguyen Dep. 207:19-208:6), Pl. SOMF ¶71 (citing Ex. 5, Nguyen Dep. 208:20-209:8), Pl. SOMF ¶72 (citing Ex. 5, Nguyen Dep. 209:9-22), Pl. SOMF ¶73 (citing Ex. 5, Nguyen Dep.211:20-212:13), Pl. SOMF ¶77 (citing Ex. 5, Nguyen Dep. 210:10-18), Pl. SOMF ¶78 (citing Ex. 5, Nguyen Dep. 212:12-20), Pl. SOMF ¶79 (citing Ex. 5, Nguyen Dep. 212:21-213:6), Pl. SOMF ¶80 (citing Ex. 5, Nguyen Dep. 213:20-214:4).

The Defendant also did not consider other feasible accommodations, such as allowing Plaintiff to work the night shift when there were significantly less people working (Pl. SOMF ¶70 (citing Ex. 5, Nguyen Dep. 208:7-18)), allowing Plaintiff to work in his Light Duty assignment remotely (Pl. SOMF ¶53-54 (citing Ex. 5, Nguyen Dep. 189:11-16; 190:8-10; 189:18-190:6)), allowing Plaintiff to use his accrued leave (Pl. SOMF ¶74-75 (citing Ex. 5, Nguyen Dep. 211:14-23; Ex 11, CBA, p. 13-15)), placing Plaintiff on paid leave (Pl. SOMF ¶76 (citing Ex. 5, Nguyen Dep. 212: 7-10)), placing Plaintiff on unpaid leave (Pl. SOMF ¶50 (citing Ex. 5, Nguyen Dep. 230:5-17)), switching Plaintiff back to his prior Light Duty assignment at Randall's Island doing gate security (Pl. SOMF ¶55 (citing Ex. 5,

Nguyen Dep. 190:19-191:11)); antibody testing (Pl. SOMF ¶57 (citing Ex. 5, Nguyen Dep. 194:8-23; 196:22-197:3)), or Plaintiff's natural immunity (Pl. SOMF ¶107-113).

31.     And on January 5, 2022, the FDNY sent a follow up letter providing more reasons why the application was denied. See Ex. K.

**RESPONSE TO ¶31**: Plaintiff admits that on January 5, 2022, the FDNY sent a follow-up letter regarding the denial of his religious accommodation request. Plaintiff denies the characterization that this letter provided additional reasons for the denial beyond what was previously stated. The follow-up letter added only one sentence: "Given the state of the public health emergency, the nature of the Department's life-saving mission, and the impact to the safety and health of Department members and the public that Department members regularly interact with, the requested accommodation could not be granted." Def. Ex. K, ECF Doc. No. 78-14.

32.     Plaintiff appealed the EEO Office decision and, on July 11, 2022, the Citywide Panel advised him that the appeal was denied because the request did not meet the required criteria. See Ex. L.

**RESPONSE TO ¶32**: Admit.

33.     On July 26, 2022, the FDNY wrote Plaintiff that he was required to be vaccinated against COVID-19. See Ex. M.

**RESPONSE TO ¶33**: Admit.

34.     FDNY informed Plaintiff that since he failed to provide a copy of his vaccination record, that his employment with the FDNY would be terminated effective "0900 hours on Wednesday, July 27, 2022." See Ex. M.

**RESPONSE TO ¶34**: Admit.

35.     Plaintiff, Javier Vasquez, was terminated on July 27, 2022. See Ex. M.

**RESPONSE TO ¶35**: Admit.

11

**PLAINTIFF'S ADDITIONAL MATERIAL FACTS
PURSUANT TO LOCAL CIVIL RULE 56.1(b)**

Plaintiff incorporates by reference the facts set forth in his Statement of Material Facts filed in support of his motion for summary judgment (ECF No. 79-1), and sets forth the following additional material facts in opposition to Defendant's motion:

1.      The COVID-19 PCR test itself did not conflict with Plaintiff's religious beliefs, and Plaintiff was willing to submit to weekly testing in lieu of vaccination. Ex 24, Pl. Dep. Tr. 81:13-82:3; 83:1-18. Plaintiff did indeed submit to weekly testing up until his termination. Insert

2.      On August 24, 2021, while Plaintiff was subject to weekly COVID-19 testing pursuant to Executive Order No. 78 due to his unvaccinated status, the FDNY revised his Light Duty assignment and assigned him to the Fire Department Operations Center ("FDOC") knowingly placing an unvaccinated Plaintiff in FDOC. Pl. Ex. 6, ECF Doc. No. 79-12, Revised Light Duty Assignment; Vasquez Decl. ¶¶8-9.

3.      FDOC was a large space, isolated from the rest of the building, where Plaintiff worked at least six feet apart from any other FDNY employees. On his side of FDOC was five firefighters (one for each borough), including himself. Vasquez Decl. ¶¶10-13.

4.      While on his Light Duty assignment at FDOC, Plaintiff wore a mask, worked on a staggered shift, limiting the people present in the building at the same time, worked overnight shifts (significantly less people were present during the night shift), and had no contact with the public. Vasquez Decl. ¶¶ 14, 17, 21, 24, 25.

5.      FDOC had two HEPA filtration systems running. Vasquez Decl. ¶15.

6.      There were completely solitary Light Duty assignments – including the one in Randall's Island (Pl. Ex. 1, ECF Doc. No. 79-7, Pl. Dep. 31:5-32:19) that Plaintiff worked before FDOC, and another one in Middletown, New York. Vasquez Decl. ¶27.

12

7.      Plaintiff requested the Light Duty position in Middletown in the summer of 2022 before his termination but the FDNY refused to reassign him. Vasquez Decl. ¶¶27-28.


Dated:    Staten Island, New York
          May 23, 2025

          _____
          Christina Martinez, Esq.