UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAVIER VASQUEZ,

                Plaintiff,

       v.

CITY OF NEW YORK,[1]

                Defendant.

**MEMORANDUM & ORDER**
22-CV-05068 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      This is a Title VII case concerning Plaintiff's firing from the FDNY after he refused to receive the COVID-19 vaccine. The parties have filed pre-motion letters and accompanying Rule 56.1 statements in anticipation of filing motions for summary judgment, *see* ECF Nos. 78, 79, as well as oppositions thereto, *see* ECF Nos. 80, 81. Plaintiff seeks summary judgment on (1) his *prima facie* claim of religious discrimination and (2) Defendant's undue hardship affirmative defense. *See* ECF No. 78. Defendant cross moves on all the same elements. *See* ECF No. 79. Pursuant to Section IV.A.13 of the Court's Individual Practices, the Court exercises its discretion to convert the pre-motion letters to summary judgment motions and GRANTS IN PART and DENIES IN PART the cross-motions.[2]

---

[1]    Consistent with the Court's prior Order, the Clerk of Court is respectfully directed to amend the case caption as it appears above and to terminate the "Office of the Mayor" as a distinct Defendant on the docket. *See Vasquez v. City of New York – Off. of the Mayor*, No. 22-cv-05068, 2024 WL 1348702, at *1 n.1 (E.D.N.Y. Mar. 30, 2024) ("*Vasquez I*"), *reconsideration denied*, 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024) ("*Vasquez II*").

[2]    Having considered the Second Circuit's directives in *International Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 55–56 (2d Cir. 2022), conversion is appropriate in this case because the Court is primarily denying rather than granting the cross-motions, the core of the cross-motions clearly lacks merit, and forgoing full briefing will conserve substantial resources of both

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case. In short, as explained in the Court's prior Order granting in part and denying in part Defendant's motion to dismiss, Plaintiff was terminated from the FDNY based on his refusal to receive the COVID-19 vaccine. *See Vasquez I*, 2024 WL 1348702, at *1. The sole claim that remains in this case is a claim for religious discrimination under Title VII. *See id.* at *15.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[3] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to

---

the parties and the Court. That is particularly true, where Plaintiff's 56.1 statement points to many tangential issues, *see, e.g.*, ECF No. 81-1¶ 126, in violation of Individual Practice § IV.B.7.b.

[3]     Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted. The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting deposition transcripts, where the Court refers to the page number on the native document.

the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). "In reviewing the evidence and the inferences that may reasonably be drawn, [the Court] may not make credibility determinations or weigh the evidence. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017). "When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits, and draws all reasonable inferences against the party whose motion is under consideration." *Balderramo v. Go N.Y. Tours*, 668 F. Supp. 3d 207, 220 (S.D.N.Y. 2023).

## DISCUSSION

As mentioned above, the parties intend to cross-move on all elements of Plaintiff's *prima facie* case as well as Defendant's undue burden defense. For the reasons explained below, the Court grants Plaintiff's motion for summary judgment on the second and third prongs of his *prima facie* case and otherwise denies the cross-motions.

### I.     *Prima Facie* Case

To establish his *prima facie* case, Plaintiff must show that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer of this belief; and (3) [he] was disciplined for failure to comply with the conflicting employment requirement." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185–86 (2d Cir. 2025). The Court addresses each element in turn.

#### A.     Bona Fide *Religious Belief*

Defendant contends that Plaintiff's objection to the vaccine was not religious but rather based on the belief that the vaccine was responsible for his father's death. *See* ECF No. 78 at 1–2. Plaintiff says that his accommodation request was explicitly grounded in religion. *See* ECF

No. 79 at 2.  To be sure, in his reasonable accommodation appeal, Plaintiff told the FDNY that

his father was "[k]illed from taking the Covid vaccine."  ECF No. 78-10 at 4.  But the thrust of

his objection was couched in religious terms, arguing that "[a]ll of the currently available

COVID-19 vaccines used cell lines originating from aborted children in their manufacturing or

testing."  *See id.* at 2.  He explained that, in his view, receiving the vaccine would require him to

"cooperate with or be complicit in abortion" and "would constitute a sin against God and a

violation of His Commandments."  *Id.* at 2–3.  The letter quotes the Bible and other religious

texts.  *See id.* at 2.

    As the Court has previously explained in this case, the issue of whether a plaintiff's

religious belief is "sincerely held" and "religious" is not ordinarily susceptible by resolution as a

matter of law.  *See Vasquez I*, 2024 WL 1348702, at *6 ("[B]oth the Supreme Court and the

Second Circuit have cautioned courts regarding their limited function when determining whether

religious beliefs are protected.").  Here, there is simply no way for the Court to determine as a

matter of law that the position articulated by Plaintiff was not "sincerely held" and "religious,"

even if, as Defendant argues, he may have also had a non-religious ground for refusing the

vaccine.  That inquiry would require the Court to engage in the prohibited "dissect[ion] [of]

religious beliefs."  *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 715 (1981).

Indeed, several Courts of Appeals have recently rejected such efforts to "require employees to

choose between the binary alternatives of a religious reason and non-religious reason to explain

their perspective . . . for seeking an exemption from mandatory COVID vaccination."  *See*

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010–12 (7th Cir. 2024) (collecting cases).

Therefore, the Court may not grant summary judgment on this issue.

### B.        *Informed His Employer*

Defendant makes basically the same argument with respect to the second prong of the *prima facie* case, arguing again that the basis for Plaintiff's request was his father's experience with the vaccine and not religion. *See* ECF No. 78 at 2. Plaintiff says that he provided his employer with "detailed explanations of his beliefs and objections . . . on religious grounds." *See* ECF No. 79 at 2. The Court agrees with Plaintiff. According to Defendant's own authority, "[a]n employer need have only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, No. 10-cv-1282, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012). There is no genuine dispute that Plaintiff's letter to the FDNY did that, as he explained in detail his religious opposition to abortion and how he believed it was connected to the vaccine. *See* ECF No. 78-10. As other courts have held, that is enough to entitle him to summary judgment on this prong. *See, e.g.*, *Bergin v. N.Y. State Unified Ct. Sys.*, No. 22-cv-5264, 2024 WL 4444434, at *3 (E.D.N.Y. Oct. 8, 2024) ("Specifically, submitting a religious accommodation form with a two-page letter that details religious objections to a COVID-19 vaccination requirement is sufficient to inform an employer of an employee's religious objections to a vaccine policy.").

Defendant's contrary position assumes that the inclusion of other reasons for not wanting to receive the vaccine somehow vitiates the notice Plaintiff provided about his religious objection. That is not the law, which just requires notice of the religious conflict. *See Russo*, 129 F.4th at 186. And its claim that Plaintiff's letter "was insufficient to enable FDNY to understand the existence of any conflict between Plaintiff's religious practices and the Vaccine Mandate," ECF No. 78 at 2, cannot be reconciled with the letter itself. Because Defendant's

characterization is "blatantly contradicted by the record," summary judgment for Plaintiff is appropriate on this prong. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### C. Discipline

Defendant also argues that "Plaintiff was not disciplined for failing to comply with a condition of his FDNY employment." ECF No. 78 at 2. That articulation is confusing, but the argument is that Plaintiff was not disciplined for failing to comply with an employment requirement that conflicted with his religious belief; rather, he merely became "ineligible to remain employed with the City," since vaccination was "a condition for continued employment." *Id.* Plaintiff retorts that he was terminated for failure to receive the vaccine, and that constitutes discipline. *See* ECF No. 80 at 2. The Court again agrees with Plaintiff. As Judge Furman has commented in rejecting this exact argument, the City's position is "flat wrong." *Rizzo v. N.Y.C. Dep't of Sanitation*, No. 23-cv-7190, 2024 WL 3274455, at *3 (S.D.N.Y. July 2, 2024). Defendant does not dispute that it fired Plaintiff because he would not receive the vaccine. *See* ECF No. 81-1 ¶ 134. None of Defendant's authority moves the needle on this issue. Indeed, its principal case, *Broecker v. N.Y.C. Department of Education*, 585 F. Supp. 3d 299 (E.D.N.Y. 2022), does not even contain Title VII analysis. Accordingly, summary judgment is granted to Plaintiff on this prong. *See Bergin*, 2024 WL 4444434, at *4 (doing the same).

### II. Undue Hardship

As in many Title VII cases, the rubber meets the road in this case on Defendant's undue hardship defense. Defendant says that accommodating Plaintiff would have imposed an undue hardship: "Though Plaintiff was working light duty at the time in question, in his role as a FDNY firefighter, there was always the potential that Plaintiff would have to interact with members of the public, including those people experiencing emergencies, vulnerable citizens of

and visitors to the City, or individuals who are injured or involved in a fire." ECF No. 78 at 3. Plaintiff not only disagrees but says that he is the one entitled to summary judgment on this defense. ECF No. 79 at 2–3. As detailed below, both sides' arguments are unpersuasive.

Defendant faces a meaningful hurdle in prevailing on the defense here. It "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). That requires that Court to perform a "fact-specific inquiry" and "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Id.* at 468, 470–71.

On this record, various disputes of material fact bar the Court from granting summary judgment to Defendant. Most importantly, it is undisputed that when Plaintiff applied for his exemption, he had a "light[-]duty assignment." *See* ECF No. 81-1 ¶ 29. Defendant does not dispute Plaintiff's characterization of that role as consisting of "administrative work and handling phone calls, responding to firefighters out in the field, as well as taking phone calls from FDNY employees who were calling out on medical leave." *Id.* ¶ 30. Plaintiff did not fight fires, respond to emergency medical calls, or interact with the public. *Id.* ¶¶ 30–31. Plus, the FDNY's Assistant Commissioner of Equal Employment Opportunity at the relevant time testified that during the period when employees' accommodation appeals were pending, they were permitted to instead submit to COVID testing. *See* ECF No. 79-11 at 132:20–24. Like in the case of a New York City public schoolteacher who performed her job partially remotely and whose students had only partially returned to school, the Court here cannot conclude as a matter of law that it would have constituted an undue burden for the FDNY to accommodate a light-duty firefighter by allowing him to test for COVID rather than receiving the vaccine. *See Byam*

*v. N.Y.C. Dep't of Educ.*, No. 23-cv-03999, 2024 WL 4198475, at *3–4 (E.D.N.Y. Sept. 16, 2024), *reconsideration denied*, 2024 WL 4504712 (E.D.N.Y. Oct. 16, 2024). Undoubtedly, Defendant puts forward persuasive arguments about the risk that an unvaccinated light-duty firefighter could present to colleagues and the public and how alternative precautions like testing would not have been as effective. *See* ECF No. 81 at 2. Similarly, the Court appreciates Defendant's argument that the light-duty status was meant to be a temporary one. *See, e.g.*, ECF No. 81-1 ¶ 46. Ultimately, though, these arguments about the scope of Plaintiff's actual and possible job responsibilities, and the effect they would have had on the FDNY, are properly directed to the jury. *See Byam*, 2024 WL 4198475, at *3 (denying summary judgment in a similar posture).[4]

Plaintiff's cross-motion on this issue fares no better. "Where," as here, "a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the

---

[4]     In Opposition, Defendant points to the Second Circuit's recent decision in *Russo* to argue "that where an individual's request for a religious accommodation would result in his employer violating the law, that individual is not entitled to such an accommodation because a violation of law constitutes an undue hardship under Title VII." ECF No. 81 at 2. That argument is frivolous. This Court has previously explained *in this case* why the City would not have violated state law by permitting Plaintiff to work unvaccinated if Title VII entitled him to a religious accommodation with respect to the vaccination requirement. *See Vasquez I*, 2024 WL 1348702, at *7; *see also Byam*, 2024 WL 4198475, at *4 (explaining, based on virtually identical language, that "if Title VII (or some other law) required Defendant to allow Plaintiff to teach in-person, unvaccinated but with some other accommodation in place, so accommodating her would not, by the mandate's own terms, have caused the [Department of Education] to violate the law"). This case is also dissimilar to *Russo* because Defendant does not point to any evidence in the record demonstrating that providing the requested accommodation "would [have] result[ed] in substantial increased costs," such as by needing to "employ[] someone to cover [Plaintiff]'s necessary in-person duties." 129 F.4th at 186.

non-moving party's case." *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  Plaintiff does not

show that there is no evidence supporting Defendant's undue hardship argument.

First, Plaintiff says that "Defendant did not consider any alternative accommodations."

ECF No. 79 at 2.  But he does not explain how any procedural failure, such as not "engag[ing] in

any cooperative dialogue or individualized assessment," necessarily means that his proposed

accommodations would not have imposed an undue hardship on Defendant.  *See id.*[5]  Second, he

faults Defendant for not "consider[ing] any other strategies to mitigate the risk of COVID-19,"

including potential reassignment to a former position in which he worked alone in a traffic booth.

*Id.* at 2–3.  As already explained, an argument concerning the "practical impact [of the

accommodations] in light of the nature, size and operating cost of an employer," *Groff*, 600 U.S.

at 470–71, and the efficacy of different risk mitigation strategies, *see Byam*, 2024 WL 4198475,

at *4, is one of several for the jury to balance as part of the undue hardship determination.

Plaintiff's third argument is his most forceful, as he says that Defendant "granted

permanent weekly testing accommodations to other FDNY employees, including full-duty

firefighters who worked in firehouses and had regular contact with the public."  ECF No. 79 at 3.

Plaintiff points to evidence showing that various other firefighters, EMTs, and other FDNY

---

[5]      Plaintiff references a state court decision which found the FDNY's conduct in firing him
to be arbitrary and capricious, and contends that that decision "give[s] rise to issue preclusion,"
also known as collateral estoppel, in this case.  ECF No. 79 at 2.  Collateral estoppel applies
where:  "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually
litigated and decided in the previous proceeding; (3) the parties had a full and fair opportunity to
litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final
judgment on the merits."  *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012).  He cannot show that
the "identical issue" was raised and litigated in a state Article 78 proceeding to "annul and
reverse" the decision to fire him, as the proceeding did not involve an undue hardship
determination under Title VII.  *See Vasquez v. FDNY*, No. 533122/2022, 2023 WL 3681674, at
*2 (N.Y. Sup. Ct. May 10, 2023).  So, once again, the Court rejects Plaintiff's efforts here "to try
to collaterally enforce his state court judgment."  *See Vasquez v. City of New York – Off. of the
Mayor*, No. 22-cv-05068, 2024 WL 3742716, at *7 (E.D.N.Y. Aug. 9, 2024) ("*Vasquez III*").

employees received religious and medical accommodations from the vaccine mandate. *See* ECF No. 79-20. Defendant concedes that six firefighters received religious accommodations. *See* ECF No. 81-1 ¶ 94. This is convincing evidence which may undermine Defendant's proffered public health rationale for denying Plaintiff an accommodation. In a similar situation, Judge Cogan granted summary judgment on undue hardship to a plaintiff where her employer, among other things, granted 555 out of 937 religious accommodation requests "permitting accommodations of the same sort requested by plaintiff." *See Bergin*, 2024 WL 4444434, at *4. However, here, the Court does not view the evidence as so conclusive. After all, the record shows that the FDNY did reject the vast majority of accommodation requests. *See* ECF No. 79-20. And evidence shows that the FDNY undertook some individualized consideration of Plaintiff's request. *See* ECF No. 79-11 at 131:13–132:9 (testimony explaining that Plaintiff, in his light-duty role, worked in an environment "staffed with dozens of folks sitting in a room . . . working with each other and working with other agencies"). In light of this competing evidence, a jury must assess whether accommodating Plaintiff would have resulted in "substantial increased costs" for Defendant. *Groff*, 600 U.S. at 470.

## <u>CONCLUSION</u>

For the reasons explained herein, the parties' pre-motion letters are converted into cross-motions for summary judgment. Plaintiff is granted and Defendant is denied summary judgment on the second and third prongs of Plaintiff's *prima facie* case. The cross-motions for summary judgment on the first prong of the *prima facie* case and Defendant's undue hardship defense are denied. This case shall proceed to trial on those two issues only.

In view of the narrow issues left to be resolved, the Court finds it appropriate to refer this case to the Court-Annexed Mediation Program and will enter a separate order to that effect. If

the parties are unable to resolve this case in mediation (or otherwise), they are directed to file a proposed joint pretrial order in accordance with Section VI.B of the Court's Individual Practices within 30 days of their final failed mediation session.

SO ORDERED.

_/s/ Hector Gonzalez_____
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
June 2, 2025